UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JASON GOLDSTEIN, on behalf of himself and all others similarly situated,<br><br>　　　　　　　　　Plaintiff,<br><br>v.<br><br>HENKEL CORPORATION and THRIVING BRANDS LLC,<br><br>　　　　　　　　　Defendants. | Consolidated Case No. 3:22-cv-00164<br><br>Hon. Alvin W. Thompson |

# DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

Toby S. Soli (ct-18697)
Email: solit@gtlaw.com
**GREENBERG TRAURIG LLP**
445 Hamilton Avenue, 9th Floor
White Plains, NY 10601
Tel: (212) 801-3196
Fax: (914) 286-2990

Keith E. Smith (*pro hac vice*)
Pennsylvania Bar No. 67384
Email: smithkei@gtlaw.com
**GREENBERG TRAURIG LLP**
1717 Arch Street, Suite 400
Philadelphia, Pennsylvania 19103
Tel: (215) 988-7800
Fax: (215) 988-7801

Dated: July 15, 2022

*Attorneys for Defendants Henkel Corporation and Thriving Brands LLC*

Defendants submit their reply in further support of Defendants' Motion to Dismiss Consolidated Amended Class Action Complaint [D.E. 49] ("Motion") and in response to Plaintiffs' Response in Opposition to Motion to Dismiss [D.E. 54] ("Opposition").

## I. LEGAL ARGUMENT

### A. Plaintiffs Lack Article III Standing Because They Fail to Allege Concrete and Economic Injuries.

Despite courts rejecting virtually identical arguments in cases involving the alleged presence of benzene in consumer products subject to testing by Valisure—*see, e.g., Schloegel v. Edgewell Pers. Care Co.*, 2022 WL 808694 (W.D. Mo. Mar. 16, 2022), *Bodle v. Johnson & Johnson Consumer, Inc.*, No. 3:21-cv-07742-EMC (N.D. Cal. Feb. 24, 2022) [ECF No. 28]— Plaintiffs argue in their Opposition that they allege concrete economic injury because: (1) the Products *may* contain benzene and (2) Plaintiffs "would not have purchased the Products or would have paid less for them but for Defendants' misrepresentations and material omissions." Opp. p. 2–3. Both arguments fail.

First, Plaintiffs claim that "each Plaintiff alleges his or her Product was contaminated with benzene" (citing to CAC ¶¶ 43–47) to rebut Defendants' argument that Plaintiffs do not have standing. Opp. p.3. Not so. In Paragraphs 43–47 of the CAC, Plaintiffs simply conclude the products they purchased contained benzene, without any factual support for those allegations. And, as Plaintiffs concede, the CAC merely alleges "some lots of [Defendants'] Products contain benzene, and it is unknown which of Defendants' bottles of Product do contain benzene and which do not" (hereinafter, "Plaintiffs' No Benzene Admission."). Opp. p.4. The CAC makes clear any claim regarding the presence of benzene arises solely from the Valisure Petition, which at best establishes the detection of benzene in some lots of a handful of Products, none of which are alleged to have been purchased by Plaintiffs. *See* CAC ¶¶ 14, 17. Even Valisure admitted the

1

testing in the Petition resulted in "significant batch-to-batch variations" in benzene levels, with "many batches of body spray contain[ing] no detectible benzene level" at all. Mot. p. 2.

Plaintiffs are also wrong when arguing they "are not required to allege" that the Products they purchased contain benzene." Opp. p.3 n2. Plaintiffs notably cite *no* case law in support of this argument, and instead argue "numerous courts have permitted" plaintiffs to "base their allegations on representative testing," citing *Kimca v. Sprout Foods, Inc.*, 2022 WL 1213488, at *4 (D.N.J. Apr. 25, 2022). But *Kimca* does not support Plaintiffs' argument. In *Kimca*, the court rejected the argument analogous to Defendants' argument here not because it was legally incorrect but because it was factually distinguishable. The *Kimca* court's conclusion rested on the fact that "Plaintiffs [] sufficiently alleged that ***all*** of the [] Products contain heavy metals" and "there is nothing in the FAC that indicates some subset of packages within each of these product lines might not contain heavy metals." *Id.* at *5. That is directly contradictory to Plaintiffs' allegations in the CAC here, as Plaintiffs concede, *see* Opp. at 20, and is precisely why dismissal is warranted for lack of a concrete injury-in-fact required to establish standing. *See* Mot. at p. 9 ("Plaintiffs never allege that the Products *they purchased* contained benzene … only that Valisure found benzene in *certain* Right Guard Products it tested").

