# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

|  |  |
|---|---|
| JASON GOLDSTEIN, BRAD DAVIS, MARIA LAZO, MOSANTHONY WILSON and JAMES CORSEY on behalf of themselves and all others similarly situated,<br>Plaintiffs,<br>        v.<br><br>HENKEL CORPORATION and THRIVING BRANDS LLC,<br><br>                    Defendants. | Case No. 3:22-cv-00164-AWT<br><br>Hon. Alvin W. Thompson |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

Dated: April 26, 2023

**REARDON SCANLON LLP**
James J. Reardon, Jr.
45 South Main Street, 3rd Floor
West Hartford, CT  06107
Telephone: (860) 955-9455
Facsimile:  (860) 920-5242
Email:  james.reardon@reardonscanlon.com

**BURSOR & FISHER, P.A.**
Sarah N. Westcot (*pro hac vice*)
701 Brickell Ave, Suite 1420
Miami FL, 33131
Telephone: (305) 330-5512
Facsimile:  (305) 676-9006
E-Mail: swestcot@bursor.com

**BURSOR & FISHER, P.A.**
Max S. Roberts (*pro hac vice*)
888 Seventh Avenue
New York, NY 10019
Telephone: (646) 837-7150
Facsimile:  (212) 989-9163
Email: mroberts@bursor.com

**THE SULTZER LAW GROUP, P.C.**

Jason P. Sultzer, Esq. (*pro hac vice*)
Joseph Lipari, Esq. (*pro hac vice*)
Daniel Markowitz, Esq. (*pro hac vice*)
270 Madison Avenue, Suite 1800
New York, NY 10016
Tel: (845) 483-7100
Fax: (888) 749-7747
sultzerj@thesultzerlawgroup.com
liparij@thesultzerlawgroup.com
markowitzd@thesultzerlawgroup.com

**LEVIN SEDRAN & BERMAN LLP**
David C. Magagna Jr., Esq. (*pro hac vice*)
Charles E. Schaffer, Esq. (*pro hac vice*)
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Tel: 215-592-1500
dmagagna@lfsblaw.com
cschaffer@lfsblaw.com

**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
Nick Suciu, III, Esq.*
6905 Telegraph Rd., Suite 115
Bloomfield Hills, MI 48301
Tel.: (313) 303-3472
Fax: (865) 522-0049
E-Mail: nsuciu@milberg.com

**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
Jennifer Czeisler, Esq.*
Virginia Ann Whitener, Esq.*
Russell Busch, Esq.*
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
Tel.: (865) 247-0080
Fax: (865) 522-0049
E-Mail: jczeisler@milberg.com
        gwhitener@milberg.com
        rbusch@milberg.com

**LEVI & KORSINSKY LLP**
Mark S. Reich (*pro hac vice*)
Courtney E. Maccarone (*pro hac vice*)
55 Broadway, 10th Floor

New York, NY 10006
Telephone: (212) 363-7500
Facsimile: (212) 363-7171
Email: mreich@zlk.com
          cmaccarone@zlk.com

*Pro hac vice application forthcoming*

*Counsel for Plaintiffs and the Class*

# **TABLE OF CONTENTS**

**PAGE(S)**

TABLE OF AUTHORITIES ....................................................................................... ii

INTRODUCTION ................................................................................................... 1

    I.    The Litigation History and Plaintiffs' Allegations ................................ 2

SETTLEMENT NEGOTIATIONS ............................................................................ 5

    II.    The Terms of The Proposed Settlement.................................................. 8

        a.    The Settlement Class.............................................................. 8

        b.    Relief for the Settlement Class Members ............................. 8

        c.    The Release ........................................................................... 9

        d.    Attorneys' Fee, Cost, and Incentive Awards ....................... 9

        e.    Settlement Administration and The Notice Plan .................. 10

ARGUMENT ......................................................................................................... 11

    I.    Preliminary Approval of the Settlement is Appropriate ....................... 11

        a.    The Grinnell Factors ............................................................. 13

            1.    The Settlement Amount is Reasonable in Light of The Possible Recovery and The Attendant Risks of Litigation (Grinnell Factors 8 and 9) ...................................................................... 14

        b.    The Rule 23(e)(2) Factors ..................................................... 16

            1.    The Class Representatives and Class Counsel Have Adequately Represented The Class ................................................... 16

            2.    The Settlement Was Negotiated At Arm's Length ............... 16

            3.    The Settlement Provides Adequate Relief to The Class ........ 17

            4.    The Settlement Treats All Class Members Equally ............... 18

    II.    Conditional Certification of The Rule 23 Class is Appropriate.............. 19

        a.    The Proposed Settlement Class Meets the Requirements of Rule 23(a ............ 20

            1.    Numerosity....................................................................... 20

               a.    There are Common Questions of Law and Fact ............... 20

         b.   Lead Plaintiffs 'Claims are Typical of Those of the Settlement Class ................................................................................................22

         c.   Lead Plaintiffs will Fairly and Adequately Protect the Settlement Class ................................................................................................23

    2.  The Settlement Class Satisfies the Requirements of Rule 23(b)(3) Because Common Issues of Law and Fact Predominate and a Class Action is Superior to Other Methods of Adjudication...........................25

III.    The Court Should Approve The Proposed Form of Notice and Plan for Providing Notice to The Settlement Class......................................................................................26

IV.    Conclusion ..............................................................................................28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997) ........................................................................................ 24, 25, 26

*Augustin v. Jablonsky* (In re Nassau County Strip Search Cases),
  461 F.3d 219 (2d Cir. 2006) ................................................................................ 25, 26

*Barnes v. Unilever United States Inc.*,
  2022 WL 2915629 (N.D. Ill. July 24, 2022) ............................................................. 15

*Beckman v. KeyBank, N.A.*,
  293 F.R.D. 467 (S.D.N.Y. 2013) ............................................................................. 18

*Bowen v. Energizer Holdings, Inc.*,
  2022 WL 18142508 (C.D. Cal. Aug. 29, 2022) ......................................................... 15

*Charron v. Wiener*,
  731 F.3d 241 (2d Cir. 2013) ................................................................................... 24

*City of Detroit v. Grinnell Corp.*,
  495 F.2d 448 (2d Cir. 1974) ................................................................................... 13

*City of Providence v. Aeropostale, Inc.*,
  2014 WL 1883494 (S.D.N.Y. May 9, 2014) ............................................................. 14

*Ebin v. Kangadis Food Inc.*,
  297 F.R.D. 561 (S.D.N.Y. 2014) ............................................................................. 23

*Floyd v. City of New York*,
  283 F.R.D. 153 (S.D.N.Y. 2012) ............................................................................. 23

*Frank v. Eastman Kodak Co.*,
  228 F.R.D. 174 (W.D.N.Y. 2005) ........................................................................... 12

*General Tel. Co. v. Falcon*,
  457 U.S. 147, fn. 13 (1982) ................................................................................... 24

*Gilliam v. Addicts Rehab. Ctr. Fund*,
  2008 WL 782596 (S.D.N.Y. Mar. 24, 2008) ............................................................. 14

*Gordon v. Vanda Pharmaceuticals Inc.*,
  2022 WL 4296092 (E.D.N.Y. Sept. 15, 2022) ......................................................... 19

*Hart v. BHH, LLC*,
  2017 WL 2912519 (S.D.N.Y. July 7, 2017) ............................................................. 21

*Hernandez v. Uzzal Pizzeria, Inc.*,
  2022 WL 1032522 (S.D.N.Y. Apr. 6, 2022)............................................................ 18

*Holick v. Cellular Sales of New York, LLC*,
  2022 WL 3265133 (N.D.N.Y. July 25, 2022) ......................................................... 12

*In re Gilat Satellite Networks, Ltd.*,
  2007 WL 2743675 (E.D.N.Y. Sept. 18, 2007) ....................................................... 15

*In re GSE Bonds Antitrust Litig.*,
  414 F. Supp. 3d 686 (S.D.N.Y. 2019)........................................................ 16, 17, 18

*In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*,
  2020 WL 7389330 (S.D.N.Y. Dec. 16, 2020) ....................................................... 19

*In re Nissan Radiator/Transmission Cooler Litig.*,
  2013 WL 4080946 (S.D.N.Y. May 30, 2013) ........................................................ 22

*In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*,
  330 F.R.D. 11 (E.D.N.Y. 2019) .................................................................. 16, 17, 19

