# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| JASON GOLDSTEIN, BRAD DAVIS, MARIA LAZO, MOSANTHONY WILSON and JAMES CORSEY on behalf of themselves and all others similarly situated,<br><br>            Plaintiffs,<br><br>v.<br><br>HENKEL CORPORATION and THRIVING BRANDS LLC,<br><br>            Defendants. | Case No. 3:22-cv-00164-AWT<br><br>Hon. Alvin W. Thompson |

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR ATTORNEYS' FEES, LITIGATION COSTS, AND SERVICE AWARDS

# TABLE OF CONTENTS

Table of Contents…………………………………………………………………………..i-ii

Table of Authorities…………………………………………………………………iii-viii

PRELIMINARY STATEMENT………………………………………………………1

ARGUMENT…………………………………………………………………….....4

    I.    LEGAL STANDARD……………………………………………………4

        A.  Federal Rule of Civil Procedure 23(h) and the *Goldberger* Factors………………4

        B.  The Percentage-of-the-Fund Method is the Typical Method For Awarding Attorneys' Fees in Common Fund Cases in the Second Circuit…………………..5

    II.    CLASS COUNSELS' FEE REQUEST IS FAIR AND REASONABLE UNDER GOLDBERGER AND REPRESENTS A FAIR AND REASONABLE PERCENTAGE-OF-THE-FUND………………………………………………..7

        A.  The Fee Request is Reasonable Under the Goldberger Factors…………….…..8

            1.  Class Counsel Invested Substantial Time and Resources Over the Course of This Litigation…………………………………………………………..8

            2.  This Class Action Included Complex Legal Issues…………………………12

            3.  The Requested Fee is Warranted Based on the High-Risk Nature of the Litigation……………………………………………………………13

            4.  Class Counsel Provided (and Continues to Provide) High-Quality Representation………………………………………………………..17

            5.  The Fee Request Is Reasonable in Relationship to the Settlement…………..19

            6.  Public Policy Supports Approval of the Fee………………………....19

         B.  The Requested Fee Represents a Reasonable Percentage-of-the-Fund…………21

        C.  A Lodestar-Multiplier "Cross-Check" Further Confirms the Reasonableness of Class Counsels' Requested Fee……………………………………………..22

        D.  The Reaction of Class Members Supports Class Counsels' Fee Request……….24

III.    CLASS COUNSELS' REQUEST FOR REIMBURSEMENT OF LITIGATION COSTS IS REASONABLE…………………………………………………………….24

IV.    PLAINTIFFS' REQUEST FOR MODEST SERVICE AWARDS IS REASONABLE………………………………………………………………...…26

CONCLUSION…………………………………………………………………………………..26

**Page(s)**

**Cases**

*In re Am. Bank Note Holographics,*
127 F. Supp. 2d 418 (S.D.N.Y. 2001) .................................................................................13

*Asare v. Change Grp. of N.Y., Inc.,*
2013 WL 6144764 (S.D.N.Y. Nov. 18, 2013) .....................................................................23

*Bangoura v. Beiersdorf, Inc. and Bayer Healthcare, LLC,*
Case No. 1:22-cv-00291-BMC (S.D.N.Y.) ................................................................. *passim*

*Barnes v. Unilever United States Inc.,*
2022 WL 2915629 (N.D. Ill. July 24, 2022) .......................................................................15

*Barnes v. Unilever United States Inc.,*
2023 WL 2456385 (N.D. Ill. Mar. 11, 2023) ......................................................................15

*Beckman v. KeyBank, N.A.,*
293 F.R.D. 467 (S.D.N.Y. 2013) ............................................................................... *passim*

*Bowen v. Energizer Holdings, Inc.,*
2023 WL 1786731 (C.D. Cal. Jan. 5, 2023) .......................................................................15

*Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini,*
258 F. Supp. 2d 254 (S.D.N.Y. 2003) ...................................................................................6

*Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed*
*Care, L.L.C.,*
504 F.3d 229 (2d Cir. 2007) ...................................................................................................5

*Chatelain v. Prudential-Bache Sec.,*
805 F. Supp. 209 (S.D.N.Y. 1992) ......................................................................................17

*In re Citigroup Inc. Bond Litig.,*
988 F. Supp. 2d 371 (S.D.N.Y. 2013) .................................................................................12

*City of Providence v. Aéropostale, Inc.,*
2014 WL 1883494 (S.D.N.Y. May 9, 2014) .......................................................................23

*Clark v. Ecolab, Inc.,*
2010 WL 1948198 (S.D.N.Y. May 11, 2010) ................................................................8, 22

*Clinger v. Edgewell Personal Care Brands, LLC,*
2023 WL 2477499 (D. Conn. Mar. 13, 2023) .....................................................................15

*In re Colgate-Palmolive Co. ERISA Litig.*,
    36 F. Supp. 3d 344 (S.D.N.Y. 2014)......................................................22

*In re Credit Default Swaps Antitrust Litig.*,
    No. 13MD2476 (DLC),
    2016 WL 2731524 (S.D.N.Y. Apr. 26, 2016)...............................5, 23, 25

*Delcid et al. v. TCP Hot Acquisition LLC, et al.*,
    Case No. 1:21-cv-09569-DLC (S.D.N.Y) ...............................................17

*DeLeon v. Wells Fargo Bank, N.A.*,
    2015 WL 2255394 (S.D.N.Y. May 11, 2015) .........................................26

*deMunecas v. Bold Food, LLC*,
    2010 WL 3322580 (S.D.N.Y. Aug. 23, 2010) ........................................10

*Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974)...................................................................13

*Dornberger v. Metro. Life Ins. Co.*,
    203 F.R.D. 118 (S.D.N.Y. 2001) ...........................................................26

*In re Dreyfus Aggressive Growth Mut. Fund Litig.*,
    2001 WL 709262 (S.D.N.Y. June 22, 2001) .........................................14

*Edwards v. N. Am. Power & Gas, LLC*,
    2018 WL 3715273 (D. Conn. Aug. 3, 2018) (Bolden, J.) ...........4, 16, 26

*Flores v. Mamma Lombardi's of Holbrook, Inc.*,
    104 F. Supp. 3d 290 (E.D.N.Y. 2015) .....................................................5

*Frank v. Eastman Kodak Co.*,
    228 F.R.D. 174 (W.D.N.Y. 2005)......................................................17, 20

*Gagetta v. Walmart, Inc.*,
    --- F. Supp. 3d ---,
    2022 WL 17812924 (N.D. Cal. Dec. 19, 2022)......................................15

*Gevaerts v. TD Bank*,
    2015 WL 6751061 (S.D. Fla., Nov. 5, 2015).........................................14

*In re Glob. Crossing Sec. & ERISA Litig.*,
    225 F.R.D. 436 (S.D.N.Y. 2004) ...........................................................13

*Goldberger v. Integrated Res. Inc.*,
    209 F.3d 43 (2d Cir. 2000)............................................................ *passim*

*Gonzalez v. Pepsico, Inc.*,
　489 F. Supp. 2d 1233 (D. Kan. 2007) ....................................................................15

*Harris v. Pfizer Inc.*,
　586 F. Supp. 3d 231 (S.D.N.Y. 2022) (Cote, J.) ...................................................15

*Hernandez v. Uzzal Pizzeria, Inc.*,
　2022 WL 1032522 (S.D.N.Y. Apr. 6, 2022) ............................................................7

*Hesse v. Godiva Chocolatier, Inc.*,
　2022 U.S. Dist. LEXIS 72641 (S.D.N.Y. Apr. 20, 2022) ......................................24

*In re Hi-Crush Partners L.P. Sec. Litig.*,
　2014 WL 7323417 (S.D.N.Y. Dec. 19, 2014) ........................................................24

*Hicks v. Morgan Stanley & Co.*,
　2005 U.S. Dist. LEXIS 24890 (S.D.N.Y. Oct. 19, 2005) ......................................23

*In re Holocaust Victim Assets Litig.*,
　2007 WL 805768 (E.D.N.Y. Mar. 15, 2007) ..........................................................13

*Jermyn v. Best Buy Stores, L.P.*,
　2012 WL 2505644 (S.D.N.Y. June 27, 2012) ........................................................17

*In Re: Johnson & Johnson Aerosol Sunscreen Marketing, Sales Practices and
　Products Liability Litigation*,
　2023 U.S. Dist. LEXIS 32691 (S.D. Fla. Feb. 27, 2023) ............................... *passim*

*Karpus v. Borelli (In re Interpublic Sec. Litig.)*,
　2004 U.S. Dist. LEXIS 21429 (S.D.N.Y. Oct. 26, 2004) (Cote, J.) ......................11

*Kemp-Delisser v. Saint Francis Hosp. & Med. Ctr*,
　2016 WL 6542707 ........................................................................................ *passim*

