## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

JASON GOLDSTEIN, BRAD DAVIS,
MARIA LAZO, MOSANTHONY WILSON
and JAMES CORSEY on behalf of
themselves and all others similarly situated,

                Plaintiffs,

        v.

HENKEL CORPORATION and THRIVING
BRANDS LLC,

                Defendants.

Case No. 3:22-cv-00164-AWT

Hon. Alvin W. Thompson

## PLAINTIFFS' MOTION AND MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR FINAL <u>APPROVAL OF CLASS ACTION SETTLEMENT</u>

**TABLE OF CONTENTS**

**PAGE(S)**

I.      INTRODUCTION ...........................................................................................1

II.     FACTUAL AND PROCEDURAL BACKGROUND..................................2

     A.     Factual Background .........................................................................2

     B.     Procedural History And Settlement Negotiations.....................................2

III.    KEY TERMS OF THE SETTLEMENT ......................................................6

     A.     Class Definition .............................................................................6

     B.     Monetary Relief .............................................................................6

     C.     Release ........................................................................................7

     D.     Notice and Administration Expenses ..................................................8

     E.     Incentive Award, Attorneys' Fees, Costs, And Expenses ......................8

IV.     CLASS CERTIFICATION FOR SETTLEMENT PURPOSES IS
        APPROPRIATE............................................................................................8

     A.     Numerosity ....................................................................................9

     B.     Commonality.................................................................................10

     C.     Typicality ......................................................................................11

     D.     Adequacy ......................................................................................12

     E.     The Proposed Settlement Class Meets The Requirements Of Rule 23(b)(3) ........14

          1.     Common Questions Predominate .....................................................14

          2.     A Class Action Is A Superior Mechanism For Adjudication ..................15

V.      THE NOTICE PLAN COMPORTS WITH DUE PROCESS ...........................16

VI.     THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND
        ADEQUATE AND SHOULD BE FINALLY APPROVED BY THE COURT..............18

     A.     The *Grinnell* Factors .......................................................................20

1.    Litigation Through Trial Would Be Complex, Costly, And Long
      (*Grinnell* Factor 1) ....................................................................................20

2.    The Reaction Of The Class Is Overwhelmingly Positive (*Grinnell*
      Factor 2) ....................................................................................................21

3.    Discovery Has Advanced Far Enough To Allow The Parties To
      Responsibly Resolve The Case (*Grinnell* Factor 3) ................................22

4.    The Continued Litigation Risks Related To Establishing Liability,
      Damages, And Maintaining A Class Action Through Trial Support
      Settlement (*Grinnell* Factors 4, 5, And 6)...............................................23

5.    Defendants' Ability To Withstand A Greater Judgment (*Grinnell*
      Factor 7) ....................................................................................................24

6.    The Settlement Amount Is Reasonable In Light Of The Possible
      Recovery And The Attendant Risks Of Litigation (*Grinnell* Factors
      8 And 9) .....................................................................................................25

B.    The Rule 23(e)(2) Factors .................................................................................27

1.    The Class Representatives And Class Counsel Have Adequately
      Represented The Class (Rule 23(e)(2)(A)) ...............................................27

2.    The Settlement Was Negotiated At Arm's Length ....................................28

3.    The Settlement Provides Adequate Relief To The Class...........................28

4.    The Settlement Treats All Class Members Equally ...................................29

VII.    CONCLUSION.................................................................................................30

## <u>TABLE OF AUTHORITIES</u>

**PAGE(S)**

**CASES**

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997) ................................................................................. 12, 14, 15

*Augustin v. Jablonsky (In re Nassau County Strip Search Cases)*,
   461 F.3d 219 (2d Cir. 2006) ................................................................................. 15

*Beckman v. KeyBank*,
   293 F.R.D. 467 (S.D.N.Y. 2013) ........................................................................ 23

*Bodle v. Johnson & Johnson Consumer Inc.*,
   2022 WL 18495043 (N.D. Cal. Feb. 24, 2022) ................................................... 20

*Bowen v. Energizer Holdings, Inc.*,
   2022 WL 18142508 (C.D. Cal. Aug. 29, 2022) ................................................... 20

*Brief v. Idelle Labs, Ltd.*,
   2023 WL 2860345 (D.N.J. Apr. 10, 2023) .......................................................... 20

*Charron v. Wiener*,
   731 F.3d 241 (2d Cir. 2013) ................................................................................. 12

*City of Detroit v. Grinnell Corp.*,
   495 F.2d 448 (2d Cir. 1974) ..................................................................... 19, 21, 25

*City of Providence v. Aeropostale, Inc.*,
   2014 WL 1883494 (S.D.N.Y. May 9, 2014) ....................................................... 26

*Clinger v. Edgewell Personal Care Brands LLC*,
   2023 WL 2477499 (March 13, 2023) ................................................................... 13

*Edwards v. N. Am. Power & Gas, LLC*,
   2018 WL 3715273 (D. Conn. Aug. 3, 2018) ....................................................... 11

*Eisen v. Carlisle & Jacquelin*,
   417 U.S. 156 (1974) ............................................................................................. 16

*Ferrick v. Spotify USA Inc.*,
   2018 WL 2324076 (S.D.N.Y. May 22, 2018) ..................................................... 28

*Flores v. CGI Inc.*,
   2022 WL 13804077 (S.D.N.Y. Oct. 21, 2022) ................................................... 24

*Floyd v. City of New York*,
   283 F.R.D. 153 (S.D.N.Y. 2012) ........................................................................ 12

*Frank v. Eastman Kodak Co.*,
  228 F.R.D. 174 (W.D.N.Y. 2005).......................................................................... passim

*General Tel. Co. v. Falcon*,
  457 U.S. 147, fn. 13 (1982) .................................................................................. 12

*Gilliam v. Addicts Rehab. Ctr. Fund*,
  2008 WL 782596 (S.D.N.Y. Mar. 24, 2008) ........................................................ 26

*Gordon v. Vanda Pharmaceuticals Inc.*,
  2022 WL 4296092 (E.D.N.Y. Sept. 15, 2022) ...................................................... 30

*Green v. Wolf Corp.*,
  406 F.2d 291 (2d Cir. 1968)................................................................................... 15

*Hart v. BHH, LLC*,
  2017 WL 2912519 (S.D.N.Y. July 7, 2017) ......................................................... 10

*Hernandez v. Uzzal Pizzeria, Inc.*,
  2022 WL 1032522 (S.D.N.Y. Apr. 6, 2022)......................................................... 29

*In re Adelphia Commc'ns Corp. Sec. & Derivative Litigs.*,
  271 F. App'x 41 (2d Cir. 2008) ............................................................................ 17

*In re AOL Time Warner, Inc.*,
  2006 WL 903236 (S.D.N.Y. Apr. 6, 2006)........................................................... 22

*In re Austrian & German Bank Holocaust Litig.*,
  80 F. Supp. 2d 164 (S.D.N.Y. 2000) .......................................................... 20, 22, 23

*In re Gilat Satellite Networks, Ltd.*,
  2007 WL 2743675 (E.D.N.Y. Sept. 18, 2007) ..................................................... 26

*In re GSE Bonds Antitrust Litig.*,
  414 F. Supp. 3d 686 (S.D.N.Y. 2019)........................................................ 27, 28, 29

*In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*,
  2020 WL 7389330 (S.D.N.Y. Dec. 16, 2020) ...................................................... 30

*In re Marsh & McLennan Cos., Inc. Sec. Litig.*,
  2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) ...................................................... 16

*In re MetLife Demutualization Litig.*,
  689 F. Supp. 2d 297 (E.D.N.Y. 2010) .................................................................. 21

*In re PaineWebber Ltd. Partnerships Litg.*,
  171 F.R.D. 104 (S.D.N.Y. 1997) .......................................................................... 23

*In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*,
  330 F.R.D. 11 (E.D.N.Y. 2019) ................................................................. 27, 28, 29

*In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*,
  2019 WL 6875472 (E.D.N.Y. Dec. 16, 2019) ............................................. 19

*In re Petrobas Securities,*
  862 F.3d 250 (2017) ...................................................................................... 15

*In re Prudential Insur. Sales Practices Litig.*,
  962 F. Supp. 450 (D.N.J. 1997) .................................................................... 15

*In re Synchrony Financial Sec. Litig.*,
  2023 WL 1503032 (D. Conn. Feb. 3, 2023) ................................................ 9

*In re Visa Check/MasterMoney Antitrust Litig.*,
  280 F.3d 124 (2d Cir. 2001) .......................................................................... 15

*In re Vitamin C Antitrust Litig.*,
  2012 WL 5289514 (2012) .............................................................................. 21, 23

