**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| JASON GOLDSTEIN, BRAD DAVIS, MARIA LAZO, MOSANTHONY WILSON and JAMES CORSEY on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>HENKEL CORPORATION and THRIVING BRANDS LLC,<br><br>Defendants. | Case No. 3:22-cv-00164-AWT<br><br>Hon. Alvin W. Thompson |

**DECLARATION OF CHARLES E. SCHAFFER IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

**I.      INTRODUCTION**

I, Charles E. Schaffer, submit this Declaration in support of Plaintiffs' Motion for Final Approval of Class Action Settlement, and affirm that the following is truthful and accurate:

1.      I am one of the attorneys principally responsible for the handling of this case. I am personally familiar with the facts set forth in this declaration. If called as a witness, I could and would competently testify to the matters stated herein.

2.      Attached as **Exhibit 1** is the Settlement Agreement with exhibits in this action.

3.      On June 8, 2023, the Court granted Plaintiff's Motion for Preliminary Approval of the Class Action Settlement, Preliminary Certification of Settlement Class and Approval of Notice Plan and appointed Charles E. Schaffer of Levin Sedran & Berman, Sarah Westcot of Bursor & Fisher, P.A., Nick Suciu of Milberg Coleman Bryson Phillips Grossman, PLLC, Jason Sultzer of The Sultzer Law Group, and Mark Reich of Levi & Korsinsky, LLP as Class Counsel.  *See* ECF No. 77.  Per the terms of the Settlement Agreement, the Settlement Fund means a total payment

1

by Defendants in the amount of $1,950,000.00. *See* Ex. 1. Assuming the Court grants the Attorneys' Fees and Costs in the amount of $650,000.00, the Incentive Award to the Class Representative in the total amount of $5,000.00, and the costs of notice and administration in the amount of $275,000.00, the estimated Available Settlement Funds amount to $1,020,000.00.

4. The reaction to the Settlement has been overwhelmingly favorable.

5. No objections have been filed to the Settlement or attorneys' fees request and only one request for exclusion has been received by the Claim Administrator.

6. As a result of the robust Notice Program, the Claim Administrator has received 347,209 Valid Claim forms.

7. As a result of this settlement, consumers have the opportunity to receive cash payments and on average each class member will receive $2.94, roughly half the cost of one of the Covered Products and more than the 30% of the best-case price premium Plaintiffs could have recovered at trial.

8. This proposed class action settlement would resolve the claims of purchasers of Defendants Henkel Corporation ("Henkel") and Thriving Brands LLC ("Thriving Brands") (collectively "Defendants") Right Guard® Sport and Xtreme antiperspirant aerosol and spray products.

## II. BACKGROUND, PROCEDURAL HISTORY, AND SETTLEMENT

9. Before commencing the Litigation, Class Counsel extensively investigated and analyzed, among other things, Defendants' marketing campaign, the relevant FDA guidelines concerning labeling and advertising disclosure requirements for antiperspirant, deodorant and related products, FDA guidelines regarding the presence of benzene in consume products, the scientific research concerning the dangers of benzene, and research regarding how Defendants should have known the Products contained benzene.

10. On November 19, 2021, Plaintiff Jason Goldstein commenced a class action in the Southern District of Florida, relying *inter alia* on the Valisure Petition, alleging that certain Right Guard® antiperspirant aerosol and spray products sold in the United States contained benzene, and seeking compensation for alleged economic losses sustained by U.S. consumer purchasers of the products. *See Goldstein v. Henkel Corporation and Thriving Brands LLC*, Case No. 9:21-cv-82111-RS (S.D. Fla.) ("*Goldstein* Case"). On November 24, 2021, Plaintiff Mosanthony Wilson filed a similar class action complaint in the Southern District of California. *See Wilson et al v. Thriving Brands, LLC et al*, Case No. 3:21-cv-01988 (S.D. Cal.) ("*Wilson* Case"). On December 6, 2021, Plaintiff Peter Carbone filed a similar class action complaint in the Eastern District of New York. *See Carbone v. Thriving Brands LLC et al*, Case No. 2:21-cv-06742 (E.D.N.Y.) ("*Carbone* Case"). On December 16, 2021, Plaintiff Brad Davis filed a similar class action complaint in the Southern District of Ohio. *See Davis v. Henkel Corporation et al.*, Case No. 1:21-cv-00782 (S.D. Ohio) ("*Davis* Case"). On December 22, 2021, Plaintiff Maria Lazo filed a similar class action complaint in the District of Connecticut. *See Lazo v. Henkel Corp et al*, Case No. 3:21-cv-01702 (D. Conn.) ("*Lazo* Case"). And on December 28, 2021, Plaintiffs Diane Soldevilla and Alain Michael filed a similar class action in the Southern District of Florida. *See Soldevilla v. Thriving Brands, LLC et al*, Case No. 0:21-cv-62573 (S.D. Fla.) ("*Soldevilla* Case").