*Kimca* also contradicts Plaintiffs' argument that they have established "economic injury" by making threadbare allegations that they overpaid for "contaminated Products on account of Defendants' misrepresentations and omissions" and also paid "for worthless and illegally sold Products." Opp. at 15.[1]

---

[1] Indeed, the *Kimca* court found as follows: "Here, Plaintiffs allege their 'economic injury was caused by paying for Sprout Baby Foods they would not have purchased, or would have paid less for, if Defendant had disclosed material information about the presence of heavy metals ... or bio-accumulation….' This could be interpreted as either a price premium argument or a benefit of the bargain argument. However, neither theory can support Plaintiffs' economic injury claim." *Id.* at *8 (citations omitted).

2

Plaintiffs also misstate the law when they argue that "Second Circuit precedent is in accord with establishing standing" through allegations "that there was a risk that the bottle of Product they were buying contained this carcinogen (*i.e.*, had Defendants' label not contained misrepresentations or omissions[] they would have avoided that purchase[])" and cite *John v. Whole Foods Mkt. Grp., Inc.*, 858 F.3d 732 (2d Cir. 2017) in support. Opp. at 4. There, the plaintiffs alleged that Whole Foods inflated the weights on pre-packaged product labels and overcharged customers as a result. *Id.* at 734. In support of those allegations, the plaintiffs relied on a Department of Consumer Affairs ("DCA") press release on certain testing concluding that "all of the products [tested] had packages with mislabeled weights" signifying a "systematic problem." *Id.* at 737-738. And, directly contrary to Plaintiffs' assertion at page 4 of the Opposition that the testing in *John* "did not tie any specific purchase made by plaintiff to one in which Whole Foods actually overcharged," the Second Circuit, finding the plaintiffs had standing, highlighted how the DCA's investigation "focused on the eight Whole Foods stores operating in New York City during [the two year] period [when plaintiff purchased the products at issue approximately 2-3 times a month], which included the two stores that [the plaintiff] patronized. Whole Foods has since confirmed that [the products at issue] were among the pre-packaged products that the DCA alleged were mislabeled with overstated weight." *Id.* at 735. The Second Circuit thus found the plaintiff had "plausibly alleged that he suffered an injury in fact by pleading both the frequency of his purchases and the systematic overcharging of pre-packaged foods at the Whole Foods stores he patronized." *Id.* at 738. Unlike the allegations in *John*, the CAC here is devoid of any allegations establishing that any of the Plaintiffs frequently purchased the Products or that the subset of Products tested by Valisure were the same make, model, and from the same stores Plaintiffs purchased their Products—as opposed to being from other batches not tested or from batches tested that detected no benzene. *John* is thus inapposite.

3

Plaintiffs notably fail in their Opposition to directly address the case law discussed at length in Defendants' Motion—*Schloegel*, *Bodle*, and *Doss v. Gen. Mills, Inc.*, No. 18-cv-61924, 2019 WL 7946028 (S.D. Fla. June 14, 2019). Instead, Plaintiffs simply attempt to distinguish *Schloegel* by noting that it relies on *Wallace v. ConAgra Foods, Inc.*, 747 F.3d 1025 (8th Cir. 2014), which "is not binding on this Court and cannot apply to the extent it conflicts with *John*." Opp. at 5. But all of these cases apply the same Article III standard that binds all federal courts and cite to the same Supreme Court precedent, *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 559–60 (1992).