*In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*,
  2019 WL 6875472 (E.D.N.Y. Dec. 16, 2019) ....................................................... 13

*In re Synchrony Financial Sec. Litig.*,
  2023 WL 1503032 (D. Conn. Feb. 3, 2023) .......................................................... 20

*In re Valsartan, Losartan, and Irbesartan Prods. Liab. Litig.*,
  2023 WL 181922 (D.N.J. Feb. 8, 2023) ................................................................ 16

*In re Vitamin C Antitrust Litig.*,
  279 F.R.D. 90 (E.D.N.Y. 2012) ............................................................................. 22

*In re Zantac (Ranitidine) Prods. Liab. Litig.*,
  --- F. Supp. 3d ---, 2022 WL 17480906 (S.D. Fla. Dec. 6, 2022)......................... 16

*Jara v. Felidia Restaurant, Inc.*,
  2018 WL 11225741 (S.D.N.Y. Aug. 20, 2018) ................................................ 12, 17

*Jenkins v. National Grid USA Serv. Co.*,
  2022 WL 2301668 (E.D.N.Y. June 24, 2022) ....................................................... 18

*Johnson v. Rausch, Sturm, Israel, Enerson & Hornik, LLP*,
  333 F.R.D. 314 (S.D.N.Y. 2019) ........................................................................... 13

*Kurtz v. Kimberly-Clark Corp.*,
  321 F.R.D. 482 (E.D.N.Y. 2017)............................................................................ 23

*Ligon, et al., v. City of New York, et al.*,
  2012 WL 5871237 (S.D.N.Y.)............................................................................... 23

*Marcus v. AXA Advisors, LLC*,
  307 F.R.D. 83 (E.D.N.Y. 2015) ........................................................................... 22

*Marisol A. by Forbes v. Giuliani*,
  126 F.3d 372 (2d Cir. 1997) ............................................................................... 24

*Masters v. Wilhelmina Model Agency, Inc.*,
  473 F.3d 423 (2d Cir. 2007) ........................................................................ 14, 18

*Menkes v. Stolt-Nielsen S.A.*,
  270 F.R.D. 80 (D. Conn. 2010) ........................................................................... 11

*Meredith Corp. v. SESAC, LLC*,
  87 F. Supp. 3d 650 (S.D.N.Y. 2015) ............................................................. 19, 26

*Pacheco*,
  2022 WL 16647755 (cleaned up) ....................................................................... 12

*Patellos v. Hello Products, LLC*,
  2022 WL 2159566 (S.D.N.Y. June 15, 2022) ........................................ 17, 19, 20

*Patti's Pitas, LLC v. Wells Fargo Merchant Servs., LLC*,
  2021 WL 9564432 (E.D.N.Y. Feb. 8, 2021) ........................................................ 18

*Peoples v. Annucci*,
  180 F. Supp. 3d 294 (S.D.N.Y. 2016) ................................................................ 12

*Philemon v. Aries Capital Partners, Inc.*,
  2019 WL 13224983 (E.D.N.Y. July 1, 2019) ...................................................... 14

*Robidoux v. Celani*,
  987 F.2d 931 (2d Cir. 1993) ........................................................................ 22, 23

*Tart v. Lions Gate Ent. Corp.*,
  2015 WL 5945846 (S.D.N.Y, Oct. 13, 2015) .................................................. 25, 26

*Trinidad v. Pret a Manger (UDS) Ltd.*,
  2014 WL 4670870 (S.D.N.Y. Sept. 19, 2014) .................................................... 18

*Vargas v. Capital One Fin. Advisors*,
  559 F. App'x 22 (2d Cir. 2014) ......................................................................... 27

*Wal-mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) .................................................................................... 21, 25

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
  396 F.3d 96 (2d Cir. 2005) ................................................................. 12, 27, 28

**Statutes**

28 U.S.C. §1715 ................................................................................................................ 10

**Rules**

[Federal Rule of Civil Procedure] Rule 23(e)(2) ................................................... 13, 16

Fed. R. Civ. P. 23(a) ................................................................................... 19, 20, 23

Fed. R. Civ. P. 23(a)(1) ............................................................................................. 20

Fed. R. Civ. P. 23(a)(2) ................................................................................. 20, 21, 22

Fed. R. Civ. P. 23(b) .................................................................................................. 19

Fed. R. Civ. P. 23(b)(3) ................................................................................. 20, 25, 26

Fed. R. Civ. P. 23(c) .................................................................................................... 2

Federal Rule of Civil Procedure 23(g) .................................................................. 4, 16

Federal Rule of Civil Procedure 42(a) ........................................................................ 4

Rule 23(a)(3) .............................................................................................................. 22

Rule 23(a)(4) ....................................................................................................... 24, 25

Rule 23(b)(1), (b)(2), or (b)(3) .................................................................................. 27

Rule 23(c)(2)(B) ........................................................................................................ 28

Rule 23(c)(3) .............................................................................................................. 28

Rule 23(e) ............................................................................................................ 13, 28

Rule 23(e)(1)(B) ........................................................................................................ 27

Rule 23(e)(3); and (D) ............................................................................................... 13

**Other Authorities**

MANUAL FOR COMPLEX LITIGATION § 21.312 (4th ed. 2004) ...................................... 27

NEWBERG ON CLASS ACTIONS § 11.41 (4th ed. 2002) ................................................. 12

NEWBERG § 11.25 ....................................................................................................... 12

Plaintiffs Jason Goldstein, Brad Davis, Maria Lazo, Mosanthony Wilson, and James Corsey ("Plaintiffs") respectfully submit this memorandum of law in support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement, Preliminary Certification of Settlement Class, and Approval of Notice Plan[1] (hereinafter the "Motion").

## INTRODUCTION

This proposed class action settlement would resolve the claims of purchasers of Defendants Henkel Corporation ("Henkel") and Thriving Brands LLC ("Thriving Brands") (collectively "Defendants") Right Guard® Sport and Xtreme antiperspirant aerosol and spray products ("Covered Products"). In the Litigation, Plaintiffs asserted claims seeking to recover economic damages individually and on behalf of a nationwide class of purchasers of the Covered Products, which Plaintiffs allege Defendants manufactured and distributed and were deceptively and misleadingly marketed, advertised, labeled, and sold while containing or at the risk of containing dangerously high levels of benzene.

Defendants have defended the Litigation on several grounds, including, *inter alia*, that: (i) Plaintiffs' claims are expressly preempted by federal law, (ii) Plaintiffs lack standing because they have not suffered injury in fact, and (iii) Plaintiffs fail to state a cause of action. *See* Schaffer Decl. ¶ 12. Nevertheless, Defendants have agreed to enter into this Settlement Agreement to avoid further expense, inconvenience, and interference with ongoing business operations, and to dispose of burdensome litigation. § 1.16.

---

[1]  Unless otherwise indicated, capitalized terms shall have the same meaning as they do in the Settlement Agreement. References to "§ __" are to sections in the Settlement Agreement, submitted as Exhibit 1 to the Declaration of Charles E. Schaffer In Support of Plaintiff's Motion for Preliminary Approval (the "Schaffer Decl.") and all Settlement Agreement Exhibits are referred to as "Ex [Letter]."

To settle the Litigation, Defendants will establish a Settlement Fund of $1.95 million, with no right of reversion, that will compensate Valid Claims, pay costs of notice and claims administration, and pay Court-approved reasonable attorneys' fees and costs and any Court-approved incentive awards to the class representatives. §§ 3.1; 3.13, 3.15.

As demonstrated below, the Settlement satisfies the relatively low threshold required for preliminary approval. The parties reached the Settlement after significant arm's-length negotiations with the assistance of a highly respected mediator, the Honorable Diane Welsh (Ret.). The Settlement provides monetary recovery while avoiding the additional expenses, risk and uncertainty of continued and protracted litigation.

Accordingly,  Plaintiffs respectfully request the entry of an Order: (1) preliminarily approving the proposed Settlement Agreement, including the exhibits attached thereto; (2) preliminarily certifying a proposed national class for settlement purposes only, and appointing Plaintiffs and their Counsel as settlement Class Representatives and Class Counsel; (3) approving the notice plan and forms of notice to the class because they meet the requirements of due process and is the best notice practicable under the circumstances (*see* Fed. R. Civ. P. 23(c)); and (4) setting dates and procedures for opt outs, objections, and a final approval hearing.