*Khait v. Whirlpool Corp.*,
　2010 WL 2025106 (E.D.N.Y. Jan. 20, 2010) .....................................................8, 22

*Kiefer v. Moran Foods, LLC*,
　2014 WL 3882504 (D. Conn. July 31, 2014) .........................................................21

*In re Lloyd's American Trust Fund Litig.*,
　2002 WL 31663577 (S.D.N.Y. Nov. 26, 2002) ........................................................5

*Luib v. Henkel Consumer Goods, Inc.*,
　2018 U.S. Dist. LEXIS 18598 (S.D.N.Y. Feb. 5, 2018) .........................................22

*Luib v. Henkel Consumer Goods Inc.*,
　Case No. 1:17-cv-03021-BMC (E.D.N.Y.) .............................................................18

*Maley v. Del Glob. Techs. Corp.*,
    186 F. Supp. 2d 358 (S.D.N.Y. 2002)..............................................................20, 23

*In re Marsh & McLennan Cos., Inc. Sec. Litig.*,
    2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) ..........................................................7

*Masters v. Wilhelmina Model Agency, Inc.*,
    473 F.3d 423 (2d Cir. 2007)...................................................................................2, 6

*Mayhew v. KAS Direct, LLC*,
    7:16-cv-06981-VB (S.D.N.Y.), ECF No. 149 ..........................................................8

*McDaniel v. Cty. of Schenectady*,
    595 F.3d 411 (2d Cir. 2010).....................................................................................5

*Meredith Corp. v. SESAC, LLC*,
    87 F. Supp. 3d 650 (S.D.N.Y. 2015).......................................................................25

*In re Merrill Lynch Tyco Rsch. Sec. Litig.*,
    249 F.R.D. 124 (S.D.N.Y. 2008) ...........................................................................17

*Mills v. Elec. Auto-Lite Co.*,
    396 U.S. 375 (1970)................................................................................................25

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
    187 F.R.D. 465 (S.D.N.Y. 1998) .....................................................................13, 18

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
    991 F. Supp. 2d 437 (E.D.N.Y. 2014) ..............................................................17, 18

*In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*,
    Case No. 20-339-cv(L) (2d Cir. Mar. 15, 2023),10.................................................14

*Phillips Petroleum Co. v. Shutts*,
    472 U.S. 797 (1985)................................................................................................19

*In re Polaroid ERISA Litig.*,
    2007 WL 2116398 (S.D.N.Y. July 19, 2007) ..........................................................5

*In re Prudential Sec. Inc. Ltd. P'ship Litig.*,
    912 F. Supp. 97 (S.D.N.Y. 1996)...........................................................................12

*Puglisi v. TD Bank, N.A.*,
    2015 U.S. Dist. LEXIS 100668 (E.D.N.Y. July 30, 2015) .................................8, 22

*Raniere v. Citigroup Inc.*,
    310 F.R.D. 211 (S.D.N.Y. 2015) ......................................................................8, 22

*Rapoport-Hecht v. Seventh Generation, Inc.*,
  2017 U.S. Dist. LEXIS 219060 (S.D.N.Y. Apr. 28, 2017)................................8, 22

*Reyes v. Altamarea Grp.*,
  2011 WL 4599822 (S.D.N.Y. Aug. 16, 2011) ....................................8, 21

*In re Rite Aid Corp. Sec. Litig.*,
  396 F.3d 294 (3d Cir. 2006)........................................................5

*In re RJR Nabisco, Inc. Sec. Litig.*,
  1992 WL 210138 (S.D.N.Y. Aug. 24, 1992) ........................................23

*Savoie v. Merchants Bank*,
  166 F.3d 456 (2d Cir. 1999)......................................................6, 7

*Schloegel v. Edgewell Pers. Care Co.*,
  2022 WL 808694 (W.D. Mo. Mar. 16, 2022) ......................................15

*Sewell v. Bovis Lend Lease, Inc.*,
  2012 WL 1320124 (S.D.N.Y. Apr. 16, 2012)........................................5

*Sitt v. Nature Bounty*,
  2016 WL 5372794 (E.D.N.Y. Sept. 26, 2016) ....................................15

*In re Sturm, Ruger, & Co., Inc. Sec. Litig.*,
  2012 WL 3589610 (D. Conn. Aug. 20, 2012) ....................................22

*In re Sumitomo Copper Litig.*,
  74 F. Supp. 2d 393 (S.D.N.Y. 1999)..............................................6

*Taft v. Ackermans*,
  No. 02-cv-7951,
  2007 WL 414493 (S.D.N.Y. Jan. 31, 2007) ......................................17

*Teachers' Ret. Sys. of La. v. A.C.L.N., Ltd.*,
  2004 WL 1087261 (S.D.N.Y. May 14, 2004) ....................................14

*In re Telik, Inc. Sec. Litig.*,
  576 F. Supp. 2d 570 (S.D.N.Y. 2008)............................................13

*Torres v. Gristedes Operating Corp.*,
  519 F. App'x 1 (2d Cir. 2013) ..................................................21

*Trinidad v. Pret a Manger (UDS) Ltd.*,
  2014 WL 4670870 (S.D.N.Y. Sept. 19, 2014)......................................7

*In re Valsartan, Losartan, and Irbesartan Products Liability Litig.*,
  2023 WL 1818922 (D.N.J. Feb. 8, 2023) ........................................15

*In re Visa Check/Mastermoney Antitrust Litig.*,
   297 F. Supp. 2d 503 (E.D.N.Y. 2003) ....................................................................26

*In re Vitamin C Antitrust Litig.*,
   No. 06-MD-1738 (BMC) (JO), 2012 WL 5289514 (E.D.N.Y. Oct. 23, 2012) .....................25

*Wal-Mart Stores Inc. v. Visa U.S.A.*,
   396 F.3d 96 (2d Cir. 2005)..........................................................................5, 6

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
   396 F.3d 96 (2d Cir. 2005)……………………………………………………………...26

*In re Warner Comm'ns. Secs. Litig.*,
   618 F. Supp. 735 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986) ..................................18

*Warren v. Xerox Corp.*,
   2008 WL 4371367 (E.D.N.Y. Sept. 19, 2008) ................................................8, 21

*Willix v. Healthfirst, Inc.*,
   2011 WL 754862 (E.D.N.Y. Feb. 18, 2011).....................................................8, 22

*In re WorldCom, Inc. Sec. Litig.*,
   388 F. Supp. 2d 319 (S.D.N.Y. 2005).......................................................6, 18, 20

**Statutes**

Federal Food, Drug and Cosmetic Act (FDCA) .....................................................12, 16

Federal Rule of Civil Procedure 23(f) ...................................................................17

Federal Rule of Civil Procedure 23(h)....................................................................4, 24

Plaintiffs Jason Goldstein, Brad Davis, Maria Lazo, Mosanthony Wilson, and James Corsey, individually and on behalf of all others similarly situated (collectively, "Plaintiffs"), respectfully submit this memorandum of law in support of Plaintiffs' Motion For Attorneys' Fees, Litigation Costs, and Service Awards.

## PRELIMINARY STATEMENT

In this matter, Class Counsels' efforts have resulted in a settlement[1] for Class Members which generates a $1.95 million non-reversionary Settlement Fund. By any measure, Class Counsels' efforts have been an unqualified success, and the Class Members have responded in kind, with hundreds of thousands of Valid Claims submitted with zero objections and only one request for exclusion.[2] Class Counsel now asks this Court to award reasonable attorney's fees, litigation costs and incentive awards. In light of the recovery obtained, the time and effort devoted to this case by Plaintiffs' Counsel, the skill and expertise required, and the risks that counsel undertook, Plaintiffs' fee request is eminently appropriate. As discussed below, the requested $650,000 fee was negotiated after the other material terms of the settlement had already been agreed upon by the Parties and will not reduce what Defendants must provide to Class Members. It is well within the range of fees that courts in this Circuit and others have awarded in similar class actions.

This settlement materialized as a result of Class Counsels' investment of considerable time, effort and resources into the prosecution of this case. Through the settlement, Class Counsel has

---

[1] Unless otherwise indicated, capitalized terms shall have the same meaning as they do in the Settlement Agreement. References to "§" are to sections of the Settlement Agreement, ECF No. 76-3, and all Settlement Agreement exhibits are referred to as "Ex #."