*Jara v. Felidia Restaurant, Inc.*,
  2018 WL 11225741 (S.D.N.Y. Aug. 20, 2018) ............................................ 18, 28

*Joel A. v. Giuliani*,
  218 F.3d 132 (2d Cir. 2000) .......................................................................... 27

*Johnson v. Rausch, Sturm, Israel, Enerson & Hornik, LLP*,
  333 F.R.D. 314 (S.D.N.Y. 2019) ................................................................. 19

*Ligon, et al., v. City of New York, et al.*,
  2012 WL 5871237 (S.D.N.Y.) ...................................................................... 12

*Lowe v. NBT Bank, N.A.*,
  2022 WL 4621433 (N.D.N.Y. Sept. 30, 2022) ............................................ 24

*Lyter v. Cambridge Sierra Holdings, LLC*,
  2019 WL 13153197 (C.D. Cal. June 18, 2019) ........................................... 23

*Marisol A. v. Giuliani*,
  126 F.3d 372 (2d Cir. 1997) .......................................................................... 9, 12

*Massiah v. MetroPlus Health Plan, Inc.*,
  2012 WL 5874655 (E.D.N.Y. 2012) ............................................................ 22

*Masters v. Wilhelmina Model Agency, Inc.*,
  473 F.3d 423 (2d Cir. 2007) .......................................................................... 25, 29

*McBean v. City of New York*,
228 F.R.D. 487 (S.D.N.Y. 2005) .............................................................. 14

*Meredith Corp. v. SESAC, LLC*,
87 F. Supp. 3d 650 (S.D.N.Y. 2015)................................................... 16, 30

*Newman v. Stein*,
464 F.2d 689 (2d Cir. 1972)..................................................................... 25

*Nichols v. Noom, Inc.*,
2022 WL 2705354 (S.D.N.Y. July 12, 2022) ......................................... 22

*Patellos v. Hello Products, LLC*,
2022 WL 2159566 (S.D.N.Y. June 15, 2022) ......................................... 29

*Peoples v. Annucci*,
180 F. Supp. 3d 294 (S.D.N.Y. 2016)...................................................... 18

*Robidoux v. Celani*,
987 F.2d 931 (2d Cir. 1993)...................................................................... 11

*Rooney v. Procter and Gamble Co.*,
2022 WL 17092124 (E.D. La. Nov. 21, 2022) ........................................ 20

*Rossini v. Ogilvy & Mather, Inc.*,
798 F.2d 590 (2d Cir. 1986)...................................................................... 14

*Schloegel v. Edgewell Personal Care Co.*,
2022 WL 808694 (W.D. Mo. Mar. 16, 2022)........................................... 20

*Tart v. Lions Gate Entertainment Corp.*,
2015 WL 5945846 (2015)......................................................................... 16

*TBK Partners, Ltd. v. Western Union Corp.*,
517 F. Supp. 380 (S.D.N.Y. 1981) ........................................................... 20

*Teachers' Ret. Sys. Of Louisiana v. A.C.L.N. Ltd.*,
2004 WL 2997957 (S.D.N.Y. May 14, 2004) ......................................... 26

*Torres v. Gristede's Oper. Corp.*,
2010 WL 5507892 (S.D.N.Y. Dec. 21, 2010) ......................................... 22

*Trinidad v. Pret a Manger (UDS) Ltd.*,
2014 WL 4670870 (S.D.N.Y. Sept. 19, 2014)......................................... 29

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011).......................................................................... 10, 14

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
    396 F.3d 96 (2d Cir. 2005) ............................................................................... 17, 18

*Weigner v. City of N.Y.*,
    852 F.2d 646 (2d Cir. 1988) ................................................................................... 17

*Zivkovic v. Laura Christy LLC*,
    329 F.R.D. 61 (S.D.N.Y. 2018) .............................................................................. 10

**RULES**

Fed. R. Civ. P. 23 .............................................................................................. 8, 16, 17, 18

Fed. R. Civ. P. 23(a) .......................................................................................... 8, 9, 12, 14

Fed. R. Civ. P. 23(a)(1) ............................................................................................... 9

Fed. R. Civ. P (a)(2) ............................................................................................... 10, 11

Fed. R. Civ. P. 23(a)(4) .......................................................................................... 12, 13

Fed. R. Civ. P (b) ........................................................................................................ 8

Fed. R. Civ. P (b)(3) ........................................................................................ 9, 14, 15, 16

Fed. R. Civ. P. 23(c)(2)(B) ....................................................................................... 16, 21

Fed. R. Civ. P (e) ...................................................................................................... 19

Fed. R. Civ. P 23(e)(2) ............................................................................................... 19

Fed. R. Civ. P (e)(3); and (D) ...................................................................................... 19

Fed. R. Civ. P 23(g) ..................................................................................................... 4

Fed. R. Civ. P 42(a) ..................................................................................................... 4

**OTHER AUTHORITIES**

ALBA CONTE & HEBERT NEWBERG,
    NEWBERG ON CLASS ACTIONS § 11.41 (4th ed. 2002) .............................................. 18

Plaintiffs Jason Goldstein, Brad Davis, Maria Lazo, Mosanthony Wilson, and James Corsey ("Plaintiffs") respectfully submit this memorandum of law in support of Plaintiffs' Motion for Final Approval of Class Action Settlement[1] (hereinafter the "Motion").

## I.    INTRODUCTION

On June 8, 2023, this Court preliminarily approved the class action settlement between Plaintiffs Jason Goldstein, Brad Davis, Maria Lazo, Mosanthony Wilson, and James Corsey ("Plaintiffs") and Defendants Henkel Corporation ("Henkel") and Thriving Brands LLC ("Thriving Brands") (collectively "Defendants") and directed that notice be sent to the Settlement Class.  ECF No. 77.  The settlement administrator, Angeion Group ("Angeion") has implemented the Court-approved notice plan and direct notice has reached 75% of the Settlement Class.  The reaction from the Settlement Class has been overwhelmingly positive.  Specifically, of the tens of thousands of Settlement Class Members, *zero* objected, and only one requested to be excluded.[2] The Settlement is an excellent result for the class and the Court should grant final approval.

The Settlement's strength speaks for itself: it creates a $1.95 million non-reversionary common fund from which each Settlement Class Member who submits a Valid Claim will receive a cash payment.  Notably, this Settlement falls squarely within the range established by previous, similar settlements concerning the benzene contamination of over-the-counter products.  *See*, *e.g.*, *Evans v. Church & Dwight Co*, Case No. 1:22-cv-06301 (N.D Ill.) ($2.5MM common fund);

---

[1]  Unless otherwise indicated, capitalized terms shall have the same meaning as they do in the Settlement Agreement. References to "§ __" are to sections in the Settlement Agreement, submitted as Exhibit 1 to the Declaration of Charles E. Schaffer In Support of Plaintiffs' Motion for Final Approval (the "Schaffer Decl.") and all Settlement Agreement Exhibits are referred to as "Ex [Letter]."

[2]  The deadline for Settlement Class Members to request to be excluded was October 14, 2023. Declaration of Steven Weisbrot Regarding Settlement Administration ("Weisbrot Decl.") ¶ 22, submitted herewith.  The deadline for Settlement Class Members to object was also October 13, 2023.  *Id.* ¶ 23.

*Bangoura v. Beiersdorf, Inc.*, Case No. 1:22-cv-00291-BMC (E.D.N.Y) ($2.3MM common fund); *Delcid v. TCP Hot Acquisition LLC*, Case No. 1:21-cv-09569-DLC (S.D.N.Y.) ($3.65MM common fund).

For these reasons, and as explained further below, the Settlement is fair, reasonable, and adequate, and warrants this Court's final approval.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

### A.  Factual Background

Plaintiffs are purchasers of Defendants' Right Guard® Sport and Xtreme antiperspirant aerosol and spray products ("Covered Products").  In the Litigation, Plaintiffs asserted claims seeking to recover economic damages individually and on behalf of a nationwide class of purchasers of the Covered Products, which Plaintiffs allege Defendants manufactured and distributed and were deceptively and misleadingly marketed, advertised, labeled, and sold while containing or at the risk of containing dangerously high levels of benzene.  Consolidated Amended Class Action Complaint (ECF No. 38) ("CAC") ¶¶ 1-4.

Defendants moved to dismiss the Litigation on several grounds, including, *inter alia*, that: (i) Plaintiffs' claims are expressly preempted by federal law, (ii) Plaintiffs lack standing because they have not suffered injury in fact, and (iii) Plaintiffs fail to state a cause of action.  *See* Schaffer Decl. ¶ 17.  Nevertheless, Defendants have agreed to enter into this Settlement Agreement to avoid further expense, inconvenience, and interference with ongoing business operations, and to dispose of burdensome litigation.  § 1.16.