11. Plaintiffs' counsel in *Goldstein*, *Wilson*, *Corsey*, *Lazo*, and *Davis* discussed with Defendant's counsel consolidating and/or transferring the cases in one forum to eliminate duplicative discovery, prevent inconsistent pretrial rulings, and promote judicial efficiency. The Parties then began the process of consolidating all of the actions in this Court by joint motions and stipulations to transfer the actions.

12. On January 28, 2022, the Southern District of Florida Court transferred the first-filed Goldstein case to the District of Connecticut. *See Goldstein v. Henkel Corporation and Thriving Brands LLC,* Case No. 3:22-cv-00164 (D. Conn.). On February 2, 2022, the *Davis* case was transferred to the District of Connecticut. *See Davis v. Henkel Corporation et al*, Case No. 3:22-cv-00196 (D. Conn.). On February 2, 2022, the *Wilson* case was transferred to the District of Connecticut. *See Wilson et al v. Thriving Brands*, LLC et al, Case No. 3:22-cv-00270 (D. Conn.). On October 26, 2022, Soldevilla was transferred to the District of Connecticut. See *Soldevilla v. Henkel Corporation et al*, Case No. 3:22-cv-01362 (D. Ct.).

13. On March 1, 2022, Plaintiffs Goldstein, Wilson, Corsey, Lazo, and Davis filed a Motion for Consolidation and Appointment of Interim Co-Lead Counsel for an order: (i) consolidating *Goldstein, Wilson, Lazo*, and *Davis* pursuant to Federal Rule of Civil Procedure 42(a) under the first-filed Goldstein case; and (ii) appointing Bursor & Fisher, P.A., the Sultzer Law Group, P.C., Levin Sedran & Berman LLP, Milberg Coleman Bryson Phillips Grossman, PLLC, and Levi & Korsinsky LLP as interim co-lead counsel, and Reardon Scanlon LLP as liaison counsel pursuant to Federal Rule of Civil Procedure 23(g). ECF No. 30. On March 3, 2022, the Court entered the Order Granting Plaintiffs' Motion For Consolidation and Appointment of Interim Co-Lead Counsel (ECF No. 31) (the "Consolidated *Goldstein* Case").

14. On April 4, 2022, Plaintiffs in the Litigation filed a Consolidated Amended Class Action Complaint ("CACAC") (ECF No. 38) on behalf of a nationwide class styled captioned *Goldstein et al. v. Henkel Corporation and Thriving Brands LLC*, Case No. 3:22-cv-00164-AWT (D. Conn.). Plaintiffs allege that Defendants failed to test and improperly marketed and sold several antiperspirants that allegedly contained or were at the risk of containing benzene in violation of state law and compensation for alleged economic losses sustained by U.S. consumer

4

purchasers of the products. Plaintiffs seek to represent a nationwide class of consumers who purchased the Covered Products. Plaintiffs' Counsel has substantial experience in prosecuting class actions and in particular actions that involve benzene contamination of consumer products such as sunscreen, deodorant and antiperspirant products. *See Clinger v. Edgewell Personal Care Brands*, LLC, 3:21-cv-01040-JAM (D.Conn); *Declid et al. v. Tcp Hot Acquisition LLC et al.*, 1:21-cv-09569-DLC (S.D.N.Y); *Bangoura v. Beiersdorf, Inc. et al*, 1:22-cv-00291-BMC (E.D.N.Y.).