And, *Wallace* does not conflict with *Johns* as the *Wallace* court merely found—like the *Johns* court did—that the plaintiffs failed to allege "any particularized reason to think that [their] own packages" "exhibited the defect." *Id.* at 1030. The *Wallace* court noted how it could not "discern from the complaint 'how many packages were tainted' with the defect" and thus it was "unclear whether even a bare majority of [defendant's] packages were not kosher . . . [and] quite plausible [defendant] sold the consumers exactly what was promised." *Id.* at *1030–31. Likewise, Plaintiffs' sole basis for their allegations regarding the presence of benzene in the products they purchased is the testing protocol of the Valisure Petition, which merely found certain lots of the Products untethered to these Plaintiffs had varying to no levels of benzene when subjected to extreme temperatures. Put simply, Plaintiffs fail to plausibly allege the Products they purchased contained benzene. Mot. p.28.

Plaintiffs next attempt to distinguish *Doss* by noting the plaintiff there alleged the glyphosate *may* be harmful to human health while Plaintiffs "have alleged that no level of benzene is safe," citing CAC ¶ 17. But the finding in *Doss* did not turn on that distinction. Rather, *Doss*' main holding requires Plaintiffs to plausibly allege a concrete injury and that such allegations cannot be met by a mere *possibility* that the Products Plaintiffs purchased contained benzene. *Doss*, 2019 WL 7946028, at *2. Lastly, Plaintiffs attempt to distinguish *Bodle* as "unavailing because

4

the plaintiff was pursuing personal rather than economic injuries," Opp. at 5, but this is irrelevant. The *Bodle* court explicitly held "Plaintiff has failed to establish injury or causation as required to sustain any of its claims because Plaintiff has not plausibly alleged that (a) she ever purchased or used an allegedly contaminated sunscreen product, (b) that she was exposed to an allegedly contaminated sunscreen product at a level and for a duration that could plausibly cause her disease, nor (c) that she was diagnosed with AML after she used an allegedly contaminated sunscreen product. Absent injury and causation, Plaintiff cannot prevail on any of her claims." *Bodle*, No. 3:21-cv-07742-EMC, at 1 (N.D. Cal. Feb. 24, 2022) [ECF No. 28]. Likewise, here, Plaintiffs have not alleged: (a) they ever purchased or used a Product allegedly containing benzene; (b) they were ever exposed to benzene; nor (c) that they suffered any direct, physical injury as a result of exposure to benzene. The CAC must be dismissed because the Plaintiffs have failed to allege a concrete injury-in-fact to support standing.

**B. Plaintiffs do not have Standing to Bring Claims on a Nationwide Basis.**

Plaintiffs next maintain that Defendants' argument that Plaintiffs cannot bring claims pursuant to state laws other than those for which they have standing—an argument supported by case law *in this Circuit and by this District* (*See* Motion at pp. 10-11)—is "wrong" because "courts in this Circuit have certified nationwide classes based on common law claims." Opp. at 6. Noticeably absent from this assertion is a cite to *any* case law from this District. Plaintiffs do not because they cannot. But even the case Plaintiffs do cite for its premise—*Hart v. BHH, LLC*, No. 15CV4804, 2017 WL 2912519 (S.D.N.Y. July 7, 2017)—is distinguishable. The court in *Hart* certified a nationwide fraud class where an alleged pest repellent did not actually repel pests, but because "a customer would not have purchased the product for any other reason than the advertised one." *Id.*, at *8. In declining to follow the ruling in *Hart*, the court in *In re Amla Litig.*, 282 F. Supp. 3d 751 (S.D.N.Y. 2017), held the statements plaintiffs relied on in purchasing the products

5

at issue—hair relaxers that caused pain and scalp damages—were "not similarly fundamental to the product itself." *Id.* at 760 ("Plaintiffs do not allege that the product does not actually relax hair, but only that defendants in effect misrepresented the product's safety and gentility to consumers."). In this litigation, Plaintiffs do not allege the products failed to actually work as antiperspirants; they instead allege that Defendants have misrepresented the Products' safety.[2] Plaintiffs lack standing to assert nationwide class claims.