## I.      THE LITIGATION HISTORY AND PLAINTIFFS' ALLEGATIONS

On November 19, 2021, Plaintiff Jason Goldstein commenced a class action in the Southern District of Florida, relying *inter alia* on the Valisure Petition[2], alleging that certain Right

---

[2] On November 3, 2021, Valisure LLC ("Valisure"), an analytical pharmacy, filed a citizen's petition (the "Valisure Petition or Report") with the United States Food and Drug Administration ("FDA"). The Valisure Petition stated that Valisure had performed tests on batches of body spray products from various manufacturers who marketed and sold the products in the United States, and that a significant number of these products contained detectable levels of benzene. VALISURE CITIZEN PETITION ON BENZENE IN BODY SPRAY PRODUCTS, Nov. 3, 2021, https://assets-global.website-files.com/6215052733f8bb8fea016220/626af96f521a0584e70e50eb_Valisure%20FDA%20Citizen%20Petition%20on%20Body%20Spray%20v4.0%5B260%5D.pdf

Guard® antiperspirant aerosol products sold in the United States contained benzene, and seeking compensation for alleged economic losses sustained by U.S. consumer purchasers of the products. *See Goldstein v. Henkel Corporation and Thriving Brands LLC*, Case No. 9:21-cv-82111-RS (S.D. Fla.) ("*Goldstein* Case").   On November 24, 2021, Plaintiff Mosanthony Wilson filed a similar class action complaint in the Southern District of California.  *See Wilson et al v. Thriving Brands, LLC et al*, Case No. 3:21-cv-01988 (S.D. Cal.) ("*Wilson* Case").   On December 6, 2021, Plaintiff Peter Carbone filed a similar class action complaint in the Eastern District of New York.  *See Carbone v. Thriving Brands LLC et al*, Case No. 2:21-cv-06742 (E.D.N.Y.) ("*Carbone* Case"). On December 16, 2021, Plaintiff Brad Davis filed a similar class action complaint in the Southern District of Ohio.  *See Davis v. Henkel Corporation et al*, Case No. 1:21-cv-00782 (S.D. Ohio) ("*Davis* Case"). On December 22, 2021, Plaintiff Maria Lazo filed a similar class action complaint in the District of Connecticut.  *See Lazo v. Henkel Corp et al,* Case No. 3:21-cv-01702 (D. Conn.) ("*Lazo* Case"). And on December 28, 2021, Plaintiffs Diane Soldevilla and Alain Michael filed a similar class action in the Southern District of Florida.  *See Soldevilla v. Thriving Brands, LLC et al*, Case No. 0:21-cv-62573 (S.D. Fla.) ("*Soldevilla* Case").

Plaintiffs' counsel in *Goldstein, Wilson, Corsey, Lazo*, and *Davis* discussed with Defendant's counsel consolidating and/or transferring the cases in one forum to eliminate duplicative discovery, prevent inconsistent pretrial rulings, and promote judicial efficiency. The Parties then began the process of consolidating all of the actions in this Court by joint motions and stipulations to transfer the actions. Schaffer  Decl. ¶ 4. On January 28, 2022, the Southern District of Florida Court transferred the first-filed *Goldstein* case to the District of Connecticut.  *See Goldstein v. Henkel Corporation and Thriving Brands LLC*, Case No. 3:22-cv-00164 (D. Conn.). On February 2, 2022, the *Davis* case was transferred to the District of Connecticut. *See Davis v. Henkel Corporation et al*, Case No. 3:22-cv-00196 (D. Conn.).  On February 2, 2022, the *Wilson*

case was transferred to the District of Connecticut. *See Wilson et al v. Thriving Brands, LLC et al*, Case No. 3:22-cv-00270 (D. Conn.). On October 26, 2022, *Soldevilla* was transferred to the District of Connecticut. *See Soldevilla v. Henkel Corporation et al*, Case No. 3:22-cv-01362 (D. Ct.).

On March 1, 2022, Plaintiffs Goldstein, Wilson, Corsey, Lazo, and Davis filed a Motion for Consolidation and Appointment of Interim Co-Lead Counsel (ECF No. 30) for an order: (i) consolidating *Goldstein*, *Wilson*, *Lazo*, and *Davis* pursuant to Federal Rule of Civil Procedure 42(a) under the first-filed *Goldstein* case; and (ii) appointing Bursor & Fisher, P.A., the Sultzer Law Group, P.C., Levin Sedran & Berman LLP, Milberg Coleman Bryson Phillips Grossman, PLLC, and Levi & Korsinsky LLP as interim co-lead counsel and Reardon Scanlon LLP as liaison counsel pursuant to Federal Rule of Civil Procedure 23(g).  On March 3, 2022, the Court entered the Order Granting Plaintiffs' Motion For Consolidation and Appointment of Interim Co-Lead Counsel (ECF No. 31) (the "Consolidated *Goldstein* Case").

On April 4, 2022, Plaintiffs in the Consolidated *Goldstein* Case filed a Consolidated Amended Class Action Complaint ("CACAC") (ECF No. 38) on behalf of a nationwide class styled captioned *Goldstein et al. v. Henkel Corporation and Thriving Brands LLC*, Case No. 3:22-cv-00164-AWT (D. Conn.) (the "Litigation").  Plaintiffs allege that Defendants failed to test and improperly marketed and sold several aerosol antiperspirants that allegedly contained or were at the risk of containing benzene in violation of state law and compensation for alleged economic losses sustained by U.S. consumer purchasers of the products.  Plaintiffs seek to represent a nationwide class of consumers who purchased the Covered Products.

Plaintiffs' Counsel has substantial experience in prosecuting class actions and in particular actions that involve benzene contamination of consumer products such as sunscreen, deodorant and antiperspirant products. *See Clinger v. Edgewell Personal Care Brands, LLC*, 3:21-cv-01040-

JAM (D.Conn); *Declid et al. v. Tcp Hot Acquisition LLC et al.*, 1:21-cv-09569-DLC (S.D.N.Y); *Bangoura v. Beiersdorf, Inc. et al*, 1:22-cv-00291-BMC (E.D.N.Y.). Prior to the filing of the actions, and throughout the litigation, Plaintiffs' Counsel undertook an extensive investigation into the benzene contamination or risk of contamination with benzene in the Covered Products, issues relating to how the Covered Products were not adequately tested and screened for benzene and prepared for protracted litigation. Among other things, Plaintiffs' Counsel investigation and due diligence included, *inter alia*, reviewing publicly available documents such as the Valisure Citizens petition to the FDA, conducting research on claims and federal regulations governing antiperspirant products including limits for contaminants like benzene, interviewing and conferring with experts pertaining to sourcing of ingredients, testing/screening for benzene and an economic damages model. Schaffer Decl. ¶ 11.

On May 26, 2022, Defendants moved to dismiss the Litigation on the grounds that, among other things, (i) Plaintiffs' claims are expressly preempted by federal law, (ii) Plaintiffs lack standing because they have not suffered injury in fact, and (iii) Plaintiffs fail to state a cause of action. Plaintiffs opposed the motion to dismiss, and briefing concluded after several rounds of the parties submitting supplemental authority on November 2, 2022.

Over the next two months the parties commenced settlement negotiations, taking into account the cases' strengths and weakness. As the parties' discussions progressed, they determined that an experienced mediator was necessary to resolve the claims in this litigation. Accordingly, the parties sought the assistance of the Honorable Diane Welsh (ret.). As discussed more fully below,  with the assistance of Judge Welsh the parties reached a settlement. Schaffer Decl. ¶ 14. On December 12, 2022, the Parties informed the Court that they had reached an agreement to resolve the matter.  ECF No. 67.

### SETTLEMENT NEGOTIATIONS

The Settlement was reached as a result of extensive arm's-length negotiations between the Parties and counsel, facilitated by a mediation with a respected mediator, the Honorable Diane Welsh (Ret.), on December 6, 2022.   Before and during these settlement discussions and mediation, the Parties had arm's-length exchange of sufficient information to permit Plaintiffs and their counsel to evaluate the claims and potential defenses and to meaningfully conduct informed settlement discussions.   The Parties did not discuss Attorneys' Fees and Costs or any potential Incentive Award until they first agreed on the substantive terms of this settlement. Schaffer  Decl. ¶ 17 ; § 1.9.  Defendants deny all of Plaintiffs' allegations and all charges of wrongdoing or liability against it arising out of any of the conduct, statements, acts or omissions alleged, or that could have been alleged against it, in the Litigation.  § 1.11.