[2] After the conclusion of the claims period on October 14, 2023, the Claims Administrator will conduct its claims review process and the final number of claims will be presented in the Final Approval Motion to be filed on November 1, 2023.

made $1.95 million in valuable benefits available to Class Members. § 3.1. Settlement Class Members who submit a Valid Claim Form with Proof of Purchase shall receive $3.00 for each Covered Product listed on the Proof of Purchase, inclusive of all taxes. § 3.4(a). Settlement Class Members who submit a Valid Claim Form without Proof of Purchase shall receive $1.75 for up to five (5) Covered Products claimed per household. § 3.4(b). This represents between 47 % to 80% recovery per Covered Product, which is within the range of reasonableness. *See* Schaffer Dec ¶ 31 (ECF NO. 76.2). Further, the total monetary relief provided to Class Members—$1.95 million— is 9 % of Defendants' total potential liability in this action under a total disgorgement theory and 30% percent of its potential liability under price premium theory. Thus, the class here is recovering somewhere between 9% (full disgorgement) and 30% of the price premium of what it might have recovered at trial, which is likewise reasonable. See Schaffer Decl. ¶37 (ECF NO. 76.2). Moreover, the value provided to Class Members is even more reasonable in light of the substantial risks in this case. As discussed more fully below, Class actions involving the alleged benzene contamination of drug and cosmetic products have met mixed fates and results.

In view of the degree to which Class Counsel succeeded in obtaining an exemplary result for the Class Members, Class Counsel is entitled to recover reasonable attorney's fees and litigation costs. To that end, Class Counsel respectfully request that the Court award attorneys' fees and costs in the amount of $650,000 as compensation for their efforts and excellent results they obtained on behalf of the class. The requested amount is reasonable in accordance with the factors set forth in the Second Circuit's *Goldberger* decision. *See Goldberger v. Integrated Res. Inc.*, 209 F.3d 43 (2d Cir. 2000). Moreover, the requested fee comports with the Second Circuit's preference to award fees based on a 'portion of the fund' approach in cases where a common fund has been created. *Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 437 (2d Cir. 2007)

(basing award of attorneys' fees on "the total funds made available, whether claimed or not" because "[t]he entire Fund, and not some portion thereof, is created through the efforts of counsel at the instigation of the entire class."). The requested award here represents one-third of the Settlement Fund, which, as explained below, is well within the amounts of fees awarded in the Second Circuit. The reasonableness of this award is supported and confirmed by the fact that a lodestar "cross-check" is only a multiplier of .73, which is well within the range approved by courts in the Second Circuit and throughout the country. In addition, the request includes reimbursement for reasonable and necessary litigation expenses, which were advanced by Class Counsel without any guarantee that they would be reimbursed, as well as a modest service award of $ 1,000 to each of the Named Plaintiffs in recognition of their efforts in leading this Litigation.

Two recently approved benzene contamination settlements, including one by the Hon. Brian M. Cogan in the Eastern District of New York, serve as strong precedent for this Court to consider when evaluating Class Counsels' instant application. In *Bangoura v. Beiersdorf, Inc. and Bayer Healthcare, LLC,* Case No. 1:22-cv-00291-BMC (S.D.N.Y.), Plaintiff filed nearly identical claims alleging that certain spray sunscreen products were contaminated with benzene and reached a similar settlement. Judge Cogan approved the settlement and awarded class counsel their requested fees and costs which amounted to one-third of the settlement fund. *Bangoura*, No. 1:22-cv-00291-BMC (S.D.N.Y. Jan. 10, 2023) (ECF No. 39). Judge Cogan commended Class Counsel for their efforts in resolving the case efficiently. *Id.*, Final Approval Hearing Tr. at 9 ("I think there is definitely a premium to be taken for the fact that the case was settled at an early stage … [it is] a testament to the efficiency of plaintiffs' counsels' efforts.").

*In Re: Johnson & Johnson Aerosol Sunscreen Marketing, Sales Practices and Products Liability Litigation* (hereinafter "*J&J*"), 2023 U.S. Dist. LEXIS 32691, *43 (S.D. Fla. Feb. 27,

2023), is yet another benzene settlement that was finally approved with the court awarding class counsel fees amounting to one-third of the settlement and 1.3 lodestar multiplier. This settlement is also stronger than the one in *J&J* as Plaintiffs are not relying on Defendants' own recall to create the cash value of their settlement. *See J&J* at ECF Doc. 82-1, ¶¶45-49. Rather, this settlement independently brings significant cash benefits to Settlement Class Members. And unlike in *J&J*, no objections were lodged in the instant matter. The absence of any objections in the instant matter is a significant factor the Court should consider in evaluating the request for fees and expenses.

Against this backdrop, and as explained more fully below, Class Counsel respectfully request that this Court grant the instant motion in its entirety.

## ARGUMENT

### I.   LEGAL STANDARD

#### A.  Federal Rule of Civil Procedure 23(h) and the *Goldberger* Factors

Federal Rule of Civil Procedure 23(h) provides that courts may award "reasonable attorney's fees and nontaxable costs that are authorized by law or the parties' agreement." Fed. R. Civ. P. 23(h). In the Second Circuit, the reasonableness of requested attorneys' fees is analyzed according to the factors detailed in the seminal decision *Goldberger v. Integrated Res. Inc.*, 209 F.3d 43, 48-49 (2d Cir. 2000). *See Edwards v. N. Am. Power & Gas, LLC*, 2018 WL 3715273, at *14 (D. Conn. Aug. 3, 2018) (Bolden, J.); *Kemp-Delisser v. Saint Francis Hosp. & Med. Ctr*, 2016 WL 6542707, at *14 (D. Conn. Nov. 3, 2016. In *Goldberger*, the Second Circuit articulated six factors for courts to consider in determining the reasonableness of fee applications: "'(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation … ; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations.'" *Goldberger*, 209 F.3d at 50. The *Goldberger*

factors "need not be applied in a formulaic way" because each case is different and "in certain cases, one factor may outweigh the rest." *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 301 (3d Cir. 2006).

## B. The Percentage-of-the-Fund Method is the Typical Method For Awarding Attorneys' Fees in Common Fund Cases in the Second Circuit.

There are two methods for determining the appropriate award of attorneys' fees from a common fund, the "percentage of the fund" method and the "lodestar" method. *McDaniel v. Cty. of Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010) (citations omitted). Under the percentage method, the court calculates the fee award as some percentage of the settlement fund. *See Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 249 (2d Cir. 2007). Under the lodestar method, the court assesses the number of hours reasonably billed and then multiplies them by an appropriate hourly rate. *See Flores v. Mamma Lombardi's of Holbrook, Inc.*, 104 F. Supp. 3d 290, 309 (E.D.N.Y. 2015) (citations omitted).

In cases such as this, where a settlement fund has been created, courts in the Second Circuit favor the use of a 'percentage of the fund' approach in awarding attorney's fees. *See Wal-Mart Stores Inc. v. Visa U.S.A.,* 396 F.3d 96, 122 (2d Cir. 2005) (noting the trend in the Second Circuit toward the percent of fund method of assessing attorneys' fees and the use of lodestar as a "cross-check" to a percentage award); *In re Lloyd's American Trust Fund Litig.,* 2002 WL 31663577, *24 (S.D.N.Y. Nov. 26, 2002) (finding the percentage of the fund approach to be the most appropriate in a case where a common benefit is provided to a class) (collecting cases); *see also Sewell v. Bovis Lend Lease, Inc.*, 2012 WL 1320124, at *10 (S.D.N.Y. Apr. 16, 2012); *In re Polaroid ERISA Litig.*, 2007 WL 2116398, at *2 (S.D.N.Y. July 19, 2007). *See In re Credit Default Swaps Antitrust Litig.*, No. 13MD2476 (DLC), 2016 WL 2731524, at *16 (S.D.N.Y. Apr. 26, 2016) ("*CDS*") ("Attorneys whose work created a common fund for the benefit of a group of plaintiffs 'may receive reasonable

attorneys' fees from the fund."). In such cases, under binding Second Circuit precedent, the fees awarded are based on "the total funds made available, whether claimed or not." *Masters*, 473 F.3d at 437.