### B.  Procedural History And Settlement Negotiations

Before commencing the Litigation, Class Counsel extensively investigated and analyzed, among other things, Defendants' marketing campaign, the relevant FDA guidelines concerning labeling and advertising disclosure requirements for antiperspirant deodorant and related products,

FDA guidelines regarding the presence of benzene in consume products, the scientific research concerning the dangers of benzene, and research regarding how Defendants should have known the Products contained benzene. On November 19, 2021, Plaintiff Jason Goldstein commenced a class action in the Southern District of Florida, relying *inter alia* on the Valisure Petition[3], alleging that certain Right Guard® antiperspirant aerosol products sold in the United States contained benzene, and seeking compensation for alleged economic losses sustained by U.S. consumer purchasers of the products. *See Goldstein v. Henkel Corporation and Thriving Brands LLC*, Case No. 9:21-cv-82111-RS (S.D. Fla.) ("*Goldstein* Case").   On November 24, 2021, Plaintiff Mosanthony Wilson filed a similar class action complaint in the Southern District of California. *See Wilson et al v. Thriving Brands, LLC et al*, Case No. 3:21-cv-01988 (S.D. Cal.) ("*Wilson* Case").  On December 6, 2021, Plaintiff Peter Carbone filed a similar class action complaint in the Eastern District of New York. *See Carbone v. Thriving Brands LLC et al*, Case No. 2:21-cv-06742 (E.D.N.Y.) ("*Carbone* Case").  On December 16, 2021, Plaintiff Brad Davis filed a similar class action complaint in the Southern District of Ohio. *See Davis v. Henkel Corporation et al*, Case No. 1:21-cv-00782 (S.D. Ohio) ("*Davis* Case").  On December 22, 2021, Plaintiff Maria Lazo filed a similar class action complaint in the District of Connecticut. *See Lazo v. Henkel Corp et al*, Case No. 3:21-cv-01702 (D. Conn.) ("*Lazo* Case").   And on December 28, 2021, Plaintiffs Diane Soldevilla and Alain Michael filed a similar class action in the Southern District of Florida.  *See*

---

[3] On November 3, 2021, Valisure LLC ("Valisure"), an analytical pharmacy, filed a citizen's petition (the "Valisure Petition or Report") with the United States Food and Drug Administration ("FDA"). The Valisure Petition stated that Valisure had performed tests on batches of body spray products from various manufacturers who marketed and sold the products in the United States, and that a significant number of these products contained detectable levels of benzene. VALISURE CITIZEN PETITION ON BENZENE IN BODY SPRAY PRODUCTS, Nov. 3, 2021, https://assets-global.websitefiles.com/6215052733f8bb8fea016220/626af96f521a0584e70e50eb_ Valisure%20FDA%20Citizen%20Petition%20on%20Body%20Spray%20v4.0%5B260%5D.pdf.

*Soldevilla v. Thriving Brands, LLC et al*, Case No. 0:21-cv-62573 (S.D. Fla.) ("*Soldevilla* Case"). Schaffer Decl. ¶ 10.

Plaintiffs' counsel in *Goldstein*, *Wilson*, *Corsey*, *Lazo*, and *Davis* discussed with Defendant's counsel consolidating and/or transferring the cases in one forum to eliminate duplicative discovery, prevent inconsistent pretrial rulings, and promote judicial efficiency. The Parties then began the process of consolidating all of the actions in this Court by joint motions and stipulations to transfer the actions. Schaffer Decl. ¶ 11.

On January 28, 2022, the Southern District of Florida Court transferred the first-filed Goldstein case to the District of Connecticut. *See Goldstein v. Henkel Corporation and Thriving Brands LLC,* Case No. 3:22-cv-00164 (D. Conn.). On February 2, 2022, the *Davis* case was transferred to the District of Connecticut. *See Davis v. Henkel Corporation et al*, Case No. 3:22-cv-00196 (D. Conn.). On February 2, 2022, the *Wilson* case was transferred to the District of Connecticut. *See Wilson et al v. Thriving Brands*, LLC et al, Case No. 3:22-cv-00270 (D. Conn.). On October 26, 2022, Soldevilla was transferred to the District of Connecticut. See *Soldevilla v. Henkel Corporation et al*, Case No. 3:22-cv-01362 (D. Conn.). Schaffer Decl. ¶ 12.

On March 1, 2022, Plaintiffs Goldstein, Wilson, Corsey, Lazo, and Davis filed a Motion for Consolidation and Appointment of Interim Co-Lead Counsel for an order: (i) consolidating *Goldstein*, *Wilson*, *Lazo*, and *Davis* pursuant to Federal Rule of Civil Procedure 42(a) under the first-filed Goldstein case; and (ii) appointing Bursor & Fisher, P.A., the Sultzer Law Group, P.C., Levin Sedran & Berman LLP, Milberg Coleman Bryson Phillips Grossman, PLLC, and Levi & Korsinsky LLP as interim co-lead counsel and Reardon Scanlon LLP as liaison counsel pursuant to Federal Rule of Civil Procedure 23(g). ECF No. 30. On March 3, 2022, the Court entered the

Order Granting Plaintiffs' Motion For Consolidation and Appointment of Interim Co-Lead Counsel (ECF No. 31). Schaffer Decl. ¶ 13.

On April 4, 2022, Plaintiffs in the Litigation filed a Consolidated Amended Class Action Complaint ("CAC") on behalf of a nationwide class styled captioned *Goldstein et al. v. Henkel Corporation and Thriving Brands LLC*, Case No. 3:22- cv-00164-AWT (D. Conn.) (ECF No. 38). Plaintiffs allege that Defendants failed to test and improperly marketed and sold several aerosol antiperspirants that allegedly contained or were at the risk of containing benzene in violation of state law and compensation for alleged economic losses sustained by U.S. consumer purchasers of the products. Plaintiffs seek to represent a nationwide class of consumers who purchased the Covered Products. Schaffer Decl. ¶ 14.

On May 26, 2022, Defendants moved to dismiss the Litigation on the grounds that, among other things, (i) Plaintiffs' claims are expressly preempted by federal law, (ii) Plaintiffs lack standing because they have not suffered injury in fact, and (iii) Plaintiffs fail to state a cause of action.  ECF No. 49.  Plaintiffs opposed the motion to dismiss, and briefing concluded after several rounds of the parties submitting supplemental authority on November 2, 2022.  ECF Nos. 54, 58, 63, 64, 65, 66.  Schaffer Decl. ¶ 17.

Over the next two months the parties commenced settlement negotiations, considering the cases' strengths and weakness.  To assist with these settlement negotiations, the Parties agreed to proceed to private mediation with the Honorable Diane Welsh (Ret.).  Schaffer Decl. ¶ 18.  In advance of the mediation, the Parties exchanged discovery relevant to their claims and defenses. *Id*.  This is largely the same information that would have been produced had the case proceeded to formal discovery.  *Id*.  Accordingly, the Parties were sufficiently informed at the time of the

mediation of the strengths and weaknesses of their respective positions, the size of the putative class, and the damages at issue to negotiate a reasonable settlement. *Id.*

On December 6, 2022, the Parties attended a full-day mediation with Judge Welsh. Schaffer Decl. ¶ 21. With Judge Welsh's assistance, the Parties reached an agreement on all material terms that same day. *Id.* On December 9, 2022, the Parties executed a term sheet. *Id.* On December 12, 2022, the Parties informed the Court that they had reached an agreement to resolve the matter (ECF No. 67). On April 26, 2023, the Parties executed the Settlement Agreement, and Plaintiffs moved for preliminary approval of the class action settlement. Schaffer Decl. ¶ 35; *see also* ECF No. 76. On June 8, 2023, the Court granted Plaintiffs' motion, and scheduled a Final Approval hearing for December 13, 2023 (ECF No. 77). *Id.* ¶ 38.

## III.    KEY TERMS OF THE SETTLEMENT

### A.    Class Definition

The "Settlement Class" or "Settlement Class Members" is defined as: All natural persons who, between November 19, 2018 and the date of Preliminary Approval, purchased in the United States any Covered Product for personal, family or household use, and not resale.[4] *See* Schaffer Decl. Ex. 1; Settlement Agreement § 2.35.

### B.    Monetary Relief

The Settlement Fund is a non-reversionary fund that shall be established by or on behalf of Defendants in the total amount of one million nine hundred and fifty dollars ($1,950,000.00 USD).

---

[4] Excluded from the Settlement Class are (1) any Judge or Magistrate Judge presiding over this Action and members of their families; (2) the Defendants, Defendants' subsidiaries, parent companies, successors, predecessors, and any entity in which the Defendants or its parents have a controlling interest and their current or former officers, directors, agents, and attorneys; (3) persons who properly execute and file a timely request for exclusion from the class; and (4) the legal representatives, successors or assigns of any such excluded persons.