15. Prior to the filing of the actions, and throughout the litigation, Plaintiffs' Counsel undertook an extensive investigation into the benzene contamination or risk of contamination with benzene in the Covered Products, issues relating to how the Covered Products were not adequately tested and screened for benzene and prepared for protracted litigation.

16. Among other things, Plaintiffs' Counsel's investigation and due diligence included, inter alia, reviewing publicly available documents such as the Valisure Citizens petition to the FDA, conducting research on claims and federal regulations governing antiperspirant products including limits for contaminants like benzene, interviewing and conferring with experts pertaining to sourcing of ingredients, testing/screening for benzene and considering viable economic damages models.

17. On May 26, 2022, Defendants moved to dismiss the Litigation on the grounds that, among other things, (i) Plaintiffs' claims are expressly preempted by federal law, (ii) Plaintiffs lack standing because they have not suffered injury in fact, and (iii) Plaintiffs fail to state a cause of action. ECF No. 49. Plaintiffs opposed the motion to dismiss, and briefing concluded after several rounds of the parties submitting supplemental authority on November 2, 2022. ECF Nos. 54, 58, 63, 64, 65, 66.

18.     Over the next two months the parties commenced settlement negotiations, considering the cases' strengths and weakness. To assist with these settlement negotiations, the Parties agreed to proceed to private mediation with the Honorable Diane Welsh (Ret.). In advance of the mediation, the Parties exchanged discovery relevant to their claims and defenses. This is largely the same information that would have been produced had the case proceeded to formal discovery. Accordingly, the Parties were sufficiently informed at the time of the mediation of the strengths and weaknesses of their respective positions, the size of the putative class, and the damages at issue to negotiate a reasonable settlement.

19.     In connection with the mediation, Class Counsel requested, and Defendants produced, critical discovery to enable Plaintiffs to evaluate their claims and position themselves to negotiate a settlement that would be fair and reasonable on behalf of the Settlement Class. This information included information concerning the sales data of Covered Products throughout the Class Period as well as Defendants' quality control and testing procedures regarding contaminants including benzene.

20.     In addition, Class Counsel conducted significant legal research and an investigation into industry reports, scientific literature, and the Covered Products' market segment as follows:

   a. Class Counsel thoroughly analyzed the legal landscape and evaluated the risks and benefits of prosecuting the Litigation and an early resolution, including research into the various state consumer protection laws and available remedies, and evaluation of certification.

   b. Class Counsel extensively analyzed, in detail, the claims alleged in the complaint, Defendants' advertising campaigns, the relevant FDA guidelines concerning labeling and advertising disclosure requirements for sunscreen, FDA guidelines regarding the presence of benzene in consumer products, the scientific research concerning the dangers of benzene, and research regarding how Defendants should have known the Products contained benzene.

    c. Class Counsel analyzed the report issued by Valisure, an analytical pharmacy, patient advocacy, and consumer protection organization, and conducted their own independent testing for the presence of benzene.

    d. Class Counsel investigated and consulted with industry experts regarding inter alia the presence of benzene in aerosol sunscreen products, regulations governing benzene in aerosol sunscreen products, potential sources and elimination of that source of benzene in aerosol sunscreen products, as well as testing and screening for benzene in aerosol sunscreen products.

    e. Class Counsel analyzed the chain of distribution of the Covered Products and pricing per unit to help support and determine Plaintiff's damages model.

    f. Class Counsel investigated and consulted with experts regarding damages model for consumers purchasing an adulterated and or misbranded aerosol sunscreen product contaminated with benzene.

    g. Class Counsel conducted research into the market segment related to the Covered Products to understand the potential scope of this matter, economic losses to Class Members, and marketing and sales trends, practices, and patterns.