### C. Plaintiffs' Claims are Preempted by the FDCA.

Plaintiffs are correct that, in *In re Zantac (Ranitidine) Prod. Liab. Litig.*, 512 F. Supp. 3d 1278 (S.D. Fla. 2021), the court found "the plaintiffs' state law claims were not preempted," Opp. at 10. The *Zantac* court did so because plaintiffs' position was "that the Defendants engaged in deceptive conduct, prohibited under state law, when they created a false or misleading label and, furthermore, that federal law similarly prohibits the sale of a drug that contains a false or misleading label." *Id.* at 1305. That is not Plaintiffs' position here. Rather, Plaintiffs allege that Defendants have violated the law (they do not) by failing to list benzene as an ingredient (even though it is not an ingredient) and/or to place a warning on the Product labels that they *might* contain benzene.[3] There is no parallel requirement under the FDCA or its implementing regulations that requires distributors to warn consumers of the *possibility* that a drug or cosmetic

---

[2] One of the many misstatements running throughout Plaintiffs' Opposition is that the FDA concentration limit for benzene is 2ppm. *See* Opp. pp. 2, 9, and fn. 17. Plaintiffs use this supposed "limit" to buttress their factually deficient argument that Defendants' Products are not safe to use. But there is no such FDA limit—in fact, FDA guidance specifically *disclaims* such restrictions. *See* FDA, *Q3C–Tables and List Guidance for Industry* (2017) https://www.fda.gov/media/71737/download ("In general, FDA's guidance documents do not establish legally enforceable responsibilities. Instead, guidances describe the Agency's current thinking on a topic and should be viewed only as recommendations, unless specific regulatory or statutory requirements are cited. The use of the word *should* in Agency guidances means that something is suggested or recommended, but not required.").

[3] In their Opposition to Defendants' preemption argument, Plaintiffs argue that "Current Good Manufacturing Practices ('cGMP') for Finished Pharmaceuticals impose a duty on drug manufacturers to test their products." Opp. p.10. However, the citations they use to support this premise do *not* stand for the premise that Defendants must test for benzene, which is not an ingredient and, at worst, only an unintended byproduct potentially present in trace amounts in some products. Nothing in the cGMP requires a manufacturer to test for all substances.

might contain benzene or otherwise. Plaintiffs' claims are thusly preempted.

**D. The CAC Fails to State a Claim.**

1. <u>Plaintiffs' Failure to Allege What Products They Bought or That Those Products Contained Benzene Is Fatal to All Claims.</u>[4]

Plaintiffs argue they have alleged "that the Products they purchased and/or used contained benzene and that the benzene caused them harm," Opp. p.11, but fail to point to any allegations in the CAC in support. Plaintiffs also argue they did provide specific dates for their purchases of the Products but do so by stating that each Plaintiffs alleges the "***approximate*** date of their purchase of the Product," *id.* (emphasis added), again failing to point to any specific allegation in the CAC. Plaintiffs next claim "none of [their] claims require the Products to actually contain benzene" but rather claim it is enough that there is a "significant risk that the products contained benzene." Opp. p.11. Even assuming that were true (it is not), Plaintiffs' CAC fails to meet this standard because it does not establish any risk—let alone a significant risk—the Products Plaintiffs purchased contained benzene. *See supra* p.1 (*Plaintiffs' No Benzene Admission*).

2. <u>Count 1 Must Be Dismissed for Failure to Identify the Terms and Conditions of any Express Warranty.</u>

Plaintiffs argue they have pleaded the "actual terms of the contract allegedly breached" by pointing to Paragraph 19 of the CAC: "In fact, Defendants misrepresented that Products did not contain benzene. Specifically, Defendants listed the active and inactive ingredients on the labeling of the Products, neither of which included benzene." Opp. at 12. But Plaintiffs do not point to any allegation that the Products they purchased even contained benzene. Plaintiffs simply conclude the

---

[4] Similarly, Plaintiffs' argument that Defendants' Products do not fulfill their ordinary purpose is off base because Plaintiffs have failed to establish that they have incurred any risk that the Products they purchased contained benzene--thus inhibiting their ability to allege that the Products do not fulfill their ordinary purpose.