Class Counsel worked together to thoroughly analyze the legal landscape, including conducting research into the various state consumer protection laws and available remedies, Article III standing, preemption and evaluating matters relating to class certification, in order to fully evaluate the risks and benefits to a potential early resolution.  Schaffer Decl. ¶ 18.  Indeed, Class Counsel worked cooperatively to coordinate the Litigation and to save judicial time and resources to consolidate the multiple similar litigations without a protracted battle for lead counsel and to lead the case to mediation and an early resolution.  *Id*. ¶ 19.

Class Counsel conducted a detailed and extensive analysis of the claims alleged in the CACAC, including labeling claims for the Covered Products, the relevant FDA regulations concerning labeling and advertising disclosure requirements and for aerosol antiperspirants, FDA guidelines regarding the presence of benzene in consumer products, and the scientific research concerning the dangers of benzene.  Schaffer Dec ¶ 20.  Class Counsel also thoroughly analyzed the Valisure Petition which found that the Covered Products contain as much as 5 parts per million of benzene.  Schaffer Dec ¶ 21.  Moreover, Class Counsel analyzed the chain of distribution of the

Covered Products and pricing per unit to help support and determine Plaintiffs' damages model. Schaffer Dec ¶ 22.  In addition, Class Counsel conducted research into the market segment related to the Covered Products to understand the potential scope of this matter and marketing and sales trends, practices, and patterns for the relevant industry.  *Id*. ¶ 23. Class Counsel also analyzed in conjunction with economic expert(s) damage models including full refund under a disgorgement model and/or a price premium model utilizing conjoint analysis to determine consumers likely and best recovery at trial.  *Id.* ¶ 24.

Based on the Parties' exchange of discovery to date, their respective investigations into the claims and defenses asserted in the actions and potential recovery at trial on a class wide basis, the parties agreed to engage in settlement negotiations with a private mediator.  *Id.* ¶ 13.  In connection with the mediation, Class Counsel requested mediation discovery in order to evaluate the claims and position themselves to negotiate a settlement that would be fair and reasonable on behalf of the Settlement Class.  Specifically, Class Counsel requested, and Defendants produced, documents and information regarding the sales data of Covered Products throughout the Class Period as well as Defendants' quality control and testing procedures regarding contaminants including benzene. *Id*.  ¶¶ 25-26.

The settlement negotiations were conducted at arm's-length over a period of several months.  *Id*. ¶ 27.  On December 6, 2022, the Parties participated in an all-day mediation with JAMS mediator Hon. Diane Welsh (Ret.) via Zoom.  *Id*. ¶ 28.  With the assistance of Judge Welsh, the Parties reached an agreement in principle at the mediation session.  However, the Parties continued to pursue settlement discussions for several months, working out the details of the settlement and culminating in the attached Settlement Agreement, which is the product of hard-fought, arm's-length negotiations.  *Id*.

The Settlement Agreement resolves claims for economic harm regarding Defendants' use of allegedly misleading labels on, and marketing and promotion concerning, benzene or the risk of benzene in the Covered Products.  The Settlement Agreement provides significant monetary relief to the Settlement Class Members by way of a Settlement Fund of $1.95 million. The Settlement Agreement specifically excludes the release of any claims for personal or bodily injury.

## II.  THE TERMS OF THE PROPOSED SETTLEMENT

The Settlement Agreement defines the Settlement Class, describes the Parties' agreed upon exchange of consideration, and proposes a plan for disseminating notice and administering claims for the Settlement Class Members. Schaffer Decl., Ex 1.

### A.  The Settlement Class

The Parties agree to certification of a nationwide Settlement Class for settlement purposes, defined as follows:

> All natural persons who, between November 19, 2018 and the date of Preliminary Approval, purchased in the United States any Covered Product for personal, family or household use, and not resale.

§ 2.35.

### B.  Relief for the Settlement Class Members

#### 1.  *Monetary Relief*

The Settlement Agreement provides that Defendants will establish a Settlement Fund in the amount of $1.95 million, which will be exhausted to pay all Valid Claims, as well as any Attorneys' Fee, Cost and Incentive Awards, and settlement administration costs that are approved by the Court. §3.1.  Settlement Class Members who submit a Valid Claim Form with Proof of Purchase shall receive $3.00 for each Covered Product listed on the Proof of Purchase, inclusive of all taxes. § 3.4(a).  Settlement Class Members who submit a Valid Claim Form without Proof of Purchase shall receive $1.75 for up to five (5) Covered Products claimed per household. § 3.4(b).

Each Settlement Class Members' payment shall be increased or decreased on a *pro rata* basis such that the total amount paid to all Settlement Class Members equals the Available Settlement Funds. § 3.5. In the event any checks issued to pay Valid Claims are uncashed or not redeemed for 120 days, such funds shall be donated to Look Good Feel Better. § 3.13. All of this ensures that *no settlement funds* will revert to Defendants.

### C.     The Release

The Settlement Agreement provides that upon the Effective Date, Settlement Class Members shall forever release Defendants from any and all claims for economic injury, including economic injuries relating to medical monitoring, related to the presence of benzene in the Covered Products that were, or could have been asserted, in this Litigation and any economic harm resulting from any (i) testing, marketing, sales and advertising with respect to the presence of benzene in the Covered Products, and  (ii) acts, omissions or misrepresentations concerning the presence of benzene in the Covered Products. § 7.2(a). The Settlement Agreement expressly excludes any claims for personal and/or bodily injuries and explains that Settlement Class Members are not releasing any claims, demands, rights, damages, obligations, suits, debts, liens, and causes of action relating to bodily injuries allegedly caused by the Covered Products. § 7.2(d).

### D.     Attorneys' Fee, Cost, and Incentive Awards

Prior to the scheduled hearing on Final Approval and in accordance with the Courts' regular notice requirements, Plaintiffs' Counsel may apply to the Court for an award of their Attorneys' Fees and Costs in a total amount not to exceed one-third of the Settlement Fund, to which Defendants retain the right to object. § 5.1. In addition, prior to the scheduled hearing on Final Approval and in accordance with the Courts' regular notice requirements, the Class Representatives may apply to the Court for an incentive award from Defendants of up to $1,000 each as compensation for the time and effort undertaken in and risks of pursuing this Litigation. §

5.2.

**E.     Settlement Administration and The Notice Plan**

The Settlement Agreement seeks appointment of Angeion Group ("Angeion") as the Claim Administrator to effectuate and administer the Notice Plan.   *See* § 2.5.   The Parties selected Angeion based on its reputation for excellent work and breadth of experience administering other similar consumer class actions.   Schaffer Dec ¶¶ 29-30.

The Claim Administrator shall establish the Settlement Website, which shall contain the Long Form Notice in both downloadable PDF format and HTML format with a clickable table of contents; answers to frequently asked questions; a Contact Information page that includes the address for the Claim Administrator and addresses for Class Counsel; the Consolidated Class Action Complaint; the Agreement; the signed order of Preliminary Approval; a downloadable and online version of the Claim Form; a downloadable and online version of the form by which Settlement Class Members may exclude themselves from the Settlement Class; and (when it becomes available) Plaintiffs' application for Attorneys' Fees and Costs and application for incentive awards. § 4.1.

Angeion, with the assistance of the Parties, developed the Notice Plan, which includes: (1) Notice of Settlement and Claim Form sent by mail if an address is available; (2) digital/internet publication designed to targeted purchasers of the Covered Products; (3) a dedicated Settlement Website though which Settlement Class Members can obtain more detailed information about the Settlement and access case documents; (4) a toll-free telephone number through which Settlement Class Members can obtain additional information about the Settlement and directs them to the Settlement Website; and (5) all required notices in accordance with Defendants' obligations pursuant to 28 U.S.C. §1715. *See* Ex. B

Angeion analyzed the demographic and media usage of potential Settlement Class

Members to ensure the notice effectively targets the Settlement Class.  *See* Ex. B ¶¶ 21-23. Specifically, Angieon designed a media campaign that is estimated to reach at least 75% of potential Settlement Class members.  *Id*. ¶13.; FEDERAL JUDICIAL CENTER, JUDGES' CLASS ACTION NOTICE AND CLAIMS PROCESS CHECKLIST AND PLAIN LANGUAGE GUIDE, at 3 (2010) (explaining a proposed notice plan should "reach between 70-95%" of class members).  The media campaign will consist of a digital effort utilizing a form of internet advertising known as Programmatic Display Advertising, which is the leading method of buying digital advertisements in the United States, to provide notice of the Settlement to Class Members.  *Id*.  ¶17. The media plan will also include a campaign on the top social media sites (Facebook and Instagram) and a paid search campaign on Google.  *Id*. ¶¶ 26-29.   The digital effort utilizes best practices in targeting the Settlement Class and will directly link users to the Settlement Website where they can access more information, as well as file an online claim.  *Id*. ¶¶ 17, 32.   In addition to the digital effort, direct notice by mail to any known Settlement Class Members will extend notice exposure further as well as a press release.  *Id*. ¶¶ 15, 30.