Courts in this Circuit have found numerous advantages to using the percentage method of awarding fees in common fund cases. *First*, the percentage method "directly aligns the interests of the class and its counsel" because it provides an incentive to attorneys to resolve a case efficiently and to create the largest total value for the class. *Wal-Mart Stores, Inc.*, 396 F.3d at 122. *Second*, this method is aligned with market practices, as it "mimics the compensation system actually used by individual clients to compensate their attorneys." *In re Sumitomo Copper Litig.*, 74 F. Supp. 2d 393, 397 (S.D.N.Y. 1999); *see also Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*, 258 F. Supp. 2d 254, 262 (S.D.N.Y. 2003) (noting the percentage method "is consistent with and, indeed, is intended to mirror, practice in the private marketplace where contingent fee attorneys typically negotiate percentage fee arrangements with their clients"). *Third*, the percentage method promotes efficiency and early resolution, as it eliminates any incentive plaintiffs' lawyers may have to run up billable hours—one of the most significant downsides to using the lodestar approach. *Savoie v. Merchants Bank*, 166 F.3d 456, 460-61 (2d Cir. 1999) ("It has been noted that once the fee is set as a percentage of the fund, the plaintiffs' lawyers have no incentive to run up the number of billable hours for which they would be compensated under the lodestar method"). *Fourth*, the percentage method provides "appropriate financial incentives" necessary "to attract well-qualified plaintiffs' counsel who are able to take a case to trial," while also "directly align[ing] interests of the class and its counsel" by providing "a powerful incentive for the efficient prosecution and early resolution of litigation." *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 355, 359 (S.D.N.Y. 2005). "Although district courts may use both methods when approving an award of attorneys'

fees, the Second Circuit encourages using the lodestar method only as a cross-check for the percentage method." *In re Marsh & McLennan Cos., Inc. Sec. Litig.*, 2009 WL 5178546, at *14 (S.D.N.Y. Dec. 23, 2009) (citing *Goldberger*, 209 F.3d at 50). Finally, the percentage method preserves judicial resources because it relieves the "cumbersome, enervating, and often surrealistic process of evaluating fee petitions." *Savoie v. Merchants Bank*, 166 F.3d at 461 n.4, *quoting Third Circuit Task Force*, 108 F.R.D. 237, 258.

As set forth below, Plaintiffs' counsels' request for fees using a percentage-of-the-fund approach is reasonable under *Goldberger* and within the range typically awarded by courts in this Circuit.

## II.   CLASS COUNSELS' FEE REQUEST IS FAIR AND REASONABLE UNDER GOLDBERGER AND REPRESENTS A FAIR AND REASONABLE PERCENTAGE-OF-THE-FUND.

In the Settlement Agreement, the Parties agreed that Class Counsel may seek attorneys' fees. (ECF No. 76-3 at § 5.1.)   Accordingly, Class Counsel request a fee and costs award of $650,000 to be paid from the Settlement Fund. Applying the *Goldberger* factors, Class Counsel submits that its request for one-third of the fund is reasonable. The fees requested by counsel here are well within the range typically awarded by courts in this Circuit and have been awarded in similar benzene and consumer fraud class action cases. *See*, *e.g.*, *Bangoura v. Beiersdorf, Inc. and Bayer Healthcare, LLC,* Case No. 1:22-cv-00291-BMC (S.D.N.Y. Jan. 10, 2023) (ECF No. 39) (awarding a third of the settlement fund for attorneys' fees and costs in a similar benzene contamination case); *J&J*, 2023 U.S. Dist. LEXIS 32691, *43 (awarding one third of settlement fund and 1.3 multiplier to class counsel in similar benzene contamination action); *Trinidad v. Pret a Manger (UDS) Ltd.*, 2014 WL 4670870, at *11 (S.D.N.Y. Sept. 19, 2014) ("[A]warding fees of 33% is common in this district."); *Hernandez v. Uzzal Pizzeria, Inc.*, 2022 WL 1032522, at *1

(S.D.N.Y. Apr. 6, 2022) (same); *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 477 (S.D.N.Y. 2013) ("Class Counsels' request for 33% of the Fund is reasonable and consistent with the norms of class litigation in this circuit."); *Warren v. Xerox Corp.*, 2008 WL 4371367, at *22 (E.D.N.Y. Sept. 19, 2008) (awarding class counsel attorneys' fees and expenses at 33.33% of the total settlement value, and finding such a sum "comparable to sums allowed in other cases"); *Reyes v. Altamarea Grp.*, 2011 WL 4599822, at *8 (S.D.N.Y. Aug. 16, 2011) (noting fee requests for one-third of common funds represent what "reasonable, paying client[s] … typically pay … of their recoveries under private retainer agreements.").[3]  The fee request compensates Class Counsel for their investment of time, expertise, and capital, which produced a successful outcome for the Settlement Class in a case that was both complex and high risk.

## A. The Fee Request is Reasonable Under the Goldberger Factors

Class Counsel respectfully submit that an analysis of the *Goldberger* factors demonstrate that the fee and expense request is reasonable and appropriate and warrants approval by the Court.

### 1. Class Counsel Invested Substantial Time and Resources Over the Course of This Litigation

As detailed in the concurrently filed Declarations , Class Counsel have dedicated their time, effort, and expense to this litigation, and they have done so entirely on a contingent basis with no guarantee of compensation or even reimbursement of expenses.[4]  Since both before and after the

---

[3] *See also*, *e.g.*, *Rapoport-Hecht v. Seventh Generation, Inc.*, 2017 U.S. Dist. LEXIS 219060, at *8-9 (S.D.N.Y. Apr. 28, 2017) (awarding 33.3% of $4.5 million settlement fund); *Raniere v. Citigroup Inc.*, 310 F.R.D. 211, 220-22 (S.D.N.Y. 2015) (approving one-third of $4,650,000 settlement as fees); *Khait v. Whirlpool Corp.*, 2010 WL 2025106, at *8 (E.D.N.Y. Jan. 20, 2010) (awarding 33% of $9.25 million settlement fund); *Willix v. Healthfirst, Inc.*, 2011 WL 754862, at *6-7 (E.D.N.Y. Feb. 18, 2011) (awarding one-third of $7.675 million settlement fund)*Mayhew v. KAS Direct, LLC*, 7:16-cv-06981-VB (S.D.N.Y.), ECF No. 149 (33.3% of $2,215,000 settlement fund); *Clark v. Ecolab, Inc.*, 2010 WL 1948198, at *8-9 (S.D.N.Y. May 11, 2010) (awarding one-third of $6 million settlement fund); *Puglisi v. TD Bank, N.A.*, 2015 U.S. Dist. LEXIS 100668, at *3-4 (E.D.N.Y. July 30, 2015) (awarding 33.3% of $9.9 million settlement fund).

inception of this case in 2021, Class Counsel have dedicated 1,210.65 hours of attorney and other legal professional time through September, 2023. Class Counsel have also incurred reasonable and necessary litigation expenses in prosecuting this Litigation. Class Counsel has been working on this case since at least November 2021, when they began their detailed pre-suit investigations into the presence of benzene in Defendants' products. Declaration of Charles E. Schaeffer ("Schaeffer Decl.") ¶ 14. Class Counsel reviewed publicly available information regarding benzene and the hazards of same as part of their investigation. Schaeffer Decl. ¶¶ 83. Class Counsel also spent significant time and resources drafting pleadings, including the complaints and amended complaints. *Id*. Class Counsel also worked with various experts regarding damage theories and testing of the Defendants' products. *Id*.

Between November 19, 2021 and December 22, 2021, six separate actions were filed in five courts asserting similar claims resulting from the alleged presence of benzene in the Covered Products. Schaeffer Decl. ¶15. Class Counsel took it upon themselves to self-organize and consolidate the actions into the instant action, avoiding a potentially lengthy leadership fight and saving the parties from additional costs and preserving judicial resources. *Id*. at ¶¶ 16-19.

Further, Class Counsel opposed Defendants' motion to dismiss and filed a motion for appointment of interim lead counsel. Schaeffer Decl. ¶¶ 18 & 24. Class Counsel also conducted significant legal research and an investigation into industry reports, scientific and epidemiological studies/literature regarding the dangers of benzene, and the Covered Products' market segment as follows:

- Class Counsel thoroughly analyzed the legal landscape and evaluated the risks and benefits of prosecuting the Litigation and an early resolution, including research into the various state consumer protection laws and available remedies, and evaluation of certification.

- Class Counsel extensively analyzed, in detail, the claims alleged in the complaint, Defendants' advertising campaigns, the relevant FDA guidelines concerning labeling and

advertising disclosure requirements for antiperspirant and deodorant, FDA guidelines regarding the presence of benzene in consumer products, the scientific research concerning the dangers of benzene, and research regarding how Defendants should have known the Products contained benzene.

- Class Counsel analyzed the report issued by Valisure, an analytical pharmacy, patient advocacy, and consumer protection organization.

- Class Counsel investigated and consulted with industry experts regarding *inter alia* the presence of benzene in aerosol antiperspirant and deodorant products, regulations governing benzene in aerosol antiperspirant and deodorant products, potential sources and elimination of that source of benzene in aerosol antiperspirant and deodorant products and testing and screening for benzene in aerosol antiperspirant and deodorant products

- Class Counsel analyzed the chain of distribution of the Covered Products and pricing per unit to help support and determine Plaintiffs' damages model.

- Class counsel investigated and consulted with experts regarding damages model for consumers purchasing an adulterated and or misbranded aerosol antiperspirant and deodorant product contaminated with benzene.

- In addition, Class Counsel conducted research into the market segment related to the Covered Products to understand the potential scope of this matter, economic losses to Class Members, and marketing and sales trends, practices, and patterns.

Schaeffer Decl. ¶ 83.