Settlement Agreement §§ 2.36, 3.1.  Class Members who submit a Valid Claim with Proof of Purchase shall receive up to $3.00 for each Covered Product listed on the Proof of Purchase, inclusive of all taxes.  § 3.4(a).  Settlement Class Members who submit a Valid Claim without Proof of Purchase shall receive up to $1.75 for up to five (5) Covered Products claimed per household.  § 3.4(b).  Each Settlement Class Member's payment shall be increased or decreased on a *pro rata* basis such that the total amount paid to all Settlement Class Members equals the Available Settlement Funds.  § 3.5.  Class Notice gives Class Members the option to receive settlement payment via check, Venmo, Zelle, PayPal, or Prepaid Mastercard.  § 3.12; Ex. A (Claim Form).

### C.  Release

The Settlement Agreement provides that upon the Effective Date, Settlement Class Members shall forever release Defendants from any and all claims for economic injury, including economic injuries relating to medical monitoring, related to the presence of benzene in the Covered Products that were, or could have been asserted, in this Litigation and any economic harm resulting from any (i) testing, marketing, sales and advertising with respect to the presence of benzene in the Covered Products, and (ii) acts, omissions or misrepresentations concerning the presence of benzene in the Covered Products.  Settlement Agreement § 7.2(a).  The Settlement Agreement expressly excludes any claims for personal and/or bodily injuries and explains that Settlement Class Members are not releasing any claims, demands, rights, damages, obligations, suits, debts, liens, and causes of action relating to bodily injuries allegedly caused by the Covered Products. *Id.* § 7.2(d).

### D.      Notice and Administration Expenses

The Settlement Fund will be used to pay the cost of Settlement Administration Expenses, which includes sending the Notice set forth in the Settlement Agreement, as well as all costs of administering the Settlement.  Settlement Agreement §§ 2.3, 3.1. [5]

### E.      Incentive Award, Attorneys' Fees, Costs, And Expenses

In recognition for their efforts on behalf of the Settlement Class, Defendants have agreed that Plaintiffs may each receive, subject to Court approval, an incentive award of $1,000 from the Settlement Fund, as appropriate compensation for their time and effort serving as Class Representatives and as parties to the Action.  *See* Settlement Agreement § 5.2.  Defendants have also agreed that Class Counsel may receive from the Settlement Fund, subject to Court approval, attorneys' fees, costs, and expenses not to exceed one-third of the Settlement Fund.  Settlement Agreement § 5.1.  Class Counsel has agreed to petition the Court for no more than this amount. *Id.*  These awards are subject to this Court's approval, which Plaintiffs have moved for separately. *See* ECF No. 83.  That motion is unopposed.

## IV.    CLASS CERTIFICATION FOR SETTLEMENT PURPOSES IS APPROPRIATE

The Court's Preliminary Approval Order provisionally certified a class for settlement purposes of: "all natural persons who, prior to the date hereof, purchased in the United States any Covered Product for personal, family or household use, and not resale."  ECF No. 77 ¶ 3 (the "Settlement Class"); *see supra* n.2.

Under Fed. R. Civ. P. 23, a class action may be maintained if all of the prongs of Rule 23(a) are met, as well as one of the prongs of Rule 23(b).  Rule 23(a) requires that: (1) the class is

---

[5] These costs will not exceed $275,000.000. *See* Declaration of Charles E. Schaffer ¶ 6, ECF No. 85.

so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.  Fed. R. Civ. P. 23(a).  Rule 23(b)(3) requires the Court to find that:

> Questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

Fed. R. Civ. P. 23(b)(3).  In the Second Circuit, "Rule 23 is given liberal rather than restrictive construction, and courts are to adopt a standard of flexibility" in evaluating class certification. *Marisol A. v. Giuliani*, 126 F.3d 372, 377 (2d Cir. 1997) (internal citation omitted).

The Court should now grant final certification because the Settlement Class meets all of the requirements of Rule 23(a) and Rule 23(b)(3).  Indeed, in granting preliminary approval this Court already determined that class certification for settlement purposes is warranted.  *See* ECF No. 77 ¶ 5.

### A.     Numerosity

Numerosity is satisfied when "the class is so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  "Numerosity is presumed where a putative class has forty or more members."  *In re Synchrony Financial Sec. Litig.*, 2023 WL 1503032, at *3 (D. Conn. Feb. 3, 2023)(cleaned up).  Here, the total number of units sold is more than 6 million over a three-year period.  Schaffer Decl. ¶ 42.  Clearly, the class consists of hundreds of thousands if not more than a million consumers who purchased the Covered Products.  *Id.*  Joinder of so many class members is impractical, and numerosity is therefore met.

B.      **Commonality**

Rule 23(a)(2) requires that a plaintiff establish that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). This threshold is satisfied if the question is "capable of class wide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). "[A] single [common] question will" satisfy the commonality inquiry. *Id.* at 359. "The claims for relief need not be identical for them to be common." *Zivkovic v. Laura Christy LLC*, 329 F.R.D. 61, 69 (S.D.N.Y. 2018).

Here, there are common issues of law and fact that affect the Class uniformly and satisfy the commonality requirement, including, among other things: whether Defendants' failure to disclose the presence or the risk of benzene in the Covered Products was likely to deceive reasonable consumers; whether Defendants: (1) violated the consumer statutes set forth in the CAC, (2) breached express warranties with regard to the Covered Products; and (3) breached the implied warranty of merchantability; (4) whether members of the Settlement Class were injured and the proper measure of their losses as a result of those injuries; (5) whether members of the Settlement Class are entitled to damages and the amount of such damages (including compensatory, exemplary, statutory damages, and/or punitive damages); and (6) whether members of the Settlement Class are entitled to declaratory, injunctive, or other equitable relief.

Resolution of these common questions would require evaluation of the question's merits under a single objective standard, i.e., the "reasonable consumer" test. *Hart v. BHH, LLC*, 2017 WL 2912519, at *6 (S.D.N.Y. July 7, 2017) (commonality met where "the putative class members relied on the same alleged misrepresentations of fact regarding the efficacy of the pest repeller and suffered the same economic harm."). These common questions, which target the same alleged misconduct by Defendants, satisfy Rule 23(a)(2).

### C.     Typicality

The next requirement – typicality – requires that a class representative have claims that are typical of those of the putative class members.  Fed. R. Civ. P. 23(a)(2).  Typicality is met here. "Like the commonality requirement, typicality does not require the representative party's claims to be identical to those of all class members."  *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 182 (W.D.N.Y. 2005).

In the Second Circuit, "Rule 23(a)(3)'s typicality requirement is satisfied when each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." *Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993); *accord Edwards v. N. Am. Power & Gas, LLC*, 2018 WL 3715273, at *7 (D. Conn. Aug. 3, 2018).

Here, the alleged injuries to Plaintiffs and members of the Settlement Class are attributable to the same alleged course of conduct by Defendants, and liability for this conduct is predicated on the same legal theories.  *Robidoux v. Celani*, 987 F.2d 931, 936-37 (2d Cir. 1993).  Like Plaintiffs, each member of the Settlement Class was exposed to the same allegedly deceptive marketing practices and purchased Products that contained benzene or were at the risk of containing benzene, a known carcinogen, without intending to do so.  Plaintiffs and members of the Settlement Class suffered the same harm because the Covered Products were falsely marketed as safe for normal use when, in reality, they contained or were at the risk of containing benzene. Stated differently, the harm suffered by Plaintiffs is representative of the harmed suffered by members of the Settlement Class because they purchased products that were contaminated with or were at the risk of being contaminated with benzene without intending to do so, thereby incurring economic injuries.

Here, Plaintiffs' and Class Members' claims arise from the same nucleus of facts and are based on the same alleged contamination and legal theories.  Thus, Plaintiffs "have the incentive to prove all elements of the cause of action which would be presented by the individual members of the class were they initiating individualized actions." *Ligon, et* al., v. City of New York, et al., 2012 WL 5871237 (S.D.N.Y.) (citing *Floyd v. City of New York*, 283 F.R.D. 153, 160 (S.D.N.Y. 2012)).  Accordingly, the typicality requirement of Rule 23(a) is satisfied.

### D.     Adequacy

The final Rule 23(a) prerequisite requires that "the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  Rule 23(a)(4) permits certification of a class only if "the representative parties will fairly and adequately protect the interests of the class," which requires: (1) the class representatives do not have conflicting interests with other class members; and (2) class counsel is "qualified, experienced and generally able to conduct the litigation."  *Marisol A. by Forbes v. Giuliani*, 126 F.3d 372, 378 (2d Cir. 1997); *see also Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) ("The adequacy inquiry … serves to uncover conflicts of interest between named parties and the class they seek to represent. A class representative must be part of the class and possess the same interest and suffer the same injury as the class members.").