21. On December 6, 2022, the Parties attended a full-day mediation with Judge Welsh. With Judge Welsh's assistance, the Parties reached a non-reversionary common fund settlement. Before and during these settlement discussions and mediation, the Parties had arm's-length exchange of sufficient information to permit Plaintiffs and their counsel to evaluate the claims and potential defenses and to meaningfully conduct informed settlement discussions.

22. The Parties did not discuss Attorneys' Fees and Costs or any potential Incentive Award until they first agreed on the substantive terms of this settlement.

23. Class Counsel worked together to thoroughly analyze the legal landscape, including conducting research into the various state consumer protection laws and available remedies, Article III standing, preemption and evaluating matters relating to class certification, in order to fully evaluate the risks and benefits to a potential early resolution.

24. Indeed, Class Counsel worked cooperatively to coordinate the Litigation and to save judicial time and resources to consolidate the multiple similar litigations without a protracted battle for lead counsel and to lead the case to mediation and an early resolution.

25. Class Counsel conducted a detailed and extensive analysis of the claims, including labeling claims for the Covered Products, the relevant FDA regulations concerning labeling and advertising disclosure requirements for aerosol antiperspirants, FDA guidelines regarding the presence of benzene in consumer products, and the scientific research concerning the dangers of benzene.

26. Class Counsel also thoroughly analyzed the Valisure Petition which found that the Covered Products contain as much as 5 parts per million of benzene.

27. Moreover, Class Counsel analyzed the chain of distribution of the Covered Products and pricing per unit to help support and determine Plaintiffs' damages model.

28. In addition, Class Counsel conducted research into the market segment related to the Covered Products to understand the potential scope of this matter and marketing and sales trends, practices, and patterns for the relevant industry.

29. Class Counsel also analyzed in conjunction with economic expert(s) damage models including full refund under a disgorgement model and/or a price premium model utilizing conjoint analysis to determine consumers likely and best recovery at trial.

30. In connection with the mediation, Class Counsel requested mediation discovery in order to evaluate the claims and position themselves to negotiate a settlement that would be fair and reasonable on behalf of the Settlement Class.

31.     Specifically, Class Counsel requested, and Defendants produced, documents and information regarding the sales data of Covered Products throughout the Class Period as well as Defendants' quality control and testing procedures regarding contaminants including benzene.

32.     The settlement negotiations were conducted at arm's-length over a period of several months between counsel very experienced in class actions.

33.     On December 6, 2022, the Parties participated in an all-day mediation. With the assistance of Judge Welsh, the Parties reached an agreement in principle at the mediation session. However, the Parties continued to pursue settlement discussions for several months, working out the details of the settlement.

34.     On December 9, 2022, the Parties executed a term sheet. On December 12, 2022, the Parties informed the Court that they had reached an agreement to resolve the matter (ECF No. 67).

35.     On April 26, 2023, the Parties executed the Settlement Agreement, and Plaintiffs moved for preliminary approval of the class action settlement. (ECF No. 76).

36.     With respect to selecting a settlement administrator, before selecting Angeion, Plaintiffs sought multiple bids from claims administrators and interviewed and vetted Angeion and its proposed notice plan for this settlement.

37.     The parties selected Angeion based on its reputation for excellent work and breadth of experience administering other similar consumer class actions. For example, Angeion has administered very similar benzene settlements regarding consumer products. See *Delcid et al. v. TCP Hot Acquisition LLC et al.*, 1:21-cv-09569-DLC (S.D.N.Y); *Bangoura v. Beiersdorf, Inc. et al*, 1:22-cv-00291-BMC (E.D.N.Y.).

9

38. On June 8, 2023, the Court granted Plaintiffs' Motion for Preliminary Approval of the Class Action Settlement, Preliminary Certification of Settlement Class and Approval of Notice Plan and scheduled a Final Approval hearing for December 13, 2023 (ECF No. 77).