7

products they purchased contained benzene, without any factual support for those allegations and despite *Plaintiffs' No Benzene Admission*. *See supra* p. 1. Count 1 must be dismissed.

      3.    <u>Counts 1 and 2 Must be Dismissed for Lack of Privity.</u>

Plaintiffs cite to *Smith v. Wm. Wrigley Jr. Co.*, 663 F. Supp. 2d 1336 (S.D. Fla. 2009) to support their argument that "Florida law does not require privity for express warranty claims where [] the warranties at issue are advertisements and representations made on the products' labels directed at consumers," Opp. at 12, but there the Court explicitly held it "need not resolve the issue of whether privity is ever required for express warranty claims under Florida law." *Id.* at 1343. Plaintiffs do not allege any affirmative representation on the label is untrue and cannot plead that the Products' labels do not conform to the labeling requirements of the FDCA. Plaintiffs' remaining attempts to rebut Defendants' lack of privity arguments also fail because they assume the CAC pleads that *the Products Plaintiffs purchased contained benzene*, but as discussed *supra* p.1, Plaintiffs do not allege which of Defendants' bottles of Product do contain benzene and which do not (*Plaintiffs' No Benzene Admission*). Counts 1 and 2 must therefore be dismissed.

      4.    <u>Counts 1, 2, 7, and 11 Must be Dismissed for Lack of Pre-Suit Notice.</u>

Plaintiffs argue they sent pre-suit notice contemporaneously with filing the CAC and its predecessor in accordance with New York law because they sent it in a "reasonable" amount of time, Opp. at 15, but do not cite any case demonstrating that notice contemporaneous with filing is considered "reasonable" under New York law. Plaintiffs then argue GFBPA's notice requirement does not apply because Defendants "do not maintain a place of business or keep assets within the state," Opp. at 15, but then merely state that Defendants' headquarters are not in Georgia without addressing whether Defendants maintain any business or assets within the state. The CAC does not allege that Defendants do not maintain a place of business or keep assets within Georgia. In fact, Defendant Henkel maintains places of business in Calhoun, LaGrange, and Smyrna,

8

Georgia.[5] Plaintiffs next argue they comply with CLRA's notice requirements because it is a "common practice" to later amend for money damages, but the CAC is already an amended pleading and Plaintiffs still have no basis to seek money damages under CLRA. Counts 1, 2, 7, and 11 must be dismissed.

     5.    <u>Plaintiffs' Statutory Claims are Not Pled with Particularity and Do Not Allege that Plaintiffs Suffered Injury.</u>

As discussed in Section I.D.1., Plaintiffs have failed to plausibly plead any deceptive conduct or injury, let alone with particularity. Plaintiffs' excuse that "the Rule 9(b) pleading standard is relaxed for claims of fraudulent omissions" (Opp. at 17) is an inaccurate statement of the law. *See Est. of Axelrod v. Flannery*, 476 F. Supp. 2d 188, 193 (D. Conn. 2007) ("the relaxation of Rule 9(b)'s specificity requirement for scienter must not be mistaken for license to base claims of fraud on speculation and conclusory allegations…. In order to avoid abuse of the less stringent requirement for pleading scienter ... plaintiffs are required to allege facts that give rise to a strong inference of fraudulent intent.") (citations and internal marks omitted). *See also Ameti ex rel. United States v. Sikorsky Aircraft Corp.*, No. 3:14-CV-1223 (VLB), 2017 WL 2636037, at *6 n. 4 (D. Conn. June 19, 2017) ("In advocating for a 'relaxed' Rule 9(b) pleading standard, it appears that Plaintiff acknowledges he does not satisfy the heightened pleading standard."). And, although Plaintiffs claim they have satisfied this "relaxed" standard, Defendants cite various cases describing exactly why and how Plaintiffs' claims are subject to and fail to meet Rule 9(b)'s heightened pleading requirements. Mot. at 34-37. Plaintiffs have simply ignored these cases.