## ARGUMENT

## I.     PRELIMINARY APPROVAL OF THE SETTLEMENT IS APPROPRIATE

"Preliminary approval of a class action settlement, in contrast to final approval, is at most a determination that there is what might be termed 'probable cause' to submit the proposal to class members and hold a full-scale hearing as to its fairness."  *Menkes v. Stolt-Nielsen S.A.*, 270 F.R.D. 80, 101 (D. Conn. 2010) (cleaned up).  "As such, it is appropriate where it is the result of serious, informed, and non-collusive negotiations, where there are no grounds to doubt its fairness and no other obvious deficiencies [] and where the settlement appears to fall within the range of possible approval."  *Id.*

There is a "strong judicial policy in favor of settlements, particularly in the class action

context." *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc*., 396 F.3d 96, 116 (2d Cir. 2005) (internal quotations omitted); *see also* NEWBERG ON CLASS ACTIONS § 11.41 (4th ed. 2002) ("The compromise of complex litigation is encouraged by the courts and favored by public policy."). "Courts have discretion regarding the approval of a proposed class action settlement." *Jara v. Felidia Restaurant, Inc.*, 2018 WL 11225741, at *1 (S.D.N.Y. Aug. 20, 2018). "In exercising this discretion, courts should give weight to the parties' consensual decision to settle class action cases because they and their counsel are in unique positions to assess potential risks." *Id*. "Due to the presumption in favor of settlement, absent fraud or collusion, courts should be hesitant to substitute their judgment for that of the parties who negotiated the settlement." *Peoples v. Annucci*, 180 F. Supp. 3d 294, 307 (S.D.N.Y. 2016) (cleaned up).

"Preliminary approval of a settlement agreement requires only an initial evaluation of the fairness of the proposed settlement on the basis of written submissions and an informal presentation by the settling parties." *Holick v. Cellular Sales of New York, LLC*, 2022 WL 3265133, at *2 (N.D.N.Y. July 25, 2022). "To grant preliminary approval, a court need only find probable cause to submit the settlement proposal to class members." *Pacheco*, 2022 WL 16647755, at *1 (cleaned up). "If the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness … and appears to fall within the range of possible approval," the court should permit notice of the settlement to be sent to class members. NEWBERG § 11.25. "Fairness is determined upon review of both the terms of the settlement agreement and the negotiating process that led to such agreement." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 184 (W.D.N.Y. 2005). "A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores*, 396 F.3d at 116 (internal quotations omitted).

In evaluating a class action settlement, courts in the Second Circuit consider the nine factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974) ("*Grinnell*"). The *Grinnell* factors are:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Grinnell*, 495 F.2d at 463.

Courts should also consider the "four enumerated factors in the new [Federal Rule of Civil Procedure] Rule 23(e)(2), in addition to the nine *Grinnell* factors." *Johnson v. Rausch, Sturm, Israel, Enerson & Hornik, LLP*, 333 F.R.D. 314, 420 (S.D.N.Y. 2019). The Rule 23(e) factors are whether:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). "There is significant overlap between the Rule 23(e)(2) and *Grinnell* factors, which complement, rather than displace each other." *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, 2019 WL 6875472, at *14 (E.D.N.Y. Dec. 16, 2019) ("*In re Payment Card II*").

## A.     The *Grinnell* Factors

**1.      The Settlement Amount Is Reasonable In Light Of The Possible Recovery And The Attendant Risks Of Litigation (*Grinnell* Factors 8 And 9)**

"It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not *per se* render the settlement inadequate or unfair." *Philemon v. Aries Capital Partners, Inc.*, 2019 WL 13224983, at *12 (E.D.N.Y. July 1, 2019).  Instead, "[w]hen the proposed settlement provides a meaningful benefit to the class when considered against the obstacles to proving plaintiff's claims with respect to damages in particular, the agreement is reasonable." *Id*.  Moreover, when a settlement assures immediate payment of amounts to Class Members and does not "sacrific[e] speculative payment of a hypothetically larger amount years down the road," the settlement is reasonable.  *See Gilliam v. Addicts Rehab. Ctr. Fund*, 2008 WL 782596, *5 (S.D.N.Y. Mar. 24, 2008) (cleaned up).

In the Second Circuit, courts are required to calculate the value of a Settlement in terms of the amount of relief *made available* to Class Members, as opposed to the amount that may actually be claimed.  *Cf. Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 437 (2d Cir. 2007) (basing award of attorneys' fees on "the total funds made available, whether claimed or not" because "[t]he entire Fund, and not some portion thereof, is created through the efforts of counsel at the instigation of the entire class.").  To that end, Class Counsel has made $1.95 million in value available to Class Members.  § 3.1.  Settlement Class Members who submit a Valid Claim Form with Proof of Purchase shall receive $3.00 for each Covered Product listed on the Proof of Purchase, inclusive of all taxes. § 3.4(a).  Settlement Class Members who submit a Valid Claim Form without Proof of Purchase shall receive $1.75 for up to five (5) Covered Products claimed per household. § 3.4(b).  This represents between a  47 % to  80% recovery per Covered Product, which is within the range of reasonableness. *See* Schaffer Dec ¶ 31; *City of Providence v. Aeropostale, Inc.*, 2014 WL 1883494, at *9 (S.D.N.Y. May 9, 2014) (approving settlement that

"represent[ed] a recovery in the range of approximately 9.2% to 21% of estimated damages"); *In re Gilat Satellite Networks, Ltd.*, 2007 WL 2743675, at *12 (E.D.N.Y. Sept. 18, 2007) (approving $20 million settlement representing 10% of maximum damages).  Further, the total monetary relief provided to Class Members—$1.95 million—is 9 % of Defendants' total potential liability in this action under a total disgorgement theory. Schaffer Decl. ¶ 32. However, the full disgorgement theory would have been challenged by Defendants and may not have succeeded because not all units of product were contaminated and Defendants would argue that even contaminated products are not completely worthless, i.e., they still have antiperspirant in them. Schaffer Decl. ¶ 33.   As a result, Plaintiffs likely damage theory to succeed here likely would have been based on the premium class members paid over what they would have paid had they known about the contamination or risk of contamination. *Id.* ¶ 34 . Class counsel consulted with an economic expert who estimated, the best-case, price-premium scenario for products like this was around 30% of the purchase price. *Id.* ¶ 35 , *See Declid et al. v. Tcp Hot Acquisition LLC et al.*, 1:21-cv-09569-DLC (S.D.N.Y) at ECF Doc. 99 ¶ 25. The Class's best day under a price premium model would be $6.6 million dollars. Schaffer declaration ¶ 36 . Thus, the class here is recovering somewhere between 9% (full disgorgement) and 30% of the price premium of what it might have recovered at trial, which is likewise reasonable per the aforementioned authorities. Schaffer Dec. ¶ 37.

Finally, the value provided to Class Members is even more reasonable in light of the substantial risks in this case.  Class actions involving the alleged benzene contamination of drug and cosmetic products have met mixed fates at the pleadings stage. *Compare Barnes v. Unilever United States Inc.*, 2022 WL 2915629, at *3 (N.D. Ill. July 24, 2022) (largely denying motion to dismiss claims involving benzene contamination of antiperspirant products); *with Bowen v. Energizer Holdings, Inc.*, 2022 WL 18142508, at *5 (C.D. Cal. Aug. 29, 2022) (granting motion to dismiss claims involving benzene contamination of sunscreen products).  Even beyond the

pleadings, consumer cases involving contaminated products have met drastically different results. *Compare In re Valsartan, Losartan, and Irbesartan Prods. Liab. Litig.*, 2023 WL 181922, at *56 (D.N.J. Feb. 8, 2023) (certifying economic loss class of purchasers of contaminated hypertension medications); *with In re Zantac (Ranitidine) Prods. Liab. Litig.*, --- F. Supp. 3d ---, 2022 WL 17480906, at *167-68 (S.D. Fla. Dec. 6, 2022) (granting summary judgment against plaintiffs who alleged consumption of contaminated heartburn medications gave them cancer).  Especially in light of these risks, the value provided by the Settlement is more than reasonable and meets these *Grinnell* factors.