Indeed, it is important to note that Class Counsels' work will not end even if the Court grants final approval of the Settlement. Class Counsel will continue to expend time and resources overseeing the Settlement administration, assisting Class Members, and tending to any other issues that may arise related to the Settlement. *See Kemp-Delisser*, 2016 WL 6542707, at *15 ("'Class Counsels' fee award will not only compensate them for time and effort already expended, but for time that they will be required to spend administering the settlement going forward'") (quoting *deMunecas v. Bold Food, LLC*, 2010 WL 3322580, at *10 (S.D.N.Y. Aug. 23, 2010)).

While the Defendants' motion to dismiss was pending, the Parties engaged in settlement discussions. Schaeffer Decl. ¶ 25. Class Counsel engaged in several months of arms'-length

negotiations. *Id*. at ¶¶ 25-30. After preliminary discussions and exchange of information, the parties agreed to jointly retain the Honorable Judge Diane Welsh (Ret.), a former magistrate/judge for the United States District Court for the Eastern District of Pennsylvania. *Id*. As part of the settlement negotiations, a full-day mediation session took place with Judge Welsh(Ret.). *Id*. at ¶ 28. At the mediation, the Parties reached an agreement in principle. *Id*. The parties agreed to continue negotiations after the mediation to finalize the specific settlement terms, details of the notice plan and claims administration process, which class Counsel and Defendants' counsel did for several months thereafter. *Id*. at ¶ 29. Class Counsel drafted the Settlement Agreement in accordance with the term sheet. In addition, Class Counsel sought bids from notice providers and ultimately engaged the services of Angeion. Class Counsel worked to develop a Notice Plan and the notice documents that would be submitted to the Court with Plaintiffs' Motion For Preliminary Approval. Preliminary approval of the Settlement was granted on June 8, 2023.

That Class Counsel reached an excellent and expeditious settlement should not impede their ability to recover for their efforts. As the Court ruled in *Karpus v. Borelli (In re Interpublic Sec. Litig.)*, 2004 U.S. Dist. LEXIS 21429, at *35-37 (S.D.N.Y. Oct. 26, 2004) (Cote, J.) ("Any award of attorneys' fees therefore should recognize this risk and should not penalize counsel for settling at an early stage of the litigation when it appeared appropriate to do so."). In fact, in a settlement hearing for the *Bangoura* benzene action, Judge Cogan in the Eastern District of New York commented:

> With regard to the attorneys' fees, I agree with everything counsel has said. ***I think there is definitely a premium to be taken for the fact that the case was settled at an early stage***. It is very often the case in these kinds of consumer fraud cases, whether it's marketing or potential personal injury or lack of value, that the case can drag on, you know, despite my best efforts I've had them drag on for four or five years. ***And the fact that I'm looking at 2022 index number on this case is, in itself, a testament to the efficiency of plaintiffs' counsel's efforts***.

Tr. of Final Approval Hearing, at 9:11-20, *Bangoura v. Beiersdorf, Inc. and Bayer Healthcare, LLC,* Case No. 1:22-cv-00291-BMC (S.D.N.Y. Jan. 5, 2023). Thus, this factor weighs heavily in favor of this fee application, especially given the complexity of the case and the magnitude of the recovery.

### 2. This Class Action Included Complex Legal Issues

"The size and difficulty of the issues in a case are significant factors to be considered in making a fee award." *Beckman,* 293 F.R.D. at 481-83 (citing *In re Prudential Sec. Inc. Ltd. P'ship Litig.*, 912 F. Supp. 97, 100 (S.D.N.Y. 1996) ("[C]lass actions 'have a well-deserved reputation as being most complex.'"); *Kemp-Delisser*, 2016 WL 6542707, at *16 (case was "complex and risky to litigate, given that it concerns an unsettled question of law…"). In cases that require more expertise, a larger percentage of the fund should be awarded to the lawyers who can competently prosecute the case. *See In re Citigroup Inc. Bond Litig.*, 988 F. Supp. 2d 371, 379 (S.D.N.Y. 2013) ("The upshot is that the magnitude and complexity of the litigation also weigh in favor of a significant award.").

This Litigation is no exception. This class action, had it been litigated, would have involved complex damages methodologies and a scientific battle of the experts as to the fairness or falsity of the labeling and to the content of benzene for the Covered Products. These factors make actions such as this inherently complex and high risk. Relative to other lawsuits, there are additional burdens in the instant Litigation that Plaintiffs faced including the possibility that their claims could be preempted by the FDCA, other issues concerning the merits of the claims, class certification, standing, and establishing and calculating damages. As the *J&J* court noted:

> if litigation had continued there would have been a 'battle of experts' with an uncertain outcome. Damages could have also been highly contested based on the Parties' laboratory results. In sum, continuing this action without a settlement would have involved several major litigation risks and delays, including, but not

limited to, class certification, a motion for summary judgment, *Daubert* motions, trial, as well as appellate review.

*J&J,* 2023 U.S. Dist. LEXIS 32691, *33.

Thus, a fee award that accounts for the prosecution of litigation that was "extraordinary in both complexity and scope" is appropriate. *In re Holocaust Victim Assets Litig.*, 2007 WL 805768, at *46 (E.D.N.Y. Mar. 15, 2007); *see also In re NASDAQ Mkt.-Makers Antitrust Litig.*, 187 F.R.D. 465, 477 (S.D.N.Y. 1998) ("There can be no doubt that this class action would be enormously expensive to continue, extraordinarily complex to try, and ultimately uncertain of result."). The magnitude and complexity of legal issues involved in this case further reinforces the reasonableness of Class Counsels' requested fee percentage.

### 3. The Requested Fee is Warranted Based on the High-Risk Nature of the Litigation

The Second Circuit "has identified the risk of success as perhaps the foremost factor to be considered in determining" reasonable attorneys' fees. *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 467 (S.D.N.Y. 2004); *see also In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 592 (S.D.N.Y. 2008) ("Courts have repeatedly recognized 'that the risk of the litigation' is a pivotal factor in assessing the appropriate attorneys' fees to award plaintiffs' counsel in class actions."). "After all, 'despite the most vigorous and competent of efforts, success is never guaranteed.'" *Kemp-Delisser*, 2016 WL 6542707, at *16 (quoting *Detroit v. Grinnell Corp.*, 495 F.2d 448, 471 (2d Cir. 1974)). Courts in this Circuit have long recognized that the risk associated with a case bears heavily upon the determination of an appropriate fee award. *See In re Am. Bank Note Holographics*, 127 F. Supp. 2d 418, 432-33 (S.D.N.Y. 2001) ("[It is] appropriate to take this [contingent fee] risk into account in determining the appropriate fee to award.").

The risk of non-payment is especially high in class actions with contingent fee arrangements, like here. *See Teachers' Ret. Sys. of La. v. A.C.L.N., Ltd.*, 2004 WL 1087261, at *3 (S.D.N.Y. May 14, 2004) ("Little about litigation is risk-free, and class actions confront even more substantial risks than other forms of litigation."). "Contingency risk is the principal, though not exclusive, factor courts should consider in their determination of attorneys' fees." *Beckman*, 293 F.R.D. at 481-83 (quoting *In re Dreyfus Aggressive Growth Mut. Fund Litig.*, 2001 WL 709262, at *6 (S.D.N.Y. June 22, 2001)); *see also Gevaerts v. TD Bank*, 2015 WL 6751061, at *13 (S.D. Fla., Nov. 5, 2015) (class counsel "assumed a significant risk of non-payment or underpayment. Numerous cases recognize such a risk as an important factor in determining a fee award."). As the Second Circuit explained in Fresno Cnty. Emples. Ret. Ass'n v. Isaacson, 925 F.3d 63 (2d Cir. 2019):

> The plaintiff class is therefore appropriately charged for contingency risk where such risk is appreciable because the class has benefited from class counsel's decision to devote resources to the class's cause at the expense of taking other cases. That is, because class counsel has decided to represent the plaintiff class, class counsel's ability to freely represent other clients is limited by the risk she has assumed that the class's cause will be unsuccessful. The class, having been enriched by counsel's acceptance of its cause at the expense of other clients' causes, may be charged for counsel's assumption of risk on its behalf.

*Id*. at 70.

The Second Circuit reaffirmed this interpretation of the "risk of litigation" factor in decision issued on March 15, 2023 in *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*, Case No. 20-339-cv(L) (2d Cir. Mar. 15, 2023),10 where the Court noted that "[t]he true risk we identified in Fresno County was the risk that a case taken on contingency will fail." *Id*. at 50 (emphasis in original). Accordingly, that this case carried with it a significant litigation risk strongly supports counsels' fee request.