Plaintiffs and their counsel are adequate.  To satisfy the first requirement, plaintiffs must show that "the members of the class possess the same interests" and that "no fundamental conflicts exist" between the class representatives and class members.  *Charron v. Wiener*, 731 F.3d 241, 249 (2d Cir. 2013).  Here, Plaintiffs do not have any conflicts of interest with the absent members of the proposed Settlement Class, as their claims are coextensive with those of the proposed Settlement Class.  *General Tel. Co. v. Falcon*, 457 U.S. 147, 157-58, fn. 13 (1982).  Plaintiffs possess the same interests as members of the proposed Settlement Class because they have

incurred the same alleged injuries, which occurred in the same manner and based on the same allegedly misleading conduct concerning the Covered Products. *See generally* CAC (explaining Plaintiffs and other members of the Settlement Class purchased the Products during the Class Period and were injured at the point of sale as a result of the Products' alleged misbranding and misrepresentations). Plaintiffs have also fulfilled Rule 23(a)(4)'s second requirement and shown their commitment to this case by retaining qualified counsel to vigorously litigate their claims. Class Counsel have invested considerable time and resources into the prosecution of this case, have an extensive and proven track record of success in class actions generally and false advertising cases specifically, and have been appointed class counsel on numerous occasions. *See* Schaffer Decl. ¶¶ 9-35, 39, 59, 64, 66-70.

Likewise, Class Counsel has extensive experience in litigating class actions of similar size, scope, and complexity to the instant action. Schaffer Decl. ¶¶ 39, 64, 66-70. Class Counsel regularly engages in major complex class action litigation, has the resources necessary to conduct litigation of this nature, and has frequently been appointed lead class counsel by courts throughout the country. *Id.*; *see also* Schaffer Decl. ¶¶ 66-70 (docket citations for Firm Resumes of Levin Sedran & Berman LLP (ECF Doc. 30-5); Bursor & Fisher, P.A. (ECF Doc. 30-3); The Sultzer Law Group, P.C. (ECF Doc. 30-4); Milberg Coleman Bryson Phillips Grossman, PLLC (ECF Doc. 30-6); and Levi & Korinsky LLP (ECF Doc. 30-7)). Plaintiffs' Counsel has substantial experience prosecuting actions that involve benzene contamination of consumer products such as sunscreen, deodorant and antiperspirant products. *See*, *e.g.*, *Clinger v. Edgewell Personal Care Brands, LLC*, 3:21-cv-01040-JAM (D. Conn); *Delcid et al. v. TCP Hot Acquisition LLC et al.*, 1:21-cv-09569-DLC (S.D.N.Y); *Bangoura v. Beiersdorf, Inc. et al.*, 1:22-cv-00291-BMC (E.D.N.Y.). Schaffer Decl. ¶ 39.

Accordingly, because Plaintiffs and Class Counsel have demonstrated their commitment to representing the Settlement Class and neither have interests antagonistic to the Settlement Class, the adequacy requirement is satisfied.

**E.    The Proposed Settlement Class Meets The Requirements Of Rule 23(b)(3)**

Rule 23(b)(3) requires that common questions of law or fact not only be present, but "predominate over any questions affecting only individual members and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."  Fed. R. Civ. P. 23(b)(3).  This inquiry examines "whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997).  That Plaintiffs easily meet the Rule 23(a) criteria is a strong indicator that Rule 23(b)(3) is satisfied.  *Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590, 598 (2d Cir. 1986) (satisfaction of Rule 23(a) "goes a long way toward satisfying the Rule 23(b)(3) requirement of commonality").

*1.    Common Questions Predominate*

Rule 23(b)(3)'s predominance requirement focuses on whether the defendant's liability is common enough to be resolved on a class basis, *Wal-Mart Stores*, 564 U.S. at 359, and whether the proposed class is "sufficiently cohesive to warrant adjudication by representation."  *Amchem*, 521 U.S. at 623.  Where plaintiffs are "unified by a common legal theory" and by common facts, the predominance requirement is satisfied.  *McBean v. City of New York*, 228 F.R.D. 487, 502 (S.D.N.Y. 2005).  The predominance requirement "is designed to determine whether 'proposed classes are sufficiently cohesive to warrant adjudication by representation.'"  *Frank*, 228 F.R.D. at 183 (quoting *Amchem*, 521 U.S. at 623).

In this case, there was a common course of conduct engaged in by Defendants.  The central legal issues in this case that likely would be presented at the summary judgment stage, including whether the Covered Products contain benzene (and if so, whether the Covered Products contained

harmful levels of benzene), whether Defendants knew or should have known of the alleged benzene contamination, whether Defendants' failure to disclose the presence of benzene in the Covered Products was likely to deceive reasonable consumers, and whether the omissions were material.  These central common questions predominate over any questions that may affect individual Settlement Class Members, are subject to "generalized proof," and "outweigh those issues that are subject to individualized proof." *Augustin v. Jablonsky* (In re Nassau County Strip Search Cases), 461 F.3d 219, 227-28 (2d Cir. 2006).  In these circumstances, courts find, particularly for purposes of settlement, that there is predominance of common questions over individual issues.  *See In re Prudential Insur. Sales Practices Litig.*, 962 F. Supp. 450, 511-512 n.45 (D.N.J. 1997) ("*Prudential I*") (citing numerous cases).

### 2.     A Class Action Is A Superior Mechanism For Adjudication

The second part of the Rule 23(b)(3) analysis is a relative comparison examining whether "the class action device [is] superior to other methods available for a fair and efficient adjudication of the controversy." *Green v. Wolf Corp.*, 406 F.2d 291, 301 (2d Cir. 1968).  Rule 23(b)(3) sets forth a non-exclusive list of relevant factors, including whether individual class members wish to bring, or have already brought, individual actions; and the desirability of concentrating the litigation of the claims in the particular forum.  Fed. R. Civ. P. 23(b)(3).[6]

---

[6] Another factor, whether the case would be manageable as a class action at trial, is not of consequence in the context of a proposed settlement. *See Amchem*, 521 U.S. at 620 ("[c]onfronted with a request for settlement-only class certification, a [trial] court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial"); *Frank*, 228 F.R.D. at 183 ("The court need not consider the [manageability] factor, however, when the class is being certified solely for the purpose of settlement.").  Moreover, "failure to certify an action under Rule 23(b)(3) on the sole ground that it would be unmanageable is disfavored and should be the exception rather than the rule." *In re Petrobas Sec.*, 862 F.3d at 268 (quoting *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 140 (2d Cir. 2001).

Plaintiffs satisfy Rule 23(b)(3)'s superiority requirement because common questions comprise a substantial aspect of the case and can be resolved for all Class Members in a single adjudication, obviating the need for multiple trials in multiple venues.  Importantly, "[t]he potential class members are both significant in number and geographically dispersed" and "[t]he interest of the class as a whole in litigating the many common questions substantially outweighs any interest by individual members in bringing and prosecuting separate actions." *Meredith Corp. v. SESAC, LLC*, 87 F. Supp. 3d 650, 661 (S.D.N.Y. 2015).  The "small recoveries" at stake here likely "do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." *Tart*, 2015 WL 5945846, at *5.  In addition, a class action will conserve judicial resources because "rather than individually settling [thousands of] lawsuits, the proposed Settlement allows for the named Plaintiffs, class members, and Defendants to resolve all claims … at once." *Id.*  Moreover, it is desirable to concentrate the claims in this Court as the Court is already familiar with the factual and legal issues in the case.  A class action is the most suitable mechanism to fairly, adequately, and efficiently resolve Settlement Class Members' claims.

## V.    THE NOTICE PLAN COMPORTS WITH DUE PROCESS

Before final approval can be granted, due process and Rule 23 require that the notice provided to the Settlement Class is "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974).  "Such notice to class members need only be reasonably calculated under the circumstances to apprise interested parties of the pendency of the settlement proposed and to afford them an opportunity to present their objections." *In re Marsh & McLennan Cos., Inc. Sec. Litig.*, 2009 WL 5178546, at *12 (S.D.N.Y. Dec. 23, 2009).  Notice must clearly state essential information regarding the settlement, including the nature of the action, terms of the settlement, and class members' options.  See Fed.

R. Civ. P. 23(c)(2)(B).  At its core, all that notice must do is "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings."  *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 114 (2d Cir. 2005) ("*Visa U.S.A.*") (citation omitted).