### III. SUMMARY OF SETTLEMENT BENEFITS AND RISKS OF CONTINUED LITIGATION

39. As stated above, Class Counsel has substantial experience in prosecuting class actions of a similar size, scope, and complexity; and in particular actions that involve benzene contamination of consumer products such as sunscreen, deodorant and antiperspirant products. *See Clinger v. Edgewell Personal Care Brands, LLC*, 3:21-cv-01040-JAM (D. Conn); *Delcid et al. v. TCP Hot Acquisition LLC et al.*, 1:21-cv-09569-DLC (S.D.N.Y); *Bangoura v. Beiersdorf, Inc. et al*, 1:22-cv-00291-BMC (E.D.N.Y.).

40. Class Counsel has made $1.95 million in valuable benefits available to Class Members. § 3.1. Settlement Class Members who submit a Valid Claim Form with Proof of Purchase shall receive $3.00 for each Covered Product listed on the Proof of Purchase, inclusive of all taxes. § 3.4(a). Settlement Class Members who submit a Valid Claim Form without Proof of Purchase shall receive $1.75 for up to five (5) Covered Products claimed per household. § 3.4(b). The recovery from this settlement is a great result for the settlement class and results in a 47 % to 80% recovery per Class Members per Covered Product.[1]

41. Thus, the class here is recovering somewhere between 9% under the full disgorgement and 30% of the price premium of what it might have recovered at trial.

---

[1] These figures were computed as follows:

The average purchase price of the Covered Products for the class period is $3.00 to $4.50. Those with proof of purchase can receive $3.00 per covered product while those without can receive $1.75 per covered product. $1.75 is approximately 47% of $3.75 average while $3.00 for those with proof of purchase is approx. 80% of the $3.75 price.

42. Moreover, this settlement will likely deliver significant benefits to a variety of different class members. For example, here, the total number of units sold is more than 6 million over a three-year period. The likely class consists of hundreds of thousands if not more than a million consumers who purchased the Covered Products.

43. The Settlement Agreement mitigates risks and costs by providing an immediate and certain substantial monetary recovery and alleviates the risk of continued litigation

44. The Settlement was reached pending a decision on Defendant's Motion to Dismiss. While Plaintiffs believed in the viability of their claims, rulings by other courts in similar circumstances posed a significant risk that the case would be dismissed and Plaintiffs and the Settlement Class would receive nothing. *See, e.g.*, *Rooney v. Procter and Gamble Co.*, 2022 WL 17092124 (E.D. La. Nov. 21, 2022); *Bowen v. Energizer Holdings, Inc.*, 2022 WL 18142508 (C.D. Cal. Aug. 29, 2022); *Brief v. Idelle Labs, Ltd.*, 2023 WL 2860345 (D.N.J. Apr. 10, 2023); *Bodle v. Johnson & Johnson Consumer Inc.*, 2022 WL 18495043 (N.D. Cal. Feb. 24, 2022); *Schloegel v. Edgewell Personal Care Co.*, 2022 WL 808694 (W.D. Mo. Mar. 16, 2022).

45. Further, Defendants are represented by formidable defense counsel well-versed in class action litigation, and Defendants have indicated that they would continue to assert numerous defenses on the merits.

46. If litigation proceeds, Defendants' arguments could completely defeat, or significantly narrow, the scope of the Litigation, claims, and damages through, *inter alia*, successful dispositive motions or opposition to class certification.

47. In addition, if the litigation proceeded to trial, both sides would offer expert testimony on liability and damages.

48. Plaintiffs would undoubtedly face a challenge to their class-wide damages expert who would proffer a methodology for calculating aggregate class-wide economic injury. Such an expert undertaking is costly, and Plaintiff expects Defendants would challenge Plaintiffs' ability to calculate a price premium class wide.

49. Plaintiffs acknowledge the complexity in the resolution of whether advertising claims deceive reasonable consumers. A rigorous battle of the experts would include survey analyses and disputed damages analyses.

50. There is a substantial risk that a jury may accept Defendants' experts' testimony and damages arguments or award far less than the settlement amount or nothing at all.

51. While confident in their claims, Plaintiffs nonetheless faces significant risks in establishing liability.

52. If litigation continues, Plaintiffs and Class Counsel are also aware that Defendants would oppose class certification vigorously, and that Defendants would prepare a competent defense at trial. And while Plaintiffs and Class Counsel were confident in the claims alleged, it is entirely possible that the Court could have sided with Defendants, leaving Plaintiffs and Class Members empty-handed.