Even more problematic is Plaintiffs' continued assertion that Defendants had actual knowledge that the Products contain benzene, Opp. at p. 18, without any factual support. Indeed, the CAC paragraphs cited by Plaintiffs contain *no* factual allegations. Plaintiffs' improper attempt

---

[5] See, https://www.henkel-northamerica.com/company/local-presence  (last visited July 15, 2022).

9

to conflate baseless, unsupported, conclusory allegations with actual knowledge must fail. *Lorenzi v. Connecticut Jud. Branch*, 620 F. Supp. 2d 348, 352 (D. Conn. 2009).

     6.   <u>Count V Fails Because There are Adequate Remedies at Law.</u>

Plaintiffs argue they "have stated a cognizable claim for unjust enrichment," Opp. at 35, but expressly allege the actual terms of contract allegedly breached by Defendants, Opp. at 11. Plaintiffs cannot bring their unjust enrichment claim where, as here, they "have pled the existence of an express contract between the parties through their express warranty claim." Mot. at 36.

     7.   <u>Counts IX & X Fail Because Plaintiffs Do Not Allege That They Received the Products in an Unreasonably Dangerous Condition.</u>

Plaintiffs claim they "alleged their exposure to dangerous levels of benzene resulted from Defendants' conduct" because they "are not required to submit medical and expert evidence," Opp. at 27, but Plaintiffs never even allege the Products they used and purchased contained benzene. *See supra* p.1 (*Plaintiffs' No Benzene Admission*). Plaintiffs' claims accordingly must fail.

## II.   CONCLUSION

For the foregoing reasons, and for the reasons set forth more fully in their Motion to Dismiss, Defendants respectfully request that the Motion be granted with prejudice.

Dated: July 15, 2022                         Respectfully submitted,

                                                         */s/ Toby S. Soli*
                                                         Toby S. Soli (ct-18697)
                                                         Email: solit@gtlaw.com
                                                         **GREENBERG TRAURIG LLP**
                                                         445 Hamilton Avenue, 9th Floor
                                                         White Plains, NY 10601
                                                         Tel: (212) 801-3196

                                                         *Attorneys for Defendants Henkel Corporation and Thriving Brands LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on this 15th day of July, 2022, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

/s/ Toby S. Soli
TOBY S. SOLI

### Service List

Charles E. Schaffer
David Magagna
LEVIN SEDRAN & BERMAN
510 Walnut St. Suite 500
Philadelphia, PA 19106
Tel: (215) 592-1500
Fax: (215) 592-4663
Email: cschaffer@lfsblaw.com
Email: dmagagna@lfsblaw.com

Max Stuart Roberts
BURSOR & FISHER, P.A.
888 7th Avenue, Third Floor
New York, NY 10019
Tel: (646) 837-7408
Fax: (212) 989-9163
Email: mroberts@bursor.com

Nick Suciu, III
MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC
6905 Telegraph Rd., Suite 115
Bloomfield Hills, MI 48301
Tel: (313) 303-3472
Email: nsuciu@milberg.com

James J. Reardon, Jr.
REARDON SCANLON LLP
45 South Main Street Suite 305
West Hartford, CT 06107
Tel: (860) 955-9455
Fax: (860) 520-5242
Email: james.reardon@reardonscanlon.com

Shannon L. Hopkins
LEVI & KORSINSKY, LLP
1111 Summer Street, Suite 403
Stamford, CT 06905
Tel: (203) 992-4523
Email: shopkins@zlk.com

Jason Sultzer
THE SULTZER LAW GROUP
85 Civic Center Plaza, Suite 200
Poughkeepsie, NY 12601
Tel: (845) 483-7100
Fax: (888) 749-7747
Email: sultzerj@thesultzerlawgroup.com