### B.     The Rule 23(e)(2) Factors

#### 1.     The Class Representatives And Class Counsel Have Adequately Represented The Class

"Determination of adequacy typically entails inquiry as to whether: (1) plaintiff's interests are antagonistic to the interest of other members of the class and (2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation."  *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, 330 F.R.D. 11, 30 (E.D.N.Y. 2019) ("*In re Payment Card I*") (internal quotations omitted).  Here, "plaintiffs' interests are aligned with other class members' interests because they suffered the same injuries": they purchased Covered Products that contained or were at risk of containing benzene.  *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 692 (S.D.N.Y. 2019).  "Because of these injuries, plaintiffs have an interest in vigorously pursuing the claims of the class."  *Id.* (internal quotations omitted).  This Court previously evaluated Plaintiffs. Counsel's qualifications and determined they and their respective firms met the requirements of Rule 23(g) when appointing them Interim Co-Lead Counsel. (ECF No. 31).  Further, courts have previously found that Plaintiffs' Counsel adequately meet the obligations and responsibilities of class counsel.  Schaffer Dec ¶¶ 42-46.

#### 2.     The Settlement Was Negotiated At Arm's Length

"If a class settlement is reached through arm's-length negotiations between experienced, capable counsel knowledgeable in complex class litigation, the Settlement will enjoy a presumption of fairness." *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d at 693 (internal quotations omitted).  Further, "[a] settlement like this one, reached with the help of a third-party neutral, enjoys a presumption that the settlement achieved meets the requirements of due process." *Jara*, 2018 WL 11225741, at *2 (cleaned up).  Here, both counsel for Plaintiffs and for Defendants are experienced in class action litigation.  Schaffer Decl. ¶ 27.  Moreover, the Parties participated in a mediation before Judge Welsh and engaged in protracted settlement discussions.  Schaffer Decl. ¶ 28. This weighs heavily in favor of approval.

### 3.     The Settlement Provides Adequate Relief To The Class

Whether relief is adequate considers "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims, if required; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)."  Rule 23(e)(2)(C)(i-iv).

*"The costs, risks, and delay of trial and appeal."*  This factor "subsumes several *Grinnell* factors … including: (i) the complexity, expense and likely duration of the litigation; (ii) the risks of establishing liability; (iii) the risks of establishing damages; and (iv) the risks of maintaining the class through the trial.  *In re Payment Card I*, 330 F.R.D. at 36.  As noted above, the Settlement has met each of these *Grinnell* factors.

*"The effectiveness of any proposed method of distributing relief to the class."*  Class Members need only submit a simple claim form to receive monetary relief.  § 3.4(a)-(b) This is a reasonable method of distributing relief to Class Members.  *See*, *e.g.*, *Patellos v. Hello Products, LLC*, 2022 WL 2159566, at *1 (S.D.N.Y. June 15, 2022) (holding "the relief provided to the

17

Settlement Class is adequate taking into account, *inter alia* … the proposed method of distributing payments to the Settlement Class" where class members were required to submit a claim form to receive monetary relief); *Jenkins v. National Grid USA Serv. Co.*, 2022 WL 2301668, at *3 (E.D.N.Y. June 24, 2022) (same); *Patti's Pitas, LLC v. Wells Fargo Merchant Servs., LLC*, 2021 WL 9564432, at *1 (E.D.N.Y. Feb. 8, 2021) (same where "all Former Customers eligible to receive a payment [could] fil[e] a simple claim form").

*"The terms of any proposed award of attorneys' fees."*  In the Second Circuit, an award of attorneys' fees is based on "the total funds made available, whether claimed or not" because "[t]he entire Fund, and not some portion thereof, is created through the efforts of counsel at the instigation of the entire class." *Masters*, 473 F.3d at 437.  Here, Plaintiffs' Counsel has agreed to petition the Court for no more than six-hundred fifty thousand dollars ($650,000). § 5.1.  This is 33.33% of the $1.95 million in monetary relief that Plaintiffs' Counsel has made available, which is line with the benchmark for fees in the Second Circuit.  *Trinidad v. Pret a Manger (UDS) Ltd.*, 2014 WL 4670870, at *11 (S.D.N.Y. Sept. 19, 2014) ("[A]warding fees of 33% is common in this district."); *Hernandez v. Uzzal Pizzeria, Inc.*, 2022 WL 1032522, at *1 (S.D.N.Y. Apr. 6, 2022) (same); *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 477 (S.D.N.Y. 2013) ("Class Counsel's request for 33% of the Fund is reasonable and consistent with the norms of class litigation in this circuit.") (cleaned up).

*"Any agreement required to be identified by Rule 23(e)(3)."*  This factor requires identification of "any agreement made in connection with the proposal." *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d at 696.  No such agreement exists other than the Settlement.

### 4.   The Settlement Treats All Class Members Equally

This Rule 23(e)(2) factor discusses "whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of

the release may affect class members in different ways that bear on the apportionment of relief." *In re Payment Card I*, 330 F.R.D. at 47.  Here, although Class Members with Proof of Purchase will receive more per unit than those without Proof of Purchase, that does not mean Class Members are treated inequitably.  *Patellos*, 2022 WL 2159566, at *1 (finding "the Settlement Agreement treats the Settlement Class Members equitably relative to one another" where class members with proof of purchase could make claims for up to ten products, versus up to five products without proof of purchase); *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, 2020 WL 7389330, at *3 (S.D.N.Y. Dec. 16, 2020) ("[T]he agreement appears to treat class members roughly equally. The agreement sets forth a formula to determine the value of a class member's claim that depends on 1) the product purchase price in the jurisdiction where the member bought the product, and 2) the quality of proof of purchase presented by the class member.").  Further, all Class Members' claims are subject to upward or downward *pro rata* adjustment.  A *pro rata* distribution has been found by courts in this Circuit to be equitable.  *Meredith Corp. v. SESAC, LLC*, 87 F. Supp. 3d 650, 667 (S.D.N.Y. 2015) (finding that a *pro rata* distribution plan "appears to treat the class members equitably … and has the benefit of simplicity"); *Gordon v. Vanda Pharmaceuticals Inc.*, 2022 WL 4296092, at *5 (E.D.N.Y. Sept. 15, 2022) (finding class members were treated equally where "all class members will be subject to the same formula for the distribution of the fund") (cleaned up).

## II.   CONDITIONAL CERTIFICATION OF THE RULE 23 CLASS IS APPROPRIATE

"Before approving a class settlement agreement, a district court must first determine whether the requirements for class certification in Rule 23(a) and (b) have been satisfied."  *In re Payment Card I*, 330 F.R.D. at 50.  Under Fed. R. Civ. P. 23(a), a class action may be maintained if all of the prongs of Fed. R. Civ. P. 23(a) are met, as well as one of the prongs of Fed. R. Civ. P. 23(b).  Fed. R. Civ. P. 23(a) requires that:

19

> (1)  the class is so numerous that joinder of all members is impracticable;
>
> (2)  there are questions of law or fact common to the class;
>
> (3)  the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4)  the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

As relevant here, Fed. R. Civ. P. 23(b)(3) requires the court to find that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."

### A.  The Proposed Settlement Class Meets the Requirements of Rule 23(a)

#### 1.  Numerosity

Numerosity is satisfied when the class is "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  Here, the total number of units sold is more than 6 million over a three-year period. Schaffer Decl. ¶ 38. Clearly, the class consists of hundreds of thousands if not more than a million consumers who purchased the Covered Products. *Id.* Numerosity is therefore met.  *In re Synchrony Financial Sec. Litig.*, 2023 WL 1503032, at *3 (D. Conn. Feb. 3, 2023) ("Numerosity is presumed where a putative class has forty or more members.") (cleaned up). Joinder of so many class members is impractical.

#### a)  There are Common Questions of Law and Fact

The commonality requirement is satisfied if "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality requires that the proposed class members' claims all centrally "depend upon a common contention," which "must be of such a nature it is capable of class wide resolution," meaning that "determination of its truth or falsity will resolve an issue

that is central to the validity of each one of the claims in one strike." *Wal-mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). "[F]or purposes of Rule 23(a)(2) even a single common question will do." *Id.* at 359.