"It is well-established that litigation risk must be measured as of when the case is filed." *Goldberger*, 209 F.3d at 55. At the time of filing of this Litigation, there were complex issues of fact and law, which presented significant risks that continue through today. In particular, the claims asserted herein have been met with strong opposition in other courts nationwide. Further, there have been varying results in actions involving similar benzene contamination claims in federal courts in different districts. *See e.g., Schloegel v. Edgewell Pers. Care Co.*, 2022 WL 808694, at *2-3 (W.D. Mo. Mar. 16, 2022) (dismissing similar action for failure to establish injury and lack of standing ); *Bowen v. Energizer Holdings, Inc.*, 2023 WL 1786731, at *6-9 (C.D. Cal. Jan. 5, 2023) (dismissing similar action and "determining that an economic harm premised on speculative risks cannot establish Article III standing."). Indeed, even outside of standing, this Court has dismissed a similar action involved a contaminated product for failure to state a claim. *Harris v. Pfizer Inc.*, 586 F. Supp. 3d 231, 237 (S.D.N.Y. 2022) (Cote, J.).[5]

Here, Class Counsel have prosecuted this action diligently from the outset despite the considerable risks. Plaintiffs took it upon themselves to self-organize and consolidate the multiple actions that were filed and then coordinate to draft and file a consolidated amended complaint.

---

[5] While some courts have dismissed benzene related claims, Plaintiffs believe that this case had a strong basis in the law as numerous courts, including this one, have upheld similar allegations in cases concerning the contamination of consumer products. *See generally, e.g., Clinger v. Edgewell Personal Care Brands, LLC*, 2023 WL 2477499 (D. Conn. Mar. 13, 2023) (largely denying motion to dismiss case concerning sunscreen products contaminated with benzene); *Barnes v. Unilever United States Inc.*, 2023 WL 2456385 (N.D. Ill. Mar. 11, 2023) (largely denying motion to dismiss case concerning antiperspirant product contaminated with benzene); *Barnes v. Unilever United States Inc.*, 2022 WL 2915629 (N.D. Ill. July 24, 2022) (same); *Gagetta v. Walmart, Inc.*, --- F. Supp. 3d ---, 2022 WL 17812924 (N.D. Cal. Dec. 19, 2022) (largely denying motion to dismiss case concerning spices product contaminated with heavy metals); *Gonzalez v. Pepsico, Inc.*, 489 F. Supp. 2d 1233 (D. Kan. 2007) (largely denying motion to dismiss case concerning soda product contaminated with benzene); *Sitt v. Nature Bounty*, 2016 WL 5372794 (E.D.N.Y. Sept. 26, 2016) (largely denying motion to dismiss concerning supplements contaminated with small amounts of lead). These authorities indicate that while Plaintiffs' claims faced risk, their claims had at least an equally strong chance of surviving the pleadings and even being certified as a class. *See generally In re Valsartan, Losartan, and Irbesartan Products Liability Litig.*, 2023 WL 1818922 (D.N.J. Feb. 8, 2023) (certifying class of consumers who purchased high blood pressure medications contaminated with NDMA).

Schaeffer Decl. at ¶¶ 15-19; ECF No. 38. On May 26, 2022, Defendants filed a motion to dismiss the consolidated complaint. ECF No. 49. Defendants' motion to dismiss involved complex issues of standing, preemption and consumer protection law that required significant research and briefing. Plaintiffs filed their opposition to the motion to dismiss on June 24, 2022. ECF No. 54.

While Class Counsel believe that the Plaintiffs' claims are meritorious, there were substantial risks through continued litigation. Defendants have consistently argued that Plaintiffs lack Article III standing because they have not alleged that they suffered an adverse health effect, have failed to allege that they purchased a product that contained benzene and have not properly alleged they suffered an economic injury by way of paying a price premium. Moreover, Defendants vigorously argue that all of Plaintiffs' claims are preempted by the Federal Food, Drug and Cosmetic Act ("FDCA") by imposing state law labeling requirements that are not required by the FDCA. Further, Defendants argue that Plaintiffs' state law claims fail because they do not adequately plead a misrepresentation or omission and cannot show that Defendants had knowledge of the presence of benzene in the Covered Products. Even if Plaintiffs were able to successfully defeat those arguments, there is risk that a jury could find that a reasonable consumer would not have been mislead by the Covered Products' labels.

Moreover, allegations of product defects like those asserted here would have required expert showings on what percentage of the Class Products contained benzene, the health risks posed by the levels of benzene in the Class Products, and quantum of damages. As this Court has recognized, reliance on expert testimony "often increases the risk that a jury may not find liability or would limit damages." *Edwards*, 2018 WL 3715273, at *14 (granting final approval).

Although Class Counsel believe that a class would be certified even over Defendants' objections, there was always a risk that Defendants would successfully oppose class certification.

*See Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 186 (W.D.N.Y. 2005) ("While plaintiffs might indeed prevail [on a motion for class certification], the risk that the case might be not certified is not illusory"). Even if the Class was certified by the Court, Defendants could have then attempted to appeal the certification decision under Federal Rule of Civil Procedure 23(f) or argued for decertification as the litigation progressed. *See Chatelain v. Prudential-Bache Sec.*, 805 F. Supp. 209, 214 (S.D.N.Y. 1992) ("Even if certified, the class would face the risk of decertification."). Lastly, it is important to note that Class Counsel undertook and litigated this case on a fully contingent basis. Schaeffer Decl. ¶ 68 "Counsel should be rewarded for undertaking [those risks] and for achieving substantial value for the class." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 991 F. Supp. 2d 437, 441 (E.D.N.Y. 2014); *see also Jermyn v. Best Buy Stores, L.P.*, 2012 WL 2505644, at *10 (S.D.N.Y. June 27, 2012) ("[T]he risk of non-payment in cases prosecuted on a contingency basis where claims are not successful…can justify higher fees.").

### 4. Class Counsel Provided (and Continues to Provide) High-Quality Representation

*Goldberger* factor number four requires an analysis of the quality of the representation provided by Class Counsel in this litigation. *Goldberger*, 209 F.3d at 50. When evaluating *Goldberger's* "quality of representation" factor, courts in the Second Circuit "review the recovery obtained and the backgrounds of the lawyers involved in the lawsuit." *In re Merrill Lynch Tyco Rsch. Sec. Litig.*, 249 F.R.D. 124, 141 (S.D.N.Y. 2008); *Taft v. Ackermans,* No. 02-cv-7951*,* 2007 WL 414493, *1 (S.D.N.Y. Jan. 31, 2007). Class Counsel practice extensively in complex federal civil litigation, particularly the litigation of consumer protection and false advertising class actions and have successfully litigated these types of actions in courts throughout the country for many years achieving significant results for consumers. *See generally Delcid et al. v. TCP Hot*

*Acquisition LLC, et al.,* Case No. 1:21-cv-09569-DLC (S.D.N.Y); *Bangoura v. Beiersdorf, Inc. and Bayer Healthcare, LLC,* Case No. 1:22-cv-00291-BMC (S.D.N.Y.); *Luib v. Henkel Consumer Goods Inc.,* Case No. 1:17-cv-03021-BMC (E.D.N.Y.); *see also* ECF Nos. 30-3, 30-4, 30-5, 30-6, and 30-7 (Class Counsels' firm resumes).

"[T]he quality of representation … may be measured in large part by the results that counsel achieved for the classes." *Payment Card*, 991 F. Supp. 2d at 441. Beyond general qualifications, this factor is satisfied by Class Counsel's obtaining a $1.95 million settlement on behalf of the Class. Class Counsel's ability to obtain such a substantial recovery from aggressive defendants who are represented by one of the top defense firms in the country is a testament to the skill with which Class Counsel have prosecuted this case. *See Fleisher*, 2015 WL 10847814, at *22 ("The quality of opposing counsel is also important in evaluating the quality of Lead Counsel's work.") (internal quotations omitted); *NASDAQ*, 187 F.R.D. at 489 (approving fee award where defense counsel included "the nation's biggest and best defense firms operating on a seemingly unlimited budget over a period of four years"); *WorldCom*, 388 F. Supp. 2d at 357-58 (finding that counsel "obtained remarkable settlements for the Class while facing formidable opposing counsel from some of the best defense firms in the country"); *In re Warner Comm'ns. Secs. Litig.*, 618 F. Supp. 735, 749 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986) ("The quality of opposing counsel is also important in evaluating the quality of plaintiffs' counsels' work."). Here, Defendants are represented by Greenberg Traurig LLP. Greenberg Traurig fervently represented Defendants and defended against Plaintiffs' claims.