"It is clear that for due process to be satisfied, not every class member need receive actual notice, as long as counsel 'acted reasonably in selecting means likely to inform persons affected.'" *In re Adelphia Commc'ns Corp. Sec. & Derivative Litigs.*, 271 F. App'x 41, 44 (2d Cir. 2008) (quoting *Weigner v. City of N.Y.*, 852 F.2d 646, 649 (2d Cir. 1988)).  The Federal Judicial Center notes that a notice plan is reasonable if it reaches at least 70% of the class.  *See* Fed. Judicial Ctr., *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide* 3 (2010). The notice plan here easily meets these standards, as it reached approximately 75% of the Settlement Class.  *See* Weisbrot Decl. ¶ 11.

At preliminary approval, the Court approved the Parties' proposed Notice Plan, finding it met the requirements of Rule 23 and due process.  *See* ECF No. 77 ¶ 11.  The Plan has now been fully carried out by professional settlement administrator, Angeion Group, LLC ("Angeion"). Pursuant to the Settlement, Defendants provided Angeion with a list of 597 available names, addresses and emails of potential Settlement Class Members.  *See* Weisbrot Decl. ¶ 5.  Angeion successfully delivered the Court-approved notice via postcard to these Settlement Class Members. *See id.* ¶ 6.  In addition, Angeion implemented a comprehensive media notice program consisting of "internet banner advertisement notice, social media notice via Facebook and Instagram, [and] a paid search campaign via Google."  *See id.* ¶ 9.  Accordingly, the Court-approved notice

successfully reached 75% of the Settlement Class directly.  *See id.* ¶ 11.[7]  These summary notices

also directed Settlement Class Members to the Settlement Website, where they were able to submit

an election form online to receive payment electronically; access important court filings, including

the Motion for Attorneys' Fees and all related documents; and see deadlines and answers to

frequently asked questions. The Settlement Administrator also maintained a toll-free telephone

line to provide information and answer questions.  *See id.* ¶ 16.  The success of the Notice Plan is

clear, given 347,209 Settlement Class Members submitted claims in this matter.  *See id.* ¶ 18.

Given the broad reach of the notice, and the comprehensive information provided, the

requirements of due process and Rule 23 are easily met.

## VI.   THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE AND SHOULD BE FINALLY APPROVED BY THE COURT

There is a "strong judicial policy in favor of settlements, particularly in the class action

context." *Visa U.S.A.*, 396 F.3d at 116 (internal quotations omitted); *see also* NEWBERG ON CLASS

ACTIONS § 11.41 (4th ed. 2002) ("The compromise of complex litigation is encouraged by the

courts and favored by public policy.").  "Courts have discretion regarding the approval of a

proposed class action settlement." *Jara v. Felidia Restaurant, Inc.*, 2018 WL 11225741, at *1

(S.D.N.Y. Aug. 20, 2018).  "In exercising this discretion, courts should give weight to the parties'

consensual decision to settle class action cases because they and their counsel are in unique

positions to assess potential risks." *Id.*  "Due to the presumption in favor of settlement, absent

fraud or collusion, courts should be hesitant to substitute their judgment for that of the parties who

negotiated the settlement." *Peoples v. Annucci*, 180 F. Supp. 3d 294, 307 (S.D.N.Y. 2016)

(cleaned up).

---

[7] On May 4, 2023, Angeion also notified the appropriate state and federal officials pursuant to CAFA.  *See* Weisbrot Decl. ¶ 4. No objection has been received from any state or federal official.

In evaluating a class action settlement, courts in the Second Circuit consider the nine factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974) ("*Grinnell*"). The *Grinnell* factors are: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *Grinnell*, 495 F.2d at 463.

Courts must also consider the "four enumerated factors in the new [Federal Rule of Civil Procedure] Rule 23(e)(2), in addition to the nine *Grinnell* factors." *Johnson v. Rausch, Sturm, Israel, Enerson & Hornik, LLP*, 333 F.R.D. 314, 420 (S.D.N.Y. 2019). The Rule 23(e) factors are whether:  (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.  Fed. R. Civ. P. 23(e)(2).  "There is significant overlap between the Rule 23(e)(2) and *Grinnell* factors, which complement, rather than displace each other." *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, 2019 WL 6875472, at *14 (E.D.N.Y. Dec. 16, 2019) ("*In re Payment Card II*").

A.      The *Grinnell* Factors

      1.      *Litigation Through Trial Would Be Complex, Costly, And Long (Grinnell Factor 1)*

By reaching a favorable settlement prior to trial, Plaintiffs seek to avoid significant expense and delay, and instead ensure recovery for the class.  "Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000), *aff'd sub. nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001).  Courts have consistently held that, unless the proposed settlement is clearly inadequate, its acceptance and approval are preferable to the continuation of lengthy and expensive litigation with uncertain results.  *TBK Partners, Ltd. v. Western Union Corp.*, 517 F. Supp. 380, 389 (S.D.N.Y. 1981), *aff'd*, 675 F.2d 456 (2d Cir. 1982).

This case is no exception.  As discussed herein, the Parties have engaged in motion practice and significant discovery.  Schaffer Decl. ¶¶ 9-35.  The next steps in the litigation would have been resolution by the Court of Defendants' Motion to Dismiss, Plaintiffs' forthcoming motion for class certification, and Defendants' forthcoming motion for summary judgment.  At minimum, these efforts would be costly and time-consuming for the Parties and the Court, and create the risk that a litigation class would not be certified and/or that the Settlement Class Members would recover nothing at all.  Indeed, courts analyzing similar issues to those raised here issue have held plaintiffs have not satisfied standing, injury, or causation requirements.  *See, e.g.*, *Rooney v. Procter and Gamble Co.*, 2022 WL 17092124 (E.D. La. Nov. 21, 2022); *Bowen v. Energizer Holdings, Inc.*, 2022 WL 18142508 (C.D. Cal. Aug. 29, 2022); *Brief v. Idelle Labs, Ltd.*, 2023 WL 2860345 (D.N.J. Apr. 10, 2023); *Bodle v. Johnson & Johnson Consumer Inc.*, 2022 WL 18495043 (N.D. Cal. Feb. 24, 2022); *Schloegel v. Edgewell Personal Care Co.*, 2022 WL 808694 (W.D. Mo. Mar. 16, 2022).  Defendants are represented by formidable defense counsel well-versed in class action

litigation, and Defendants have indicated that they would continue to assert numerous defenses on the merits.  Schaffer Decl. ¶ 44.  Plaintiffs and Class Counsel are also aware that Defendants would oppose class certification vigorously, and that Defendants would prepare a competent defense at trial.  And while Plaintiffs and Class Counsel were confident in the claims alleged, it is entirely possible that the Court could have sided with Defendants, leaving Plaintiffs and Class Members empty-handed.  Schaffer Decl. ¶ 50.

The Settlement, on the other hand, permits a prompt resolution of this action on terms that are fair, reasonable, and adequate to the Class.  This result will be accomplished years earlier than if the case proceeded to judgment through trial and/or appeals, and provides certainty, whereas litigation does not and could result in defeat for the Class on summary judgment, at trial or on appeal.  Consequently, this *Grinnell* factor weighs in favor of final approval of the Settlement.

### 2. The Reaction Of The Class Is Overwhelmingly Positive (Grinnell Factor 2)

With the second *Grinnell* factor, the Court judges "the reaction of the class to the settlement." *In re Vitamin C Antitrust Litig.*, 2012 WL 5289514, at *4 (quoting *Grinnell*, 495 F.2d at 463).  "It is well settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy." *In re MetLife Demutualization Litig.*, 689 F. Supp. 2d 297, 333 (E.D.N.Y. 2010) (internal quotations omitted).  This "significant" factor weighs heavily in favor of final approval.

Here, the reaction of the Class Members to the Settlement has been overwhelmingly positive.  Class Notice has been provided to the Settlement Class Members in accordance with the requirements of Rule 23(c)(2)(B) and the Preliminary Approval Order (ECF No. 77).  *See generally* Weisbrot Decl.  Zero Class Members objected to the Settlement, and one opted out. *Id.* ¶¶ 22-23.  This reaction and lack of objections from the Settlement Class leave no question that

the Settlement Class Members view the Settlement favorably, which weighs heavily in favor of final approval and further supports the "presumption of fairness." *See*, *e.g.*, *Massiah v. MetroPlus Health Plan, Inc.*, 2012 WL 5874655, at *4 (E.D.N.Y. 2012) ("The fact that the vast majority of class members neither objected nor opted out is a strong indication of fairness."); *Nichols v. Noom, Inc.*, 2022 WL 2705354, at *9 (S.D.N.Y. July 12, 2022) ("There have also been no objections to the settlement and only a total of eight opt-outs-a tiny amount in relation to the 2 million members of the settlement class."). Consequently, this *Grinnell* factor weighs in favor of final approval of the Settlement.