53. The outcome of these proceedings cannot be certain, and if the litigation proceeds to trial, it will be a lengthy and complex affair with appeals likely to follow.

54. Consistent with Second Circuit jurisprudence, in settling the litigation, Plaintiff accounted for the estimated damages, the benefits and risks of continuing litigation against Defendants, and the range of possible outcomes should the litigation continue.

55. The settlement also will provide an immediate and certain benefit to the Settlement Class and will avoid the substantial burdens and costs that continued and uncertain litigation would

impose on the parties, non-party witnesses, and the courts. Furthermore, there are many steps between here and any potential verdict.

56. Even assuming arguendo, that continued litigation might result in a larger recovery than the settlement, it would occur only after the expenditure of hundreds of thousands of dollars in costs and expenses (at best) that would eat up much of any increased recovery.

57. The recovery from this Settlement is a great result for the Settlement Class and results in a 47 % to 80% recovery per Class Members per Covered Product.

58. Further, the total monetary relief provided to Class Members—$1.95 million—is 9% of Defendants' total potential liability in this action under a total disgorgement theory. However, the full disgorgement theory would have been challenged by Defendants and may not have succeeded because Defendants would argue that even contaminated products are not completely worthless, *i.e.*, they still have antiperspirant in them. As a result, Plaintiffs' likely damage theory to succeed here likely would have been based on the premium class members paid over what they would have paid had they known about the contamination or risk of contamination.

59. Class Counsel consulted with an economic expert who estimated, the best-case, price-premium scenario for products like this was around 30% of the purchase price. Here, the Settlement Class's best day under a 30% price premium model would be $6.6 million dollars, and the Settlement Agreement provides 29.45% of this value. Thus, the class here is recovering somewhere between 9% (full disgorgement) and approximately 30% of the price premium of what it might have recovered at trial, which is likewise reasonable per the aforementioned authorities.

60. The total number of units sold is more than 6 million over a three-year period. Clearly, the class consists of hundreds of thousands if not more than a million consumers who purchased the Covered Products.

61. Here, the reaction of the Class Members to the Settlement has been overwhelmingly positive. Class Notice has been provided to the Settlement Class Members in accordance with the requirements of Rule 23(c)(2)(B) and the Preliminary Approval Order. Zero Class Members objected to the Settlement, and one opted out.

62. Even if Plaintiffs could have defeated a motion to dismiss, obtained a class certification order and proceeded to trial, victory before the trier of fact would have been uncertain. Such uncertainty, moreover, was compounded by the appeals virtually certain to have followed any verdict. In short, while Class Counsel believes that the claims are viable and strong, there can be no denying the array of serious class-wide risks, any one of which could have precluded the Class and its counsel from recovering anything at all.

63. By any standard, this Settlement constitutes a favorable result made possible by the dedication and skill of Class Counsel under very difficult circumstances.

64. Moreover, Class Counsel are qualified, experienced, and generally able to conduct the Litigation. Class Counsel have invested considerable time and resources into the prosecution of the Litigation and possess a long and proven track record of the successful prosecution of class actions, including false advertising cases, and numerous appointments as class counsel

65. No other agreements between the Parties exist other than the Settlement Agreement.

66. Levin Sedran & Berman LLP's firm resume can be found at ECF Doc. 30-5, Ex. A

67. Bursor & Fisher, P.A.'s firm resume is at ECF Doc. 30-3, Ex. A.

68. The Sultzer Law Group's firm resume is at ECF Doc. 30-4, Ex. A.

69. The Milberg Coleman Bryson Phillips Grossman, PLLC firm resume is at ECF Doc. 30-6, Ex. A.

70. Levi & Korsinsky's firm resume is at ECF Doc. 30-7, Ex. A.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed November 1, 2023 in Philadelphia, Pennsylvania.

*/s/ Charles E. Schaffer*
Charles E. Schaffer