Here, there are common issues of law and fact that affect the Class uniformly and satisfy the commonality requirement, including, among other things: whether Defendants' failure to disclose the presence or the risk of benzene in the Covered Products was likely to deceive reasonable consumers. Resolution of this common question would require evaluation of the question's merits under a single objective standard, i.e., the "reasonable consumer" test. *Hart v. BHH, LLC*, 2017 WL 2912519, at *6 (S.D.N.Y. July 7, 2017) (commonality met where "the putative class members relied on the same alleged misrepresentations of fact regarding the efficacy of the pest repeller and suffered the same economic harm."). Additional questions of law and fact common to all members of the Settlement Class include the following:

- Whether the Covered Products: (1) contain dangerously high levels of benzene at the time of purchase; (2) are defectively designed, formulated, and/or manufactured; (3) are adulterated and misbranded due to the presence of benzene; and (4) are illegal to sell under both federal and state law;

- Whether Defendants knew or should have known the Covered Products contained or were at the risk of containing elevated levels of benzene prior to selling them;

- Whether Defendants omitted or failed to disclose material information to the Settlement Class regarding the Covered Products;

- Whether Defendants' marketing, advertising, packaging, labeling, and other promotional materials for the Covered Products are deceptive;

- Whether Defendants: (1) violated the consumer statutes set forth in Plaintiffs' Consolidated Amended Class Action Complaint (ECF No. 38); (2) breached

express warranties with regard to the Covered Products; and (3) breached the implied warranty of merchantability;

- Whether Defendants are liable to the Settlement Class for unjust enrichment, fraud, and/or fraudulent concealment;

- Whether members of the Settlement Class: (1) were injured and the proper measure of their losses as a result of those injuries; (2) are entitled to damages and the amount of such damages (including compensatory, exemplary, statutory damages, and/or punitive damages); and (3) are entitled to declaratory, injunctive, or other equitable relief.

Based on the foregoing, the commonality requirement of Rule 23(a)(2) is met because these questions of law and facts are common to all members of the Settlement Class. Commonality is also met here because Defendant's conduct with respect to all the Covered Products is the same.

### b) Lead Plaintiffs' Claims are Typical of Those of the Settlement Class

Rule 23(a)(3) requires that the class representatives' claims be "typical" of the claims of the class. Fed. R. Civ. P. 23(a)(3). To satisfy this requirement, Plaintiffs must show that "the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented." *Robidoux v. Celani*, 987 F.2d 931, 936-37 (2d Cir. 1993). "[D]ifferences in the degree of harm suffered, or even in the ability to prove damages, do not vitiate the typicality of a representative's claims." *In re Nissan Radiator/Transmission Cooler Litig.*, 2013 WL 4080946, at *19 (S.D.N.Y. May 30, 2013). "[C]omplete symmetry between the class representative's claims and those of the absent class members" is not required, *In re Vitamin C Antitrust Litig.*, 279 F.R.D. 90, 105 (E.D.N.Y. 2012) (citation omitted), "so long as the named plaintiff's claims share the same essential characteristics as that of the proposed class." *Marcus v. AXA Advisors, LLC*, 307 F.R.D. 83, 99–100 (E.D.N.Y. 2015). Courts interpret this requirement to mean that "'each class member's

claim arises from the *same course of events* and each class member makes *similar legal arguments* to prove the defendant's liability.'" *Kurtz v. Kimberly-Clark Corp.,* 321 F.R.D. 482, 532 (E.D.N.Y. 2017) (citing *Ebin v. Kangadis Food Inc.,* 297 F.R.D. 561, 564–65 (S.D.N.Y. 2014)) (citing *Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993)).

Here, the alleged injuries to Lead Plaintiffs and members of the Settlement Class are attributable to the same alleged course of conduct by Defendants, and liability for this conduct is predicated on the same legal theories. *Robidoux*, 987 F.2d at 936-37. Like the Lead Plaintiffs, each member of the Settlement Class was exposed to the same deceptive marketing practices and purchased Products that contained benzene or were at the risk of containing benzene, a known carcinogen, without intending to do so. Lead Plaintiffs and members of the Settlement Class suffered the same harm because the Covered Products were falsely marketed as safe for normal use when, in reality, they contained or were at the risk of containing benzene. Stated differently, the harm suffered by Lead Plaintiffs is representative of the harmed suffered by members of the Settlement Class because they purchased products that were contaminated with or were at the risk of being contaminated with benzene without intending to do so, thereby incurring economic injuries.

Here, Lead Plaintiffs' and Class Members' claims arise from the same nucleus of facts and are based on the same alleged contamination and legal theories. Thus, Lead Plaintiffs "have the incentive to prove all elements of the cause of action which would be presented by the individual members of the class were they initiating individualized actions." *Ligon, et al., v. City of New York, et al.*, 2012 WL 5871237 (S.D.N.Y.) (citing *Floyd v. City of New York*, 283 F.R.D. 153, 160 (S.D.N.Y. 2012)). Accordingly, the typicality requirement of Rule 23(a) is satisfied.

     **c) Lead Plaintiffs will Fairly and Adequately Protect the Settlement Class**

Rule 23(a)(4) permits certification of a class only if "the representative parties will fairly and adequately protect the interests of the class," which requires: (1) the class representatives do not have conflicting interests with other class members; and (2) class counsel is "qualified, experienced and generally able to conduct the litigation." *Marisol A. by Forbes v. Giuliani*, 126 F.3d 372, 378 (2d Cir. 1997); *see also Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997)("The adequacy inquiry . . . serves to uncover conflicts of interest between named parties and the class they seek to represent. A class representative must be part of the class and possess the same interest and suffer the same injury as the class members.").

Lead Plaintiffs and their counsel are adequate. To satisfy the first requirement, plaintiffs must show that "the members of the class possess the same interests" and that "no fundamental conflicts exist" between the class representatives and class members. *Charron v. Wiener*, 731 F.3d 241, 249 (2d Cir. 2013). Here, Lead Plaintiffs do not have any conflicts of interest with the absent members of the proposed Settlement Class, as their claims are coextensive with those of the proposed Settlement Class. *General Tel. Co. v. Falcon*, 457 U.S. 147, 157-58, fn. 13 (1982). Lead Plaintiffs possess the same interests as members of the proposed Settlement Class because they have incurred the same alleged injuries, which occurred in the same manner and based on the same allegedly misleading conduct concerning the Covered Products. *See generally* Plaintiffs' Amended Complaint (ECF No. 38)(explaining Lead Plaintiffs and other members of the Settlement Class purchased the Products during the Class Period and were injured at the point of sale as a result of the Products' alleged misbranding and misrepresentations). Lead Plaintiffs have also fulfilled Rule 23(a)(4)'s second requirement and shown their commitment to this case by retaining qualified counsel to vigorously litigate their claims. Class Counsel have invested considerable time and resources into the prosecution of this case, have an extensive and proven track record of success in class actions generally and false advertising cases specifically, and have been appointed class

counsel on numerous occasions. *See* Schaffer Dec ¶¶ 42-46. Accordingly, Rule 23(a)(4) is satisfied.

> **2. The Settlement Class Satisfies the Requirements of Rule 23(b)(3) Because Common Issues of Law and Fact Predominate and a Class Action is Superior to Other Methods of Adjudication**

Rule 23(b)(3) authorizes class certification if the Court finds "questions of law or fact common to class members predominate over any questions affecting only individual members, and . . . a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The Second Circuit has held that "to meet the predominance requirement … a plaintiff must establish that the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, predominate over those issues that are subject only to individualized proof." *Augustin v. Jablonsky* (In re Nassau County Strip Search Cases), 461 F.3d 219, 227-28 (2d Cir. 2006). But when class certification is sought solely for settlement purposes, such as in this case, the court's inquiry into whether individual issues "would present intractable management problems" is foreclosed because "the proposal is that there be no trial." *Id.* at 620; Resultingly, "the predominance inquiry will sometimes be easier to satisfy in the settlement context." *Tart v. Lions Gate Ent. Corp.*, 2015 WL 5945846, at *4 (S.D.N.Y, Oct. 13, 2015); *see Amchem Prods.*, 521 U.S. at 625 (explaining that consumer fraud cases readily satisfy the predominance inquiry).