In its Order consolidating the cases, the Court assessed the qualifications of Class Counsel and appointed them as interim Co-Lead counsel on behalf of the Plaintiffs and the putative Class (ECF. No. 31) and the Court in its preliminary approval order (ECF No 77) "finds that the Class

Representatives and Class Counsel have fairly and adequately represented and protected the interests of the absent Settlement Class Members". As demonstrated Class Counsel both possesses and utilized the necessary skill to ably provide the legal services which led to a favorable settlement. Class Counsel has achieved a settlement whereby class members have the opportunity to file a claim and receive $3.00 per product with proof of purchase and $1.75 without proof of purchase for up to 5 products. This represents between 47 % to 80% recovery per Covered Product.. Class Counsel's ability to obtain a favorable settlement for the Class Members despite all the risks and complexity discussed above, and in the face of formidable legal opposition speaks to the quality of Class Counsel. This *Goldberger* factor is clearly satisfied.

### 5. The Fee Request Is Reasonable in Relationship to the Settlement

This factor requires the Court to compare the requested fee to the benefits of the settlement. *Goldberger*, 209 F.3d at 50. Courts in this Circuit recognize that large, complex class action lawsuits present considerable risk and require extensive work by counsel. As such, courts often award fees at or even above the percentage requested here. As described more fully herein, the requested fee and reimbursement of expenses equaling one-third of the common fund falls in line with fee awards in comparable actions in the Second Circuit. This is especially true when as here the Settlement resulted in hundreds of thousands of claims in which the class members will recover a portion of the purchase price.

### 6. Public Policy Supports Approval of the Fee

The final *Goldberger* factor requires an analysis of all public policy considerations when determining the fees to be awarded to Class Counsel. *Goldberger*, 209 F.3d at 50. Here, public policy supports providing attorneys' fees in class action cases, as class actions are an invaluable safeguard of public rights. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985). Where,

as here, any individual reward is relatively small, an award of attorneys' fees ensures that "plaintiffs' claims [will] likely … be heard." *Frank v. Eastman Kodak Co*., 228 F.R.D. 174, 189 (W.D.N.Y. 2005). If courts denied sufficient attorneys' fees "no attorneys . . . would likely be willing to take on … small-scale class actions." *Id*.; *see also Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 374 (S.D.N.Y. 2002) (private attorneys "should be encouraged" to take the risks required to represent those who would not otherwise be protected from socially undesirable activities, including fraud.). Public policy is in favor of rewarding counsel who persevere through risky litigation and achieve favorable results for the class they represent. Here, without private counsel taking on the risk of this lawsuit and having the skill and resources to pursue the claims vigorously, the Settlement Class would have recovered nothing, and important public interests would not have been vindicated. Awarding a reasonable percentage of the common fund properly motivates zealous enforcement of consumer protection laws and incentivizes skilled counsel to bring meritorious cases. *See WorldCom*, 388 F. Supp. 2d at 359 ("In order to attract well-qualified plaintiffs' counsel who are able to take a case to trial, and who defendants understand are able and willing to do so, it is necessary to provide appropriate financial incentives."). In addition to obtaining substantial monetary relief for the Class, Plaintiffs and Class counsel believe that this settlement also serves an important public good by deterring corporations from allowing potentially harmful product contamination and encouraging stricter testing protocols. *See* Brian T. Fitzpatrick, THE CONSERVATIVE CASE FOR CLASS ACTIONS (2019) at Chapter 8.

Class Counsels' efforts in this Litigation are the only way Plaintiffs and the Class will receive any compensation. Plaintiffs' counsel in such cases are typically retained on a contingent basis due to the huge commitment of time and expense required relative to the losses suffered by an individual representative plaintiff. Class Counsel took on this case despite the uncertainty and volatility of law to consumer class actions, especially ones seeking damages for economic loss as

a result of alleged contamination, and persevered in obtaining a settlement allowing the Settlement Class Members to receive cash compensation. Such a result should be rewarded. An important public policy interest is served by awarding attorneys' fees adequately compensating counsel.

## B. The Requested Fee Represents a Reasonable Percentage-of-the-Fund

In addition to being reasonable under *Goldberger,* the fee and costs requested by this motion, $650,000 or one-third of the Settlement Fund, are reasonable under the percentage-of-the fund method and is consistent with many other fee awards granted in other class actions in this Circuit and in similar litigations. *See*, *e.g.*, *Torres v. Gristedes Operating Corp.*, 519 F. App'x 1, 5-6 (2d Cir. 2013) (acknowledging one-third of common fund is benchmark in Second Circuit and affirming higher percentage – 52.2% - of settlement value for attorney fees and costs.); *See Kiefer v. Moran Foods, LLC*, 2014 WL 3882504, at *8 (D. Conn. July 31, 2014) ("Class Counsel's request for one-third of the Fund is reasonable and consistent with the norms of class litigation in this circuit.").

Indeed, in recent litigations involving alleged benzene contamination and other consumer fraud actions, courts have granted similar fee requests. *See Bangoura v. Beiersdorf, Inc. and Bayer Healthcare, LLC,* Case No. 1:22-cv-00291-BMC (S.D.N.Y. Jan. 10, 2023) (ECF No. 39) (awarding a third of the settlement fund for attorneys' fees and costs in a similar benzene contamination); *J&J* (ECF No. 95) (awarding one third of settlement fund and 1.3 multiplier to class counsel in similar benzene contamination action); *see also*, *e.g.*, *Beckman*, 293 F.R.D. at 477 ("Class Counsel's request for 33% of the Fund is reasonable and consistent with the norms of class litigation in this circuit."); *Warren*, 2008 WL 4371367, at *22 (awarding class counsel attorneys' fees and expenses at 33.33% of the total settlement value, and finding such a sum "comparable to sums allowed in other cases"); *Reyes*, 2011 WL 4599822, at *8 (noting fee requests for one-third

of common funds represent what "reasonable, paying client[s] … typically pay … of their recoveries under private retainer agreements."); *Rapoport-Hecht*, 2017 U.S. Dist. LEXIS 219060, at *8-9 (awarding 33.3% of $4.5 million settlement fund); *Raniere*, 310 F.R.D. at 220-22 (approving one-third of $4,650,000 settlement as fees); ); *Luib v. Henkel Consumer Goods, Inc.*, 2018 U.S. Dist. LEXIS 18598 (S.D.N.Y. Feb. 5, 2018) (awarding one third of settlement fund to class counsel for attorneys' fees and expenses); *Khait*, 2010 WL 2025106, at *8 (awarding 33% of $9.25 million settlement fund); *Willix*, 2011 WL 754862, at *6-7 (awarding one-third of $7.675 million settlement fund); *Clark*, 2010 WL 1948198, at *8-9 (awarding one-third of $6 million settlement fund); *Puglisi*, 2015 U.S. Dist. LEXIS 100668, at *3-4 (awarding 33.3% of $9.9 million settlement fund).

Class Counsels' fee request is also reasonable given the complexities and risks discussed herein and within the parameters of fee awards in similar class actions in this Circuit. As discussed above, Class Counsels' fee request is also supported by the *Goldberger* factors. Therefore, Class Counsels' requested fee is reasonable under a percentage-of-recovery analysis.[6]

### C. A Lodestar-Multiplier "Cross-Check" Further Confirms the Reasonableness of Class Counsels' Requested Fee

The lodestar fee calculation method has "fallen out of favor particularly because it encourages bill-padding and discourages early settlements." *In re Colgate-Palmolive Co. ERISA Litig.*, 36 F. Supp. 3d 344, 353 (S.D.N.Y. 2014). Accordingly, the lodestar method is used in this Circuit only "as a sanity check to ensure that an otherwise reasonable percentage fee would not lead to a windfall." *Id.* "[W]here used as a mere cross-check, the hours documented by counsel need not be exhaustively scrutinized by the district court." *Goldberger*, 209 F.3d at 50; *In re Sturm,*

---

[6] At the Court's request, Plaintiffs' counsel is willing to file detailed time records for the case under seal should the Court desire to conduct its own cross check.

*Ruger, & Co., Inc. Sec. Litig.*, 2012 WL 3589610, at *13 (D. Conn. Aug. 20, 2012) ("Where [the lodestar method is] used as a mere cross-check, the hours documented by counsel need not be exhaustively scrutinized by the district court.") (internal quotation omitted).

Class Counsel collectively billed 1,210.65 hours in this Litigation. Shaeffer Decl. ¶ 97. At their usual and customary rates, and applying the rates in existence at the time the work was undertaken, these hours translate into approximately $854,205.65 in total lodestar as of September 2023. *Id.* Additionally, Class Counsel expended $24,798.8 in unreimbursed expenses. *Id.* ¶ 98. As such, Class Counsels' request amounts to $625,201.2 in attorneys' fees and represents a total multiplier of .73.