> 3.  *Discovery Has Advanced Far Enough To Allow The Parties*
> *To Responsibly Resolve The Case (Grinnell Factor 3)*

This factor goes to "whether the plaintiffs have obtained a sufficient understanding of the case to gauge the strengths and weaknesses of their claims and the adequacy of the settlement." *In re AOL Time Warner, Inc.*, 2006 WL 903236, at *10 (S.D.N.Y. Apr. 6, 2006). "The pertinent question is whether counsel had an adequate appreciation of the merits of the case before negotiating." *Torres v. Gristede's Oper. Corp.*, 2010 WL 5507892, at *5 (S.D.N.Y. Dec. 21, 2010) (internal quotation omitted). "[T]he pretrial negotiations and discovery must be sufficiently adversarial that they are not designed to justify a settlement … but an aggressive effort to ferret out facts helpful to the prosecution of the suit." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 176 (internal quotation marks omitted).

Here, Class Counsel are sufficiently well informed of the strengths and weaknesses of the claims, having drafted multiple pleadings, drafted an opposition to the motion to dismiss, and engaged in significant discovery. Schaffer Decl. ¶¶ 15-16, 23-35, 39. Class Counsel also spoke with potential damages experts concerning the strengths and weaknesses of the case, as well as evaluated the strengths and weaknesses of Defendants' arguments and affirmative defenses. *Id.*

¶ 16.  The information exchanged during formal discovery and settlement negotiations permitted Class Counsel to learn the relevant facts and circumstances.  *Id.* ¶ 18; *Lyter v. Cambridge Sierra Holdings, LLC*, 2019 WL 13153197, at *5 (C.D. Cal. June 18, 2019) (finding that the parties were sufficiently informed where they engaged in significant informal discovery and engaged in adversarial motion practice.).  Both sides have also prepared mediation statements setting forth their relevant positions and participated "in a day-long mediation allowed them to further explore the claims and defenses."  *Beckman v. KeyBank*, 293 F.R.D. 467, 475 (S.D.N.Y. 2013).  As a result, Class Counsel was well-positioned to evaluate the strengths of Plaintiffs' claims, Defendants' defenses, and prospects for success.  This *Grinnell* factor thus also weighs in favor of final approval.

4.      *The Continued Litigation Risks Related To Establishing Liability, Damages, And Maintaining A Class Action Through Trial Support Settlement (Grinnell Factors 4, 5, And 6)*

"The fourth, fifth, and sixth *Grinnell* factors all relate to continued litigation risks," *i.e.*, the risks of establishing liability, damages, and maintaining the class action through trial.  *In re Vitamin C*, 2012 WL 5289514, at *5.  "'Litigation inherently involves risks.'"  *Willix v. Healthfirst, Inc.*, 2011 WL 7584862, at *4 (E.D.N.Y. Feb. 18, 2011) (quoting *In re PaineWebber*, 171 F.R.D. 104, 126 (S.D.N.Y. 1997)).  "One purpose of a settlement is to avoid the uncertainty of a trial on the merits."  *Id.*  In weighing the risks of certifying a class and establishing liability and damages, the court "must only weigh the likelihood of success by the plaintiff class against the relief offered by the settlement."  *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 177 (internal quotations omitted).

Although Plaintiffs believe their case is strong, it is not without risk.  At the time of the Settlement Agreement, Defendants' motion to dismiss was still pending and presented a risk that

Plaintiffs' claims would be tossed at the pleadings. *See* Schaffer Decl. ¶ 44. Indeed, a number of courts have rejected similar cases by granting motions to dismiss. *See* Argument § VI.A.1, *supra* (citing cases). Even if Plaintiffs' claims survived the pleadings, Defendants were prepared to engage in further fact and expert discovery, would likely file a motion for summary judgment, and would vigorously contest the certification of a litigation class and the legal merits of Plaintiffs' claims. *See* Schaffer Decl. ¶¶ 46-48. Further, "[e]ven assuming that the Court granted certification, there is always the risk of decertification after the close of discovery." *Lowe v. NBT Bank, N.A.*, 2022 WL 4621433, at *8 (N.D.N.Y. Sept. 30, 2022); *see also Flores v. CGI Inc.*, 2022 WL 13804077, at *8 (S.D.N.Y. Oct. 21, 2022) ("The risks attendant to certifying a class and defending any decertification motion supports approval of the settlement.").

Thus, "while Plaintiffs and Class Counsel believe that they would prevail on their claims asserted against [Defendants], they also recognize the risks and uncertainties inherent in pursuing the action through [the pleadings,] class certification, summary judgment, trial, and appeal." *Lowe*, 2022 WL 4621433, at *8. The proposed Settlement alleviates these risks and provides a substantial benefit to the Settlement Class Members in a timely fashion. Accordingly, these *Grinnell* factors are met.

5.    *Defendants' Ability To Withstand A Greater Judgment*
      *(Grinnell Factor 7)*

Defendants probably could withstand a greater judgment. However, a "defendant's ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair." *Frank*, 228 F.R.D. at 186 (cleaned up). Thus, at worst, this factor is neutral.

6.     *The Settlement Amount Is Reasonable In Light Of The Possible Recovery And The Attendant Risks Of Litigation (Grinnell Factors 8 And 9)*

The determination of whether a settlement amount is reasonable "does not involve the use of a mathematical equation yielding a particularized sum." *Frank*, 228 F.R.D. at 186. "Instead, 'there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'" *Id.* (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)). Because a settlement provides certain and immediate recovery, courts often approve settlements even where the benefits obtained as a result of the settlement are less than those originally sought. As the Second Circuit stated in *Grinnell*, "[t]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth of a single percent of the potential recovery." *Grinnell*, 495 F.2d at 455 n.2. Further, In the Second Circuit, courts are required to calculate the value of a Settlement in terms of the amount of relief *made available* to Class Members, as opposed to the amount that may actually be claimed. *Cf. Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 437 (2d Cir. 2007) (basing award of attorneys' fees on "the total funds made available, whether claimed or not" because "[t]he entire Fund, and not some portion thereof, is created through the efforts of counsel at the instigation of the entire class.").

To that end, Class Counsel has made $1.95 million available to Settlement Class Members. Settlement Agreement § 3.1. Settlement Class Members who submit a Valid Claim Form with Proof of Purchase shall receive $3.00 for each Covered Product listed on the Proof of Purchase, inclusive of all taxes. *Id.* § 3.4(a). Settlement Class Members who submit a Valid Claim Form without Proof of Purchase shall receive $1.75 for up to five (5) Covered Products claimed per household. *Id.* § 3.4(b). This represents between a 47 % to 80% recovery per Covered Product,

25

which is within the range of reasonableness. *See* Schaffer Dec ¶ 40.  *City of Providence v. Aeropostale, Inc.*, 2014 WL 1883494, at *9 (S.D.N.Y. May 9, 2014) (approving settlement that "represent[ed] a recovery in the range of approximately 9.2% to 21% of estimated damages"); *In re Gilat Satellite Networks, Ltd.*, 2007 WL 2743675, at *12 (E.D.N.Y. Sept. 18, 2007) (approving $20 million settlement representing 10% of maximum damages).  Further, the total monetary relief provided to Class Members—$1.95 million—is 9% of Defendants' total potential liability in this action under a total disgorgement theory.  Schaffer Decl. ¶ 41.  However, the full disgorgement theory would have been challenged by Defendants and may not have succeeded because Defendants would argue that even contaminated products are not completely worthless, *i.e.*, they still have antiperspirant in them.  Schaffer Decl. ¶ 58.  As a result, Plaintiffs' likely damage theory to succeed here likely would have been based on the premium class members paid over what they would have paid had they known about the contamination or risk of contamination.  *Id*. Class Counsel consulted with an economic expert who estimated, the best-case, price-premium scenario for products like this was around 30% of the purchase price.  *Id.* ¶ 59.  Here, the Settlement Class's best day under a 30% price premium model would be $6.6 million dollars, and the Settlement Agreement provides 29.45% of this value.  *Id*. Thus, the class here is recovering somewhere between 9% (full disgorgement) and approximately 30% of the price premium of what it might have recovered at trial, which is likewise reasonable per the aforementioned authorities.

Moreover, where, as here, a settlement assures immediate payment of substantial amounts to Settlement Class Members, and does not "sacrific[e] 'speculative payment of a hypothetically larger amount years down the road,'" the settlement is reasonable under this factor.  *See Gilliam v. Addicts Rehab. Ctr. Fund*, 2008 WL 782596, *5 (S.D.N.Y. Mar. 24, 2008) (quoting *Teachers'*

*Ret. Sys. Of Louisiana v. A.C.L.N. Ltd.*, 2004 WL 2997957, *5 (S.D.N.Y. May 14, 2004)).  Thus, these *Grinnell* factors also weigh in favor of final approval.

* * *

In sum, all of the *Grinnell* factors weigh in favor of approval, or are neutral at worst.  The Settlement on its face is "'fair, adequate, and reasonable, and not a product of collusion.'"  *Frank*, 228 F.R.D. at 184 (quoting *Joel A. v. Giuliani*, 218 F.3d 132, 138-39 (2d Cir. 2000)).  Thus, the Court should grant final approval.

### B. The Rule 23(e)(2) Factors

#### 1. *The Class Representatives And Class Counsel Have Adequately Represented The Class (Rule 23(e)(2)(A))*

Determination of adequacy typically entails inquiry as to whether: (1) plaintiff's interests are antagonistic to the interest of other members of the class and (2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation."  *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, 330 F.R.D. 11, 30 (E.D.N.Y. 2019) ("*In re Payment Card I*") (internal quotations omitted).  Here, "plaintiffs' interests are aligned with other class members' interests because they suffered the same injuries."  *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 692 (S.D.N.Y. 2019); *see also* Argument § IV.C, *supra*.  "Because of these injuries, plaintiffs have an interest in vigorously pursuing the claims of the class."  *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d at 692 (internal quotations omitted); *see also* Argument § IV.D, *supra*.  Further, courts have previously found that Plaintiffs' attorneys adequately meet the obligations and responsibilities of Class Counsel.  Schaffer Decl. at Exs. 66-70 (docket entries for Firm Resumes of Class Counsel).

### 2.    The Settlement Was Negotiated At Arm's Length

"If a class settlement is reached through arm's-length negotiations between experienced, capable counsel knowledgeable in complex class litigation, the Settlement will enjoy a presumption of fairness."  *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d at 693 (internal quotations omitted).  Further, "[a] settlement like this one, reached with the help of a third-party neutral, enjoys a presumption that the settlement achieved meets the requirements of due process." *Jara*, 2018 WL 11225741, at *2 (cleaned up).  Here, both counsel for Plaintiffs and for Defendants are experienced in class action litigation.  Schaffer Decl. ¶¶ ¶¶ 39, 64, 66-70.  Moreover, the Parties participated in a mediation before Judge Welsh and engaged in protracted settlement discussions. Schaffer Decl. ¶¶ 18, 21.

### 3.    The Settlement Provides Adequate Relief To The Class

Whether relief is adequate considers "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims, if required; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)."  Rule 23(e)(2)(C)(i-iv).

***"The costs, risks, and delay of trial and appeal."***  This factor "subsumes several *Grinnell* factors … including: (i) the complexity, expense, and likely duration of the litigation; (ii) the risks of establishing liability; (iii) the risks of establishing damages; and (iv) the risks of maintaining the class through the trial.  *In re Payment Card I*, 330 F.R.D. at 36.  As noted *supra*, the Settlement has met each of these *Grinnell* factors.  Argument §§ V.A.1, V.A.4, *supra*.

***"The effectiveness of any proposed method of distributing relief to the class."***  Class Members need only submit a simple claim form to receive significant monetary relief.  This is a reasonable method of distributing relief to Settlement Class Members.  *See Ferrick v. Spotify USA*

*Inc.*, 2018 WL 2324076, at *8 (S.D.N.Y. May 22, 2018) ("[R]equiring class members to submit copyright registration numbers is reasonable because plaintiffs would have to provide that information to pursue their own copyright infringement action.").

***"The terms of any proposed award of attorneys' fees."***  In the Second Circuit, an award of attorneys' fees is based on "the total funds made available, whether claimed or not" because "[t]he entire Fund, and not some portion thereof, is created through the efforts of counsel at the instigation of the entire class."  *Masters*, 473 F.3d at 437.  Here, Class Counsel has petitioned the Court for six-hundred fifty thousand dollars ($650,000) in fees and expenses.  This is one-third of the $1.95 million in monetary relief that Class Counsel has made available, which is reasonable under this Circuit.  *Trinidad v. Pret a Manger (UDS) Ltd.*, 2014 WL 4670870, at *11 (S.D.N.Y. Sept. 19, 2014) ("[A]warding fees of 33% is common in this district."); *Hernandez v. Uzzal Pizzeria, Inc.*, 2022 WL 1032522, at *1 (S.D.N.Y. Apr. 6, 2022) (same).

***"Any agreement required to be identified by Rule 23(e)(3)."***  This factor requires identification of "any agreement made in connection with the proposal." *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d at 696.  No such agreement exists other than the Settlement.  Schaffer Decl. ¶ 65.

### 4.    The Settlement Treats All Class Members Equally

This Rule 23(e)(2) factor discusses "whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." *In re Payment Card I*, 330 F.R.D. at 47.

Here, although Class Members with Proof of Purchase will receive more per unit than those without Proof of Purchase, that does not mean Class Members are treated inequitably.  *Patellos v. Hello Products, LLC*, 2022 WL 2159566, at *1 (S.D.N.Y. June 15, 2022) (finding "the Settlement

Agreement treats the Settlement Class Members equitably relative to one another" where class members with proof of purchase could make claims for up to ten products, versus up to five products without proof of purchase); *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, 2020 WL 7389330, at *3 (S.D.N.Y. Dec. 16, 2020) ("[T]he agreement appears to treat class members roughly equally. The agreement sets forth a formula to determine the value of a class member's claim that depends on 1) the product purchase price in the jurisdiction where the member bought the product, and 2) the quality of proof of purchase presented by the class member."). Further, all Class Members' claims are subject to upward or downward *pro rata* adjustment. A *pro rata* distribution has been found by courts in this Circuit to be equitable. *Meredith Corp. v. SESAC, LLC*, 87 F. Supp. 3d 650, 667 (S.D.N.Y. 2015) (finding that a *pro rata* distribution plan "appears to treat the class members equitably … and has the benefit of simplicity"); *Gordon v. Vanda Pharmaceuticals Inc.*, 2022 WL 4296092, at *5 (E.D.N.Y. Sept. 15, 2022) (finding class members were treated equally where "all class members will be subject to the same formula for the distribution of the fund") (cleaned up).

## VII.    CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court grant their Motion for Final Approval of the Settlement and enter the Final Approval Order in the form submitted herewith.

Dated November 1, 2023.                      Respectfully submitted,

By: */s/ James J. Reardon, Jr.*
     James J. Reardon, Jr.

**REARDON SCANLON LLP**
James J. Reardon, Jr.
45 South Main Street, 3rd Floor
West Hartford, CT 06107
Telephone: (860) 955-9455
Facsimile: (860) 920-5242

james.reardon@reardonscanlon.com

**LEVIN SEDRAN & BERMAN LLP**
Charles E. Schaffer (*pro hac vice*)
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Tel: 215-592-1500
E-mail: cschaffer@lfsblaw.com


**BURSOR & FISHER, P.A.**
Sarah N. Westcot (*pro hac vice*)
701 Brickell Ave, Suite 1420
Miami FL, 33131
Telephone: (305) 330-5512
Facsimile: (305) 676-9006
swestcot@bursor.com

**BURSOR & FISHER, P.A.**
Max S. Roberts (*pro hac vice*)
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
mroberts@bursor.com

**THE SULTZER LAW GROUP, P.C.**
Jason P. Sultzer (*pro hac vice*)
Joseph Lipari (*pro hac vice*)
Daniel Markowitz (*pro hac vice*)
270 Madison Avenue, Suite 1800
New York, NY 10016
Tel: (845) 483-7100
Fax: (888) 749-7747
sultzerj@thesultzerlawgroup.com
liparij@thesultzerlawgroup.com
markowitzd@thesultzerlawgroup.com

**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
Nick Suciu, III (*pro hac vice*)
6905 Telegraph Rd., Suite 115
Bloomfield Hills, MI 48301
Tel.: (313) 303-3472
Fax: (865) 522-0049
E-Mail: nsuciu@milberg.com

31

**LEVI & KORSINSKY LLP**
Mark S. Reich (*pro hac vice*)
Courtney E. Maccarone (*pro hac vice*)
55 Broadway, 10th Floor
New York, NY 10006
Telephone: (212) 363-7500
Facsimile: (212) 363-7171
mreich@zlk.com
cmaccarone@zlk.com

*Class Counsel*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned attorney of record hereby certifies that on November 1, 2023, I filed this document through the Court's CM/ECF system, which caused this document to be served electronically to all counsel of record. In addition, I directed true and correct copies of this document and all attachments thereto to be uploaded to the "Important Documents" section of this case's Settlement Website for public viewing, available at https://www.qusettlement.com/documents.

*/s/ James J. Reardon, Jr.*
James J. Reardon, Jr.