"Common questions that yield common answers" and are "apt to drive the resolution of this case" predominate over any individual issues. *Dukes*, 564 U.S. at 345. In this case, Rule 23(b)(3)'s predominance requirement is easily satisfied because all of Plaintiffs' claims arise out of Defendant's marketing and sale of the Covered Products. Common questions include but are not limited to: whether the Products contain benzene, whether Defendants knew or should have known of the alleged benzene contamination, whether Defendants' failure to disclose the presence

of benzene in the Covered Products was likely to deceive reasonable consumers, and whether the omissions were material. These central common questions predominate over any questions that may affect individual Settlement Class Members, are subject to "generalized proof," and "outweigh those issues that are subject to individualized proof." *In re Nassau Cty. Strip Search Cases*, 461 F.3d at 227–28.

Plaintiffs also satisfy Rule 23(b)(3)'s superiority requirement because common questions comprise a substantial aspect of the case and can be resolved for all Class Members in a single adjudication, obviating the need for multiple trials in multiple venues. Importantly, "[t]he potential class members are both significant in number and geographically dispersed" and "[t]he interest of the class as a whole in litigating the many common questions substantially outweighs any interest by individual members in bringing and prosecuting separate actions." *Meredith Corp.*, 87 F. Supp. 3d at 661. The "small recoveries" at stake here likely "do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." *Tart*, 2015 WL 5945846, at *5. Additionally, a class action will conserve judicial resources because "rather than individually settling [thousands of] lawsuits, the proposed Settlement allows for the named Plaintiffs, class members, and Defendants to resolve all claims … at once." *Id*. Moreover, it is desirable to concentrate the claims in this Court as the Court is already familiar with the factual and legal issues in the case.

Finally, since this is a request for class certification only for purposes of settlement, the Court need not inquire as to whether the case, if tried, would present management problems. *See Amchem*, 521 U.S. at 620. For all of the foregoing reasons, a class action is superior to individual suits.

## III. THE COURT SHOULD APPROVE THE PROPOSED FORM OF NOTICE AND PLAN FOR PROVIDING NOTICE TO THE SETTLEMENT CLASS

"Rule 23(e)(1)(B) requires the court to 'direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise' regardless of whether the class was certified under Rule 23(b)(1), (b)(2), or (b)(3)." MANUAL FOR COMPLEX LITIGATION § 21.312 (4th ed. 2004). "The standard for the adequacy of a settlement notice in a class action under either the Due Process Clause or the Federal Rules is measured by reasonableness." *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc*., 396 F.3d 96, 113 (2d Cir. 2005). Courts "must direct to class members the best notice that is practicable under the circumstances." *Vargas v. Capital One Fin. Advisors,* 559 F. App'x 22, 26 (2d Cir. 2014).

Here, the robust proposed Notice Plan meets the requirements of due process and the Federal Rules of Civil Procedure. Angeion analyzed the demographic and media usage of potential Settlement Class Members to ensure the notice effectively targets the Settlement Class. *See* Ex. B ¶¶ 21-23. Specifically, Angieon designed a media campaign that is estimated to reach at least 75% of potential Settlement Class members. *Id*. ¶13.; FEDERAL JUDICIAL CENTER, JUDGES' CLASS ACTION NOTICE AND CLAIMS PROCESS CHECKLIST AND PLAIN LANGUAGE GUIDE, at 3 (2010) (explaining a proposed notice plan should "reach between 70-95%" of class members). The media campaign will consist of a digital effort utilizing a form of internet advertising known as Programmatic Display Advertising, which is the leading method of buying digital advertisements in the United States, to provide notice of the Settlement to Class Members. *Id*. ¶17. The media plan will also include a campaign on the top social media sites (Facebook and Instagram) and a paid search campaign on Google. *Id* . ¶¶ 26-29. The digital effort utilizes best practices in targeting the Settlement Class and will directly link users to the Settlement Website where they can access more information, as well as file an online claim. *Id* . ¶¶ 17, 32. In addition to the digital effort, direct notice by mail to any known Settlement Class Members will extend notice exposure further as well as a press release. *Id*. ¶¶ 15, 30.

Substantively, Rule 23(c)(2)(B) requires, and the Notices of Settlement provides, information, written in easy-to-understand plain language, regarding: "(i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who request exclusions; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)." Fed. R. Civ. P. 23(c)(2)(B). "There are no rigid rules to determine whether a settlement notice to the class satisfies constitutional or Rule 23(e) requirements; the settlement notice must 'fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings.'" *Visa*, 396 F.3d at 114.

Here, the Notices of Settlement define the Settlement Class; explain all Settlement Class Members' rights, the scope and impact of Released Claims, and the applicable deadlines for submitting claims, objecting, and opting out; and they describe in detail the injunctive and monetary relief of the Settlement, including the procedures for allocating and distributing the Settlement Fund amongst the Settlement Class Members, Plaintiffs, Class Counsel, and the Settlement Administrator. Exs. B1, B2. They also plainly indicate the time and place of the Final Approval and explain the methods for objecting to, or opting out of, the settlement. *Id.* They detail the provisions for payment of Attorneys' Fees, Costs and Service Awards, and they provide contact information for Class Counsel. *Id.* Lead Plaintiffs respectfully request that the proposed notice procedures be approved.

## IV.     CONCLUSION

For the foregoing reasons, Lead Plaintiffs respectfully request that the Court (i) preliminarily approve the proposed Settlement, (ii) approve the proposed form and manner of notice to putative Settlement Class Members, and (iii) schedule a date and time for the Settlement Hearing to consider final approval of the Settlement and related matters.

Dated: April 26, 2023                       Respectfully submitted,

                                            By: */s/ Charles E. Schaffer*
                                                    Charles E. Schaffer

                                            **LEVIN SEDRAN & BERMAN LLP**
                                            David C. Magagna Jr., Esq. (*pro hac vice*)
                                            Charles E. Schaffer, Esq. (*pro hac vice*)
                                            510 Walnut Street, Suite 500
                                            Philadelphia, PA 19106
                                            Tel: 215-592-1500
                                            dmagagna@lfsblaw.com
                                            cschaffer@lfsblaw.com


                                            **REARDON SCANLON LLP**
                                            James J. Reardon, Jr.
                                            45 South Main Street, 3rd Floor
                                            West Hartford, CT  06107
                                            Telephone: (860) 955-9455
                                            Facsimile:  (860) 920-5242
                                            Email:  james.reardon@reardonscanlon.com

                                            **BURSOR & FISHER, P.A.**
                                            Sarah N. Westcot (*pro hac vice*)
                                            701 Brickell Ave, Suite 1420
                                            Miami FL, 33131
                                            Telephone: (305) 330-5512
                                            Facsimile:  (305) 676-9006
                                            E-Mail: swestcot@bursor.com

                                            **BURSOR & FISHER, P.A.**
                                            Max S. Roberts (*pro hac vice*)
                                            888 Seventh Avenue
                                            New York, NY 10019
                                            Telephone: (646) 837-7150
                                            Facsimile:  (212) 989-9163
                                            Email: mroberts@bursor.com

                                            **THE SULTZER LAW GROUP, P.C.**
                                            Jason P. Sultzer, Esq. (*pro hac vice*)
                                            Joseph Lipari, Esq. (*pro hac vice*)

29

Daniel Markowitz, Esq. (*pro hac vice*)
270 Madison Avenue, Suite 1800
New York, NY 10016
Tel: (845) 483-7100
Fax: (888) 749-7747
sultzerj@thesultzerlawgroup.com
liparij@thesultzerlawgroup.com
markowitzd@thesultzerlawgroup.com


**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
Nick Suciu, III, Esq.*
6905 Telegraph Rd., Suite 115
Bloomfield Hills, MI 48301
Tel.: (313) 303-3472
Fax: (865) 522-0049
E-Mail: nsuciu@milberg.com


**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
Jennifer Czeisler, Esq.*
Virginia Ann Whitener, Esq.*
Russell Busch, Esq.*
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
Tel.: (865) 247-0080
Fax: (865) 522-0049
E-Mail: jczeisler@milberg.com
        gwhitener@milberg.com
        rbusch@milberg.com


**LEVI & KORSINSKY LLP**
Mark S. Reich (*pro hac vice*)
Courtney E. Maccarone (*pro hac vice*)
55 Broadway, 10th Floor
New York, NY 10006
Telephone: (212) 363-7500
Facsimile: (212) 363-7171
Email: mreich@zlk.com
        cmaccarone@zlk.com


*Pro hac vice application forthcoming*

*Counsel for Plaintiffs and the Class*