This request for a modest multiplier is squarely within the range awarded by courts in this District, as well as across the country. *See, e.g.*, *J&J*, ECF No. 95 (awarding 1/3 of settlement fund and 1.3 multiplier to class counsel in similar benzene contamination action); *CDS*, 2016 WL 2731524, at *17 (approving attorneys' fees constituting a multiple of 6.36 times the lodestar); *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 481 (S.D.N.Y. 2013) ("Courts regularly award lodestar multipliers of up to eight times the lodestar, and in some cases, even higher multipliers."); *Asare v. Change Grp. of N.Y., Inc.*, 2013 WL 6144764, at *19 (S.D.N.Y. Nov. 18, 2013) ("Typically, courts use multipliers of 2 to 6 times the lodestar."); *City of Providence v. Aéropostale, Inc.*, 2014 WL 1883494, at *13 (S.D.N.Y. May 9, 2014) (noting "lodestar multiples of over 4 are awarded by this Court"); *Maley v. Dale Global Techs. Corp.*, 186 F. Supp. 2d 358, 371 (S.D.N.Y. 2002) (describing a 4.65 lodestar multiple as "modest" and "fair and reasonable"); *In re RJR Nabisco, Inc. Sec. Litig.*, 1992 WL 210138, at *6-8 (S.D.N.Y. Aug. 24, 1992) (awarding a lodestar multiplier of 6); *Hicks v. Morgan Stanley & Co.*, 2005 U.S. Dist. LEXIS 24890, at *28 (S.D.N.Y. Oct. 19, 2005) ("Taking the circumstances of the case into consideration, a multiplier of 1.85 is reasonable

and, as a "cross-check," supports counsels' fee application. In this Circuit, contingency fees of 1.85 times the lodestar and greater have been deemed reasonable by the courts."); *Hesse v. Godiva Chocolatier, Inc.*, 2022 U.S. Dist. LEXIS 72641, at \*40 (S.D.N.Y. Apr. 20, 2022) (approving lodestar multiplier of 1.9 as reasonable in consumer class action).

Therefore, Class Counsel respectfully submit that the lodestar cross-check supports the reasonableness of the requested fee award.

### D. The Reaction of Class Members Supports Class Counsels' Fee Request

Finally, the reaction of Class Members to the settlement and to Class Counsels' fee and cost request, which was disclosed in the Notice, confirms the reasonableness of Class Counsels' request. *See In re Hi-Crush Partners L.P. Sec. Litig.*, 2014 WL 7323417, at \*18 (S.D.N.Y. Dec. 19, 2014) ("In addition to the criteria set forth in *Goldberger*, courts in the Second Circuit consider the reaction of the class to the fee request in deciding how large a fee to award."). The Notice informed members of the Settlement Class that Class Counsel intended to seek a fee award plus reimbursement of reasonable litigation expenses in an amount to not exceed one-third of the common fund. *See Long Form Notice*, ECF No. 76-3 Ex B-1. This motion is consistent with the Notice provided.

The reaction of the Settlement Class has been robust and overwhelmingly favorable. As detailed above, there has been no objections to the requested fee award despite hundreds of thousands of submitted claims.

### III. CLASS COUNSELS' REQUEST FOR REIMBURSEMENT OF LITIGATION COSTS IS REASONABLE

It is axiomatic that counsel should be reimbursed for all expenses that are reasonable and necessarily incurred. Fed. R. Civ. P. 23(h); *Kemp-Delisser v. Saint Francis Hosp. & Med. Ctr*,

2016 WL 6542707, at *18 (D. Conn. Nov. 3, 2016) *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 392 (1970) (recognizing the right to reimbursement of expenses where a common fund has been produced or preserved for the benefit of a class); *In re Vitamin C Antitrust Litig.*, No. 06-MD-1738 (BMC) (JO), 2012 WL 5289514, at *11 (E.D.N.Y. Oct. 23, 2012) ("Courts in the Second Circuit normally grant expense requests in common fund cases as a matter of course."); *Fleisher*, 2015 WL 10847814, at *23 (noting as typical expenses in complex cases "fees paid to experts, mediation fees, notice costs, computerized research, document production and storage, court fees, reporting services, and travel in connection with th[e] litigation").

In prosecuting this action, Plaintiffs' Counsel incurred $24,789.8for which it respectfully requests reimbursement. All of the expenses were reasonable and necessary to the prosecution of this matter, and represent standard litigation costs and expenses such as mediation and travel expenses, as well as court costs. The expenses are itemized in further detail in the Declarations submitted herewith. All expenses for which Plaintiffs' Counsel now seeks reimbursement were necessary to the successful outcome of this case. Class Counsel are entitled to be reimbursed for those expenses in addition to the attorneys' fees because "substantial expenses were necessary in this complex … case." *Meredith Corp. v. SESAC, LLC*, 87 F. Supp. 3d 650, 671 (S.D.N.Y. 2015); *see also CDS*, 2016 WL 2731524, at *18. None of Class Counsels' expenditures have yet been reimbursed. Indeed, "[t]he fact that Class Counsel was willing to expend their own money, where reimbursement was entirely contingent on the success of this litigation, is perhaps the best indicator that the expenditures were reasonable and necessary." *Fleisher*, 2015 WL 10847814, at *19. These expenses have also been reviewed by Class Counsel and were found to be reasonable. In sum, there is "no reason to depart from the common practice in this circuit of granting expense requests."

*In re Visa Check/Mastermoney Antitrust Litig.*, 297 F. Supp. 2d 503, 525 (E.D.N.Y. 2003), *aff'd sub nom.*, *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005).

## IV.    PLAINTIFFS' REQUEST FOR MODEST SERVICE AWARDS IS REASONABLE

Class Counsel seeks a $1,000 service award for each of the named Plaintiffs for their active participation in this Litigation. In the Second Circuit, plaintiff service awards "are common in class action cases and are important to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant and any other burdens sustained by plaintiffs." *DeLeon v. Wells Fargo Bank, N.A.*, 2015 WL 2255394, at *7 (S.D.N.Y. May 11, 2015); *Dornberger v. Metro. Life Ins. Co.*, 203 F.R.D. 118, 125 (S.D.N.Y. 2001) (noting case law supports incentive awards of between $2,500 and $85,000). The $1,000.00 amount sought in this case is at or below case contribution awards in other class actions. *See, e.g.*, *Edwards*, 2018 WL 3715273, at *13 (D. Conn. Aug. 3, 2018) (approving service awards of $5,000 to each representative plaintiff).

Here, Plaintiffs' participation in this Litigation included carefully reviewing pleadings including the complaint and opposition to the motion to dismiss, regular communication with Class Counsel, and review of the Settlement Agreement. As such, Class Counsel request the Court grant a $1,000 service award for each of the named Plaintiffs.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court approve the request for: (i) the payment of attorneys' fees in the amount of $625,201.20; (ii) reimbursement of litigation expenses in the amount of $24,798.80; and (iii) a $1,000 service award for each of the named Plaintiffs.

Dated: October 18, 2023                    Respectfully submitted,

By: */s/ Charles E. Schaeffer*
    Charles E. Shaeffer

**LEVIN SEDRAN & BERMAN LLP**
Charles E. Schaffer, Esq. (*pro hac vice*)
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Tel: 215-592-1500
dmagagna@lfsblaw.com
cschaffer@lfsblaw.com

**REARDON SCANLON LLP**
James J. Reardon, Jr.
45 South Main Street, 3rd Floor
West Hartford, CT 06107
Telephone: (860) 955-9455
Facsimile: (860) 920-5242
Email: james.reardon@reardonscanlon.com

**BURSOR & FISHER, P.A.**
Sarah N. Westcot (*pro hac vice*)
701 Brickell Ave, Suite 1420
Miami FL, 33131
Telephone: (305) 330-5512
Facsimile: (305) 676-9006
E-Mail: swestcot@bursor.com

**BURSOR & FISHER, P.A.**
Max S. Roberts (*pro hac vice*)
888 Seventh Avenue
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
Email: mroberts@bursor.com


**THE SULTZER LAW GROUP, P.C.**
Jason P. Sultzer, Esq. (*pro hac vice*)
Joseph Lipari, Esq. (*pro hac vice*)
Daniel Markowitz, Esq. (*pro hac vice*)
270 Madison Avenue, Suite 1800
New York, NY 10016
Tel: (845) 483-7100
Fax: (888) 749-7747
sultzerj@thesultzerlawgroup.com
liparij@thesultzerlawgroup.com

markowitzd@thesultzerlawgroup.com

**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN, PLLC**
Nick Suciu, III, Esq. (*pro hac vice*)
6905 Telegraph Rd., Suite 115
Bloomfield Hills, MI 48301
Tel.: (313) 303-3472
Fax: (865) 522-0049
E-Mail: nsuciu@milberg.com

**LEVI & KORSINSKY LLP**
Mark S. Reich *(pro hac vice)*
Courtney E. Maccarone *(pro hac vice)*
55 Broadway, 10th Floor
New York, NY 10006
Telephone: (212) 363-7500
Facsimile: (212) 363-7171
Email: mreich@zlk.com
cmaccarone@zlk.com

*Counsel for Plaintiffs and the Class*